Exhibit A to Notice of Removal

# EXHIBIT 1

**Exhibit A to Notice of Removal**

Michael J. Skousen, #011982
SKOUSEN, SKOUSEN,
GULBRANDSEN & PATIENCE, P.C.
414 East Southern Avenue
Mesa, Arizona 85204
(480) 833-8800

Attorneys for Plaintiffs



THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCONINO

| | |
|---|---|
| JIN AH LEE, decedent, by her estate Representative, JUNGIL LEE, SANG CHUL LEE,  Decedent's father, and DUKSON LEE, decedent's mother, | ) ) ) ) ) |
| Plaintiffs, | ) No.*CV2005-0307* ) |
| vs. | ) COMPLAINT ) |
| ANC CAR RENTAL CORP., GENERAL MOTORS CORP., and HONG-JUN JEON, | ) ) (TORT – MOTOR VEHICLE) ) |
| Defendants. | ) ) |

<u>Preliminary</u>

Plaintiff Jin Ah Lee, decedent, by her authorized estate representative, Jungil Lee,

plaintiff Sang-Chul Lee and plaintiff Dukson Lee, by their authorized legal representative Jungil

Lee, for their complaint against defendants ANC Rental Corporation, General Motors

Corporation, and Hong-Jun Jeon, allege:

<u>The Parties</u>

1.     Plaintiff-decedent, Jin Ah Lee, was a natural person, age 22, who died in the

accident relevant to this lawsuit on June 1, 2003, at Flagstaff, Arizona.  Plaintiff Jin Ah Lee

SEN, SKOUSEN
BRANDSEN &
TIENCE, P.C.
KNEYS AT LAW
F SOUTHERN AVE.
IZONA 85204-4993
0) 833-8800

maintained a permanent residence at Kaepo Woosung 4 th Apartment No. 8-407, Dokok-dong,

Kangnam-ku, Seoul, Republic of Korea, and maintained a local address at 36 Kennedy Blvd.,

Cambridge, MA, while studying in the United States before her death.

      2.     Plaintiffs Sang-Chul Lee, plaintiff Jin Ah Lee's father, and Dukson Lee, plaintiff

Jin Ah Lee's mother, are aliens, who reside at Kaepo Woosung 4th Apartment No. 8-407,

Dokok-dong, Kangnam-ku, Seoul, Republic of Korea.  These plaintiffs sue in their own names in

connection with the untimely death and loss of their daughter, including support, companionship,

society, wrongful death and survivorship rights.

      3.     Defendant ANC Rental Corporation (acronym for "Alamo/National Car")

("Alamo"), a publicly-traded entity organized in November 1999, is the parent company of

Alamo Rent a Car, National Car Rental, and Alamo Local Market, engaged in the rental car

business in approximately 60 countries around the world.  Its principal offices located at 200

South Andrews Avenue, Fort Lauderdale, FL 33301.   At all relevant times Alamo was the

owner and renter of a certain 2003 Chevrolet Malibu automobile which caused plaintiff's death.

Defendant Alamo is believed to be authorized to conduct regular business in the State of Arizona

and in this district.

      4.     Defendant General Motors Corporation ("GM") is believed to be an entity

organized under laws of the State of Michigan, and has its worldwide corporate headquarters and

principal offices at 767 Fifth Avenue, New York, New York.  At all relevant times GM was the

designer and manufacturer of the 2003 Year model Chevrolet Malibu automobile which caused

plaintiff's death.  Defendant GM is believed to be authorized to conduct regular business in the

State of Arizona and in this district.

OUSEN, SKOUSEN
ULBRANDSEN &
PATIENCE, P.C.
TORNEYS AT LAW
AST SOUTHERN AVE.
ARIZONA 85204-4993
(480) 833-8800

5.      Defendant Hong-Jun Jeon ("Jeon") is an alien, a national of the Republic of Korea, having his local address at 400 Mass Avenue #34, Boston, MA 02115, and his permanent address at Kangwondo kangnuen-shi   kyoi-dong, Darim Apartments 1803, Republic of Korea. Defendant Jeon drove the 2003 Chevy Malibu relevant to this lawsuit and contributed to the death of plaintiff Jin Ah Lee.

## Jurisdiction and Venue

6.      This Court has jurisdiction and venue under Arizona law, as the underlying accident occurred in Flagstaff, Arizona.

## Common Allegations

7.      Upon information and belief, in May 2003, defendant Jeon, an alien who possessed an "international driver's license," issued by the Republic of Korea, having relatively little driving experience in the United States, rented a certain 2003 Chevrolet Malibu, four-door automobile (the "Malibu"), bearing California license plates 4LXT007, from defendant Alamo, at one of its rental locations in Las Vegas, Nevada, and drove with three passengers through the State of Arizona and elsewhere.

8.      Among the four occupants of the Malibu were the driver and plaintiff Jin Ah Lee and two of their friends.   Plaintiff Jin Ah Lee and a second female occupant were seated in the rear of the car, while defendant Jeon, as the driver, was accompanied by another male in the front seats.

9.      Upon information and belief, while defendant Jeon was driving through Flagstaff, Arizona, on a single-lane, two-way, level desert highway, heading westbound, defendant Jeon attempted to pass a slow-moving vehicle through the east-bound lane, in a permitted "passing" zone.

SEN, SKOUSEN
BRANDSEN &
TIENCE, P.C.
RNEYS AT LAW
F SOUTHERN AVE.
RIZONA 85204-4993
(0) 833-8800

10.     Upon information and belief, defendant Jeon crossed into the on-coming lane and attempted to outpace the "slower" car in the westbound lane, but was unable to do so before he saw an oncoming car. As oncoming traffic became visible, defendant Jeon attempted to slow down and maneuver the Malibu back to the westbound lane, but the Malibu lost stability, "fishtailed" out of control, and left the road surface, off the shoulder, into the unpaved dirt.

11.     Upon information and belief, the Malibu failed to brake properly due to weak or small brake pads, lack of anti-lock braking system (ABS), the wheels and body vibrated extensively, bounced up and down, and the frame and body became unstable.

12.     Upon in formation and belief, as the Malibu left the road surface and traveled in the dirt, it rolled over and sustained extensive structural damage, including the collapse of its roof, the disintegration of its frame, and the destruction of all windows and windshields.

13.     During the rollover, plaintiff Jin Ah Lee was unsafely ejected out of the passenger compartment of the vehicle. Plaintiff Jin Ah lee suffered serious physical injuries to various parts of her body.

14.     Upon information and belief, the accident was observed by, among others, a physician who was traveling through the area at the time, and the physician provided emergency assistance. The police and ambulance were summoned immediately, and plaintiff Jin Ah Lee was transported by air to a hospital.

15.     As doctors at Flagstaff Medical Center provided emergency care, plaintiff Jin Ah Lee died from "multiple blunt-trauma injuries" sustained in the accident. She suffered extensive pain between the time of the accident and the time of her death, several hours later.

16.     Upon information and belief, the Malibu was towed to Chief's Towing in Flagstaff, Arizona, and subsequently removed by defendant Alamo to Albuquerque, New

OUSEN, SKOUSEN
ULBRANDSEN &
PATIENCE, P.C.
TORNEYS AT LAW
AST SOUTHERN AVE.
ARIZONA 85204-4993
(480) 833-8800

Mexico, to a facility under its exclusive control.   Defendant Alamo has been requested to preserve the car.

<div align="center">More Particular Allegations and Claims for Relief</div>

17.    Plaintiff Jin Ah Lee's untimely death was believed to be caused by a combination of some or all of the following causes of action.

<div align="center">Count 1: Improper testing by GM</div>

18.    Paragraphs 1 through 17 are incorporated by reference.

19.    Although GM routinely conducts dynamic rollover tests at its European operations, within the United States, GM has failed to conduct any dynamic rollover tests using anthropomorphic test-dummies, on the Malibu, among other car models, for decades now.

20.    Defendant GM's failure to conduct dynamic rollover tests in the United States is part of its overall business strategy to cut costs by its management, despite its knowledge that dynamic rollover tests, as GM itself conducts at its European operations, are an effective means of gauging vehicle safety and improving vehicle and occupant safety.

21.    Defendant GM's failure to implement adequate dynamic rollover tests concerning hundreds of thousands of cars made and sold in the United States generally, and of the Malibu, in particular, contributed to accident and to plaintiff Jin Ah Lee's death.

22.    As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

23.    Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

<div align="center">Count 2:  Improper design by GM</div>

SEN, SKOUSEN
BRANDSEN &
TIENCE, P.C.
RNEYS AT LAW
F SOUTHERN AVE.
IZONA 85204-4993
60) 833-8800

24.  Paragraphs 1 through 17 are incorporated by reference.

25.  Despite the fact defendant GM promotes the Malibu as having a "steel cage" construction to protect the passenger cabin, in fact, the subject Malibu's passenger cabin failed to maintain the "survival space," also known as the "non-encroachment zone," necessary for plaintiff to have survived the relevant accident.

26.  Upon information and belief, defendant GM knew or should have known that the Malibu's "non-encroachment zone" was of inferior quality, design, and strength. The Malibu's roof structure and the extent of deformation and crushing into the "non-encroachment zone" was needlessly more severe and extensive due to the inherent weaknesses in the roof structure.  A primary reason for utilizing the weak "survival space" was part of defendant GM's overall "cost cutting" business practice.

27.  As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

28.  Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

<u>Count 3:  Improper manufacturing by GM</u>

29.  Paragraphs 1 through 17 are incorporated by reference.

30.  Defendant GM failed to implement appropriate welding of separate components together, in the frame and structure of the Malibu, so as to minimize roof crush.

31.  As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

ΚOUSEN, SKOUSEN
GULBRANDSEN &
PATIENCE, P.C.
TTORNEYS AT LAW
EAST SOUTHERN AVE.
. ARIZONA 85204-4993
(480) 833-8800

32.     Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the potential risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

### Count 4:  Improper design/manufacturing by GM

33.     Paragraphs 1 through 17 are incorporated by reference.

34.     Upon information and belief, the side windows and the rear windshield were glazed or attached inappropriately, inadequately and/or defectively.  Defendant GM improperly designed and/or manufactured the Malibu in such a way as to allow the windows and windshields to separate from the body relatively easily, and thereby placed human life in unnecessary danger.

35.     As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

36.     Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

### Count 5:  Improper design/manufacturing by GM

37.     Paragraphs 1 through 17 are incorporated by reference.

38.     Upon information and belief, the Malibu's braking system was designed or manufactured inappropriately, inadequately and/or defectively.  Defendant GM knew or should have known that the car did not have safe-braking capability, due to relatively small brake-pad size, due to the lack of ABS, and due to other factors;  and that the Malibu was not adequately controllable, particularly at highway speeds.

SEN, SKOUSEN
.BRANDSEN &
TIENCE, P.C.
RNEYS AT LAW
T SOUTHERN AVE.
RIZONA 85204-4993
(01 833-8800

39.     As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

40.     Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the potential risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

<u>Count 6: Failure to give adequate warnings by GM</u>

41.     Paragraphs 1 through 17 are incorporated by reference.

42.     Defendant GM failed to give adequate warning to the public about the dangers associated with, and relating to, the Malibu, each of the foregoing safety/design/manufacturing factors, and to other factors.

43.     As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

44.     Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

<u>Count 7: Acquisition, use or rental of unsafe vehicles by Alamo</u>

45.     Paragraphs 1 through 44 are incorporated by reference.

46.     Upon information and belief, defendant Alamo, one of the largest car renters in the world, purchases and acquired a substantial number of Malibu cars from defendant GM.

47.     Upon information and belief, defendant Alamo knew one or more of the facts alleged in plaintiffs' claims against defendant GM, concerning the Malibu's testing, design, manufacture, and safety, but nevertheless acquired a substantial number of such cars, and

ɔUSEN, SKOUSEN
ULBRANDSEN &
PATIENCE, P.C.
TORNEYS AT LAW
AST SOUTHERN AVE.
ARIZONA 85204-4993

promoted and rented them to the public, and thereby unnecessarily increased the likelihood of serious injury or death to persons riding in its cars, including plaintiff Jin Ah Lee.

48.     As a direct and proximate result of defendant Alamo's actions and omissions, plaintiffs have sustained injuries.

49.     Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject to punitive damages.

### Count 8: Wrongful rental by Alamo

50.     Paragraphs 1 through 44 are incorporated by reference.

51.     Upon information and belief, defendant Alamo rented the car to defendant Jeon despite his failure to produce adequate documentation; despite his lack of driving experience; and/or despite his inappropriate age.  Upon information and belief, defendant Jeon was not qualified under defendant Alamo's own rental guidelines.

52.     As a direct and proximate result of defendant Alamo's actions and omissions, plaintiffs have sustained injuries.

53.     Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject to punitive damages.

### Count 9: Failure to warn by Alamo

54.     Paragraphs 1 through 44 are incorporated by reference.

55.     At the time defendant Alamo rented the Malibu to defendant Jeon, Alamo knew or should have known that the car did not have ABS braking capability, and/or otherwise did not have adequate controllability, on the highway and elsewhere.

SEN, SKOUSEN
BRANDSEN &
FIENCE, P.C.
RNEYS AT LAW
F SOUTHERN AVE.
IZONA 85204-4993

56.     At all relevant times,  upon information and belief, at the time of making the rental contract, defendant Alamo failed to warn defendant Jeon, plaintiff Jin Ah Lee and the other passengers of the Malibu that the car did not have certain safety devices, including ABS braking capability.

57.     Upon information and belief, defendant Alamo failed to warn of other safety measures and thereby contributed to plaintiff Jin Ah Lee's injuries and death.

58.     As a direct and proximate result of defendant Alamo's actions and omissions, plaintiffs have sustained injuries.

59.     Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject to punitive damages.

Count 10: Entrustment of dangerous instrumentality by Alamo

60.     Paragraphs 1 through 44 are incorporated by reference.

61.     Upon information and belief, defendant Alamo wrongfully entrusted a dangerous instrumentality, the Malibu, to defendant Jeon, and contributed to the unnecessary death of plaintiff Jin Ah Lee.

62.     As a direct and proximate result of defendant Alamo's actions and omissions, plaintiffs have sustained injuries.

63.     Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject to punitive damages.

Count 11: Contract insurer of Jeon

64.     Paragraphs 1 through 44 are incorporated by reference.

ЭUSEN, SKOUSEN
ЭULBRANDSEN &
ЭATIENCE, P.C.
TORNEYS AT LAW
\ST SOUTHERN AVE.
ARIZONA 85204-4993
(480) 833-8800

65.     At all relevant times, Alamo or another insurance carrier underwrote a certain liability insurance policy affecting the rental/car in issue.

66.     Such carrier is liable to the same extent as defendant Jeon's liability, discussed below.

67.     Despite repeated demands for policy claim information and payment, defendant Alamo has failed and refused to pay on such policy and has failed to even provide basic policy information.

68.     Defendant Alamo is liable for such policy value.

69.     Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of its obligations as an insurance company, defendant Alamo should be subject to punitive damages for bad faith insurance practices.

<u>Count 12: Negligent driving by Jeon</u>

70.     Paragraphs 1 through 63 are incorporated by reference.

71.     Upon information and belief, defendant Jeon, unaware that he was driving a car with various testing/design/manufacturing and safety problems, was negligent in his operation of the subject Malibu.  Defendant Jeon's actions and omissions contributed to the other defendants' actions and omissions.

72.     As a direct and proximate result of defendant Jeon's actions, plaintiffs have sustained injuries.

WHEREFORE, plaintiffs demand:

        A. appropriate compensatory damages in a sum exceeding $20 million, for pain and suffering, loss of income, loss of society and survivorship rights, and wrongful death, to the

SEN, SKOUSEN
BRANDSEN &
FIENCE, P.C.
RNEYS AT LAW
T SOUTHERN AVE.
RIZONA 85204-4993
'0) 833-8800

Exhibit A to Notice of Removal

parents of Jin Ah Lee on behalf of Jin Ah Lee and themselves, against all defendants, individually and jointly and severally; and

      B. appropriate punitive damages in a sum exceeding $20 million, against defendants Alamo and GM, individually and jointly and severally; and

      C. appropriate costs and attorney's fees; and

      D. any other relief the Court deems just and proper under the circumstances.

<u>Jury Demand</u>

Pursuant to the Arizona Rules of Civil Procedure, plaintiffs hereby request a trial by jury.

Dated this 7th day of May, 2005.

                            SKOUSEN, SKOUSEN,
                            GULBRANDSEN & PATIENCE,
                            P.C.

                            Michael J. Skousen
                            Attorneys for Plaintiffs

OUSEN, SKOUSEN,
GULBRANDSEN &
PATIENCE, P.C.
TTORNEYS AT LAW
AST SOUTHERN AVE.
, ARIZONA 85204-4993
(480) 833-8800

MICHAEL J. SKOUSEN, #011982
SKOUSEN, SKOUSEN,
GULBRANDSEN & PATIENCE, P.C.
414 EAST SOUTHERN AVENUE
MESA, ARIZONA 85204
TEL: 480-833-8800
*Attorneys for Plaintiff*

THE SUPERIOR COURT OF THE STAT3E OF ARIZONA
IN AND FOR THE COUNTY OF COCONINO

--------------------------------------------x
JIN AH LEE decedent, by her estate          :
representative, JUNGIL LEE,                  :
SANG CHUL LEE and DUKSON LEE,               :
by their personal representative,            :        No. CV 2005-0307
JUN GIL LEE,                                 :
                        Plaintiff,           :
                                             :
            v.                               :
                                             :
ANC CAR RENTAL CORP.,                        :        **Acknowledgment of service**
GENERAL MOTORS CORP.,                        :
and HONG-JUN JEON,                           :
                        Defendants.          :
--------------------------------------------x

The undersigned hereby acknowledges service of the summons and complaint in this action as of
May _____, 2005.

                                              6/8/2005

                              _____
                              Hong Jun Jeon

Michael J. Skousen, #011982
SKOUSEN, SKOUSEN,
GULBRANDSEN & PATIENCE, P.C.
414 East Southern Avenue
Mesa, Arizona 85204
(480) 833-8800

Attorneys for Plaintiffs

THE SUPERIOR COURT OF THE STATE OF ARIZONA

ND FOR THE COUNTY OF COCONINO

| | |
|---|---|
| JIN AH LEE, decedent, by her estate Representative, JUNGIL LEE, SANG CHUL LEE, Decedent's father, and DUKSON LEE, decedent's mother,<br><br>               Plaintiffs,<br><br>vs.<br><br>ANC CAR RENTAL CORP., et al.,<br><br>               Defendants. | No. *CV2005-0307*<br><br>S U M M O N S |

STATE OF ARIZONA TO THE DEFENDANTS:

GENERAL MOTORS CORP.

YOU ARE HEREBY SUMMONED and required to appear and defend within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona -- whether by direct service, by registered or certified mail, or by publication -- you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this State, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the

SKOUSEN, SKOUSEN,
GULBRANDSEN &
PATIENCE, P.C.
ATTORNEYS AT LAW
E EAST SOUTHERN AVE.
A. ARIZONA 85204-4993

Exhibit A to Notice of Removal

Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return.  **RCP 4; ARS §§ 20-222, 28-502, 28503.**

    **YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

    **YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the Plaintiff's attorney.  **RCP 10(d); ARS §21-311; RCP 5.**

    Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least three judicial days in advance of a scheduled court proceeding.

    The name and address of Plaintiff's attorney are:

        Michael J. Skousen
        SKOUSEN, SKOUSEN, GULBRANDSEN & PATIENCE, P.C.
        414 East Southern Avenue
        Mesa, AZ  85204

SIGNED AND SEALED this date:   5 - 18 - 05

~~MICHAEL K. JEANES~~, Clerk
DEBORAH YOUNG

By: _Vanessa Sunl_
         Deputy Clerk

OUSEN, SKOUSEN
ïULBRANDSEN &
PATIENCE, P.C.
TORNEYS AT LAW
AST SOUTHERN AVE.
ARIZONA 85204-4993

Exhibit A to Notice of Removal 5-1805

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
06/22/2005
Log Number 510320688

PRODUCT
LITIGATION
JUN 23 2005
G.M. LEGAL STAFF

**TO:** Rosemarie Williams
General Motors Legal Staff
400 Renaissance Center, Mail Code 482-038-210
Detroit, MI, 48265-4000

**RE:** **Process Served in Michigan**

**FOR:** General Motors Corporation  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** Jin Ah Lee, Decedent, by her Estate Representative, Jungil Lee, Sang Chul Lee, Decedent's father and Dukson Lee, Decedent's mother, Pltfs. vs. ANC Car Rental Corp., et al., Including General Motors Corp., Dfts.
*Name discrepancy noted.*

**DOCUMENT(S) SERVED:** Summons, Complaint

**COURT/AGENCY:** Superior Court-Arizona-County of Coconino, AZ
Case # CV20050307

**NATURE OF ACTION:** Product Liability Litigation - Manufacturing Defect - On June 1, 2003, Jin Ah Lee, died in the accident when the 2003 Chevy Malibu, designed/manufactured by GM, failed to brake properly and left the road, rolled over and sustained structural damage, including the collapse of its roof.

**ON WHOM PROCESS WAS SERVED:** The Corporation Company, Bingham Farms, MI

**DATE AND HOUR OF SERVICE:** By Certified Mail on 06/22/2005 postmarked on 06/16/2005

**APPEARANCE OR ANSWER DUE:** 28 Days                              7-20-05

**ATTORNEY(S) / SENDER(S):** Michael J. Skousen
Skousen, Skousen, Gulbrandsen & Patience
414 East Southern Avenue
Mesa, AZ, 85204
480-833-8800

**ACTION ITEMS:** SOP Papers with Transmittal, via  Fed Ex 2 Day, 790062022478
Fax Transmittal,  Rosemarie Williams  313-665-7572
*Faxed 6-22-05, 13:53*

**SIGNED:** The Corporation Company
**PER:** Stephanie Hendrickson
**ADDRESS:** 30600 Telegraph Road
Suite 2345
Bingham Farms, MI, 48025

**TELEPHONE:** 248-646-9033

Page 1 of  1 / BD

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action.

Exhibit A to Notice of Removal

# EXHIBIT 2

Exhibit A to Notice of Removal

Michael J. Skousen, #011982
SKOUSEN, SKOUSEN,
GULBRANDSEN & PATIENCE, P.C.
414 East Southern Avenue
Mesa, Arizona  85204
(480) 833-8800

Attorneys for Plaintiffs

THE SUPERIOR COURT OF THE STATE OF ARIZONA

ND FOR THE COUNTY OF COCONINO

|  |  |  |
|---|---|---|
| JIN AH LEE, decedent, by her estate Representative, JUNGIL LEE, SANG CHUL LEE, Decedent's father, and DUKSON LEE, decedent's mother, | ) ) ) ) ) | No. CV2005-0307 |
| Plaintiffs, | ) ) | CERTIFICATE REGARDING |
| vs. | ) ) | COMPULSORY ARBITRATION |
| ANC CAR RENTAL CORP., et al., | ) ) | |
| Defendants. | ) ) | |

The undersigned certifies that the largest award sought by the complainant, including punitive damages, but excluding interest, attorneys' fees, and costs **does** exceed the limits set by Local Rule for compulsory arbitration.   This case **is not** subject to the Uniform Rules of Procedure for Arbitration.

Dated this 17ᵗʰ day of May, 2005.

SKOUSEN, SKOUSEN,
GULBRANDSEN & PATIENCE, P.C.

By: _____
Michael J. Skousen
Attorneys for Plaintiffs

SKOUSEN, SKOUSEN,
GULBRANDSEN &
PATIENCE, P.C.
ATTORNEYS AT LAW
414 EAST SOUTHERN AVE.
MESA, ARIZONA 85204-4993
(480) 833-8800
FAX (480) 833-7146

Exhibit A to Notice of Removal

# EXHIBIT 3

Exhibit A to Notice of Removal

1 | Thomas M. Klein (State Bar No. 010954)
BOWMAN AND BROOKE LLP
2 | Suite 1600 Phoenix Plaza
2901 North Central Avenue
3 | Phoenix, Arizona 85012
(602) 643-2300
4 | (602) 248-0947 - Fax

5

6 Attorneys for Defendant GM Corporation

7

8 | **SUPERIOR COURT OF ARIZONA**

| **COCONINO COUNTY**
9

10 | Jin Ah Lee, decedent, by her estate
representative, Jungil Lee,
Sang Chul Lee, decedent's father,   ) Case No. CV-20050307
11 | and Dukson Lee, decedent's mother,  )
12 |                  Plaintiff,         ) **ANSWER TO COMPLAINT AND JURY**
                                       ) **DEMAND**
13 | v.                                  )
14 | ANC Car Rental Corp., General Motors Corp.,  ) (Assigned to Honorable Fred Newton)
and Hong-Jun Jeon                    )
15 |                                     )
                  Defendants.          )
16 |_____ )

17 |         Plaintiffs have previously filed this same Complaint in federal court in Phoenix, as

18 | well as state court in New Jersey. Because the other two actions assert the same claims

19 | against the same defendants, General Motors Corporation (GM) is requesting, by way of a

20 | separate motion filed concurrently with this answer, that this matter be either dismissed or

21 | stayed.

22 |         GM, for its answer to plaintiffs' Complaint, admits, denies, and alleges as

23 | follows:

24 |         1.      GM denies each and every allegation of plaintiffs' Complaint, except

25 | those allegations that are hereinafter specifically admitted, qualified, or otherwise

26 | answered.

27 | . . .

28 | . . .

2.     GM is without sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraph 1, 2, and 3 of plaintiffs' Complaint, and denies the same.

3.     In response to paragraph 4 of plaintiffs' Complaint, GM admits that it is an entity authorized to conduct regular business in the State of Arizona and in this district and that GM designs and manufactures Chevrolet Malibu's.  GM denies that it is organized under the laws of the State of Michigan and has world wide corporate headquarters and principal offices at 767 5th Ave., New York, New York.  GM is a Delaware corporation with its principal place of business in Michigan.

4.     GM is without sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraph 5 of plaintiffs' Complaint, and denies the same.

## JURISDICTION AND VENUE

5.     In response to paragraph 6 of plaintiffs' Complaint, GM admits that the automobile crash which gives rise to this complaint occurred in Coconino County, Arizona. As noted above, however, GM contests jurisdiction and venue because plaintiffs filed this same action in two other venues.

## COMMON ALLEGATIONS

6.     Based on Arizona Accident Report 2003-04 3602 ("the Report"), Hong-Jun Jeon was driving with three passengers in a 2003 Chevrolet Malibu with VIN 1G1ND52J63M519959 owned by Alamo Car Rental with license plate number 4XLT007 as alleged in paragraph 7 of plaintiffs' Complaint. Based on the "SDM" equipped on the 2003 Malibu, the driver was traveling in excess of 90 mph when he lost control of the car and drove it off the pavement, causing it to overturn. GM is without sufficient information to determine the truth or falsity of the remaining allegations, and denies the same.

. . .

. . .

7.     In response to paragraphs 8, 9, 10, 11, 12, 13, 14, 15, of plaintiffs' Complaint, defendant is without sufficient information to determine the truth or falsity of the allegations set forth in plaintiffs' Complaint, and denies the same.

8.     Based on the Report, the Malibu was towed to Chief's Towing.  GM is without sufficient information to determine the truth or falsity of the remaining allegations, and denies the same.

9.     GM denies the allegations in paragraph 17 of plaintiffs' Complaint.

**ANSWER TO COUNT 1**

10.     GM re-alleges and incorporates herein its responses to paragraphs 1-17 of plaintiffs' Complaint.

11.     GM denies the allegations contained in paragraphs 18, 19, 20, 21, 22, and 23 of plaintiffs' Complaint.

12.     In response to the allegations contained in plaintiffs' Complaint contained in paragraphs 22 and 23, they state legal conclusions, nevertheless, GM denies the same.

**ANSWER TO COUNT 2**

13.     GM re-alleges and incorporates herein its responses to paragraphs 1-17 of plaintiffs' Complaint.

14.     GM denies the allegations contained in paragraph 25 of plaintiffs' Complaint.

15.     GM denies the allegations contained in paragraph 26 of plaintiffs' Complaint.

16.     In response to paragraphs 27 and 28 of plaintiffs' Complaint, they state legal conclusions, nevertheless, GM denies the same.

**ANSWER TO COUNT 3**

17.     GM re-alleges and incorporates herein its responses to paragraphs 1-17 of plaintiffs' Complaint.

. . .

18. GM denies the allegations contained in paragraph 30 of plaintiffs' Complaint.

19. In response to paragraphs 31 and 32 of plaintiffs' Complaint, they state legal conclusions, nevertheless, GM denies the same.

## ANSWER TO COUNT 4

20. GM re-alleges and incorporates herein its responses to paragraphs 1-17 of plaintiffs' Complaint.

21. GM denies the allegations contained in paragraph 34 of plaintiffs' Complaint.

22. In response to paragraphs 35 and 36, they state legal conclusions; nevertheless, GM denies the same.

## ANSWER TO COUNT 5

23. GM re-alleges and incorporates herein its responses to paragraphs 1-17 of plaintiffs' Complaint.

24. GM denies the allegation contained in paragraph 38 of plaintiffs' Complaint.

25. In response to paragraphs 39 and 40, they state legal conclusions; nevertheless, GM denies the same.

## ANSWER TO COUNT 6

26. GM incorporates and re-alleges herein its responses to paragraphs 1-17 of plaintiffs' Complaint.

27. GM denies the allegations contained in paragraph 42 of plaintiffs' Complaint.

28. The allegations contained in paragraphs 43 and 44 of plaintiffs' Complaint contain legal conclusions; nevertheless, GM denies the same.

## ANSWER TO COUNTS 7-12

29. GM re-alleges and incorporates herein its responses to paragraphs 1-17 of plaintiffs' Complaint.

30.     The allegations in paragraphs 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71 and 72 of plaintiffs' Complaint are not directed towards GM.  GM is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and, therefore, denies the same.

## AFFIRMATIVE ALLEGATIONS AND DEFENSES

31.     GM alleges that plaintiffs' Complaint, and each claim for relief therein set forth, fails to state a claim against GM upon which relief can be granted.

32.     GM affirmatively alleges that plaintiffs' injuries and damages, if any, were caused or contributed to or by the negligence of plaintiffs, or of plaintiffs' agents, or employees, or the joint or concurrent negligence of the plaintiffs, or plaintiffs' agents, or employees, and other persons, firms, corporations, or body politics over whom this answering defendant had no control or right of control, and that this comparative negligence bars any recovery by plaintiffs.

33.     GM affirmatively alleges that plaintiffs' damages, if any, must be reduced by the comparative fault of plaintiff, and other persons, including responsible non-parties pursuant to A.R.S. § 12-501 et seq.

34.     GM affirmatively alleges that plaintiffs' recovery of damages and losses, if any, must be reduced by the amounts received from collateral sources.

35.     GM affirmatively alleges that the acts or omissions, if any, of GM were not a substantial factor in bringing about the alleged injuries and, therefore, were not a contributing cause thereof, but were superseded by the acts or omissions of others, which were sole or independent, intervening and proximate causes of any such injuries or damages allegedly suffered.

36.     GM affirmatively alleges that, if it is determined that it manufactured or sold the vehicle described in plaintiffs' Complaint, the plans or designs for the vehicle and the methods and techniques of manufacturing, inspecting, testing, and labeling the vehicle conformed with the state of the art at the time the vehicle was sold.

37.   GM affirmatively alleges that, if it is determined that it manufactured or sold the vehicle described in plaintiffs' Complaint, the proximate cause of the incident giving rise to this action was an alteration or modification of the vehicle which was not reasonably foreseeable, made by a person other than this defendant subsequent to the time the vehicle was sold.

38.   GM affirmatively alleges that, if it is determined that it manufactured or sold the vehicle described in plaintiffs' Complaint, the proximate cause of the incident giving rise to this action was a use of the vehicle which was for a purpose, in a manner, or in an activity other than that which was reasonably foreseeable, or was contrary to any express and adequate instructions or warnings appearing on or attached to or delivered with the vehicle about which plaintiffs and plaintiffs' agents or employees knew, or in the exercise of reasonable diligence, should have known.

39.   GM affirmatively alleges that all of the activities and negligence of the plaintiffs, whether individually or jointly, which prevent their recovery of damages in this action are imputed to all other plaintiffs, barring their recovery of any damages.

40.   GM affirmatively alleges that plaintiffs failed to mitigate their damages.

41.   GM affirmatively alleges that the State of Arizona's judicially created definitions of manufacturing defect and design defect and standards for determining whether there has been an actionable failure to warn are unconstitutional in that, among other things, they are void for vagueness and an undue burden upon interstate commerce, as well as an impermissible effort to regulate in an area that has previously been preempted by the federal government.

42.   GM affirmatively alleges that plaintiffs' claims are barred by the doctrine of laches and spoliation of evidence.

43.   GM affirmatively alleges that, after appropriate discovery, the following affirmative defenses may be applicable:  lack of subject matter jurisdiction, statute of limitations bar, failure to join a necessary and proper party, abatement, estoppel, waiver, release, payment, *res judicata*, violation of a statute, violation of a public

1  policy, and failure to comply with a statutory requirement.  The extent to which

2  plaintiffs' claims may be barred by one or more of the foregoing affirmative defenses

3  cannot be determined until GM has had an opportunity to complete discovery.

4      44.    GM affirmatively alleges that plaintiffs' Complaint fails to set forth

5  sufficient facts to support a claim for punitive or exemplary damages.

6                              **JURY DEMAND**

7      45.    Pursuant to Rule 38 of the Arizona Rules of Civil Procedure, GM

8  demands a trial by jury on all issues raised in the pleadings in this action.

9      46.    WHEREFORE, Defendant General Motors Corporation requests that

10  plaintiffs take nothing by their Complaint and that the same be dismissed with

11  prejudice on the merits, that GM have and recover its costs, disbursements and

12  attorneys' fees incurred in this matter, and that GM receive all other relief which the

13  court deems to be just and reasonable.

14      DATED this ___*11th*___ day of July, 2005.

15                              BOWMAN AND BROOKE LLP

16

17                              By: *Thomas M. Klein*

18                              Thomas M. Klein
                                2901 N. Central Avenue
19                              Suite 1600
                                Phoenix, Arizona 85012
20                              Attorneys for Defendant
                                General Motors Corporation

21  **COPY** of the foregoing mailed this
    __11th__ day of July, 2005, to:
22

23  Michael S. Kimm, Esq.
    190 Moore Street, Suite 272
24  Hackensack, New Jersey  07601
    Attorney for Plaintiffs

25  Raymond R. Cusack, Esq.
    Timothy M. Medcoff, Esq.
26  QUARLES, BRADY, STREICH & LANG
    One South Church Avenue
27  Suite 1700
    Phoenix, Arizona  85701
28  Attorneys for Defendant ANC Rental Corp.

Exhibit A to Notice of Removal

G. Peter Spiess, Esq.
SPIESS & ASSOCIATES, P.C.
420 West Roosevelt Street
Phoenix, Arizona  85003
Attorneys for Defendant Hong-Jun Jeon

Exhibit A to Notice of Removal

# EXHIBIT 4

Exhibit A to Notice of Removal

1   Thomas M. Klein (State Bar No. 010954)
    BOWMAN AND BROOKE LLP
2   Suite 1600 Phoenix Plaza
    2901 North Central Avenue
3   Phoenix, Arizona 85012
    (602) 643-2300
4   (602) 248-0947 - Fax

5

6   Attorneys for Defendant GM Corporation

7

8                   SUPERIOR COURT OF ARIZONA

9                         COCONINO COUNTY

10  Jin Ah Lee, decedent, by her estate          )
    representative, Jungil Lee,                   )
11  Sang Chul Lee, decedent's father,            )   Case No. CV-20050307
    and Dukson Lee, decedent's mother,           )
12                                                )
                     Plaintiff,                   )   **CERTIFICATE REGARDING**
13                                                )   **COMPULSORY ARBITRATION**
    v.                                            )
14                                                )
    ANC Car Rental Corp., General Motors Corp.,  )   (Assigned to Honorable Fred Newton)
15  and Hong-Jun Jeon                            )
                                                  )
16                   Defendants.                  )
    _____       )

17          Pursuant to Rule 72, Arizona Rules of Civil Procedure, defendant General Motors

18  Corporation (GM) hereby states that the amount in controversy in this matter exceeds

19  $50,000 and, therefore, is not subject to arbitration.

20          DATED this __11th__ day of July, 2005.

21                                    BOWMAN AND BROOKE LLP

22

23                                    By: _Thomas M. Klein_____
24                                          Thomas M. Klein
                                            2901 N. Central Avenue
25                                          Suite 1600
                                            Phoenix, Arizona 85012
26                                          Attorneys for Defendant
                                            General Motors Corporation

27  . . .

28  . . .

Exhibit A to Notice of Removal

1 | **COPY** of the foregoing mailed this
  | _11th_ day of July, 2005, to:
2 |
3 | Michael S. Kimm, Esq.
  | 190 Moore Street, Suite 272
  | Hackensack, New Jersey  07601
4 | Attorney for Plaintiffs
5 | Raymond R. Cusack, Esq.
  | Timothy M. Medcoff, Esq.
6 | QUARLES, BRADY, STREICH & LANG
  | One South Church Avenue
7 | Suite 1700
  | Phoenix, Arizona  85701
8 | Attorneys for Defendant ANC Rental Corp.
9 | G. Peter Spiess, Esq.
  | SPIESS & ASSOCIATES, P.C.
10 | 420 West Roosevelt Street
   | Phoenix, Arizona  85003
11 | Attorneys for Defendant Hong-Jun Jeon
12 |
13 | _____
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

Exhibit A to Notice of Removal

# EXHIBIT 5

Exhibit A to Notice of Removal



COPY

1   Thomas M. Klein (State Bar No. 010954)
    BOWMAN AND BROOKE LLP
2   Suite 1600 Phoenix Plaza
    2901 North Central Avenue
3   Phoenix, Arizona  85012
    (602) 643-2300
4   (602) 248-0947 - Fax

5

6   Attorneys for Defendant GM Corporation

7                      **STATE OF ARIZONA**

8                     **COCONINO COUNTY**

9
    Jin Ah Lee, decedent, by her estate          )
10  representative, Jungil Lee,                   )
    Sang Chul Lee, decedent's father,            )  Case No. CV-20050307
11  and Dukson Lee, decedent's mother,           )
                                                  )
12               Plaintiff,                       )  **MOTION TO DISMISS AND/OR STAY**
                                                  )
13  v.                                            )
                                                  )  (Assigned to Honorable Fred Newton)
14  ANC Car Rental Corp., General Motors Corp.,  )
    and Hong-Jun Jeon                             )
15                                                )
                 Defendants.                      )
16  _____)

17         Defendant General Motors Corporation (GM) hereby moves this Court for an Order

18  dismissing the above-entitled action. In the alternative, GM moves to either stay the action

19  pending the resolution of two previously filed duplicative actions or require plaintiff to

20  dismiss the two previously-filed cases and proceed in this Court. This motion is supported

21  by the attached Memorandum of Points and Authorities.

22              **MEMORANDUM OF POINTS AND AUTHORITIES**

23  I.     **FACTUAL BACKGROUND**

24         On June 1, 2003, a 2003 Chevrolet Malibu rented from defendant ANC and driven

25  by defendant Hong Jun Jeon, a Korean national, was involved in a one-car rollover crash

26  outside of Kayenta, Arizona. (See Arizona Traffic Accident Report, hereinafter "Report,"

27  #2003-043607, dated June 1, 2003, attached as Exhibit A.) In the course of the incident,

28  Jin Ah Lee, also a Korean national, was ejected from the car and subsequently died from

::ODMA\PCDOCS\PHX\235930\1

1   the resulting injuries. (Report, Fatal Supplement, dated June 1, 2003, attached as

2   Exhibit B). Plaintiffs, representatives of Ms. Lee's estate, have now filed three lawsuits

3   against GM, ANC Car Rental Corporation, and Hong Jun Jeon, alleging various claims of

4   negligence.

5        The plaintiffs first brought suit against defendants in the United States District Court

6   of Arizona. (See Complaint, dated August 8, 2003, attached as Exhibit C.) Plaintiffs

7   claimed federal jurisdiction was proper even though one of the named defendants, driver

8   Hong Jun Jeon, was of the same Korean citizenry as the plaintiff's estate. (See Plaintiffs'

9   Response to Court Order to Show Cause for Possible Dismissal for Lack of Subject-Matter

10  Jurisdiction, June 10, 2004, attached as Exhibit D.) The District Court found that having a

11  Korean plaintiff and a Korean defendant destroyed diversity, and dismissed the case for

12  lack of subject matter jurisdiction. (See Order, dated October 14, 2004, attached as

13  Exhibit E). Plaintiffs appealed. The appeal is still pending in the Ninth Circuit. (See

14  Plaintiffs' Notice of Appeal, dated November 8, 2004, attached as Exhibit F.)

15       After the dismissal by the federal trial court, plaintiffs filed the same claim against

16  the same defendants, but this time in New Jersey state court. (See Complaint, Superior

17  Court of New Jersey, Hudson County, dated March 28, 2005, attached as Exhibit G.) The

18  complaint is essentially identical to the federal complaint, with plaintiffs alleging that venue

19  is proper in New Jersey because the decedent was a resident alien of New Jersey at the

20  time of her death. In the complaint filed in this case, however, plaintiffs alleged the

21  decedent was attending school in Massachusetts at the time of her death. (See Plaintiffs'

22  Complaint, ¶ 1.)

23       Now, plaintiffs have filed the same lawsuit in this Court. All in all, plaintiffs have filed

24  three separate yet identical lawsuits arising from the same rollover wreck. Such

25  unnecessary and wasteful actions delay and damage our entire system of jurisprudence.

26  The attendant costs created from such needless repetition are borne not only by the

27  parties to this case, but by all who utilize any part of the legal system. Furthermore, the

28  presence of three essentially identical claims in three different jurisdictions raises the

1   specter of conflicting resolutions, along with the prospects of numerous appeals and other

2   delays.

3       Arizona and Ninth Circuit case law, as well as issues of fairness, comity, and

4   judicial economy, advocate either the dismissal of this case entirely, a stay of proceedings

5   until the federal appeal is decided, or a dismissal of the previous two claims and a

6   decision by plaintiffs to proceed to finality in this Court.

7   **II.   LEGAL ARGUMENT**

8       This Court has the discretion to stay an action when a prior action concerning the

9   same subject matter is pending in federal court. Tonnemacher v. Touche Ross & Co., 186

10  Ariz. 125, 130, 920 P.2d 5, 10 (Ariz. Ct. App. 1996) (citing Landis v. North American Co.,

11  299 U.S. 248, 254, 57 S.Ct. 163, 165-166 (1936)). A stay is appropriate in this matter since

12  plaintiffs have a prior action pending in federal court concerning the same cause of action

13  and arising out of the same accident. Furthermore, many of the policy reasons that the

14  Tonnemacher court put forth as persuasive when granting a stay are even more applicable

15  here, where three separate cases are involved, not just two as in Tonnemacher.

16      In evaluating whether to grant a stay, this Court should consider the following factors:

17          1)    avoiding increased costs;

18          2)    preventing harassment by repeated suits involving the same subject

19              matter;

20          3)    avoiding extra costs and burden to judicial resources;

21          4)    avoiding piecemeal litigation;

22          5)    avoiding unusually difficult questions of federal law; and

23          6)    avoiding conflicting judgments by state and federal courts.

24  Tonnemacher, 186 Ariz. at 130, 420 P.2d at 10.

25      In this case, a stay of this action is mandated by five of the Tonnemacher factors.

26      First, staying this action would avoid additional costs to all parties. All parties will

27  incur additional costs if they must prosecute and defend all three cases at the same time.

28  The costs are especially egregious in this matter, as the venues chosen range the entire

1    country and involve South Korean citizens who have no plans to return to the United States

2    in the near future. Requiring defendants to litigate three separate actions on both coasts with

3    numerous foreign parties attached would increase costs to all parties dramatically.

4          Second, the filing of the same action twice more after the federal trial court action was

5    dismissed suggests possible harassment of the defendants. The subject matter is the same,

6    the complaints are essentially identical, and the lawsuit has been repeated not once, but

7    twice more after the first dismissal. It seems that only one of the two additional lawsuits is

8    necessary for plaintiffs to receive due process. At the least, the choice of litigating in two

9    separate and logistically disparate venues, all while the original federal claim is still pending

10   appeal, suggests a situation necessitating simplification.

11         Third, a stay of this action will preserve costs and judicial resources. The costs could

12   rise to astronomical levels if discovery in three separate lawsuits becomes necessary.

13   Having separate suits proceeding concurrently over three thousand miles apart will tax all

14   parties involved, both financially and logistically. Further, judicial resources will be likewise

15   needlessly burdened, as three separate and distinct court systems have been asked to deal

16   with the same case. It is undisputed that both federal and state courts are over-docketed.

17   Allowing one accident to spawn three lawsuits in three states, in both state and federal court

18   systems, would only further exacerbate one of the major problems facing our judicial system.

19   The Ninth Circuit has previously commented on this concept of judicial efficiency:

20              [a] trial court may . . . find it is efficient for its own docket and the
              fairest course for the parties to enter a stay of an action before it,
21              pending resolution of independent proceedings which bear upon the
              case. This rule applies whether the separate proceedings are judicial,
22              administrative, or arbital in character, and does not require that the
              issues in such proceedings are necessarily controlling of the action
23              before the court.

24   Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-64 (1979).

25         Fourth, a stay will avoid piecemeal litigation. This matter should be fully and finally

26   decided by one court. Our judicial system is not set up to attain justice one interlocutory

27   order at a time, with an appeal coming after each setback in whichever court motions

28   . . .

1   happen to be filed. Justice requires this matter be adjudicated in its entirety in only one

2   court, rather than in pieces scattered across the country.

3       Finally, a stay will avoid the possibility of conflicting judgments of this action with one

4   or both of the other two pending actions. This can be avoided by either granting a stay of the

5   action pending the final outcome of one of the other two, previously filed cases, or ordering

6   the dismissal of two of the lawsuits with an agreement by plaintiffs to proceed in one court.

7   This would empower the principles of comity.

8   **III.    CONCLUSION**

9       Plaintiffs have filed three separate complaints in three separate court systems across

10  the nation regarding the same incident. The claims are the same, the named defendants are

11  the same, and the named plaintiffs are the same. Plaintiffs' claim has been dismissed from

12  federal court for lack of subject matter jurisdiction and is pending on appeal. Allowing this

13  case to go forth while the federal court appeal is pending and while a separate state court

14  action is proceeding in New Jersey would lead to a waste of judicial resources, abrogation of

15  principles of comity, and untoward delay in the final resolution of this matter. Applicable case

16  law, including Tonnemacher and Leyva, suggests that this matter should be either dismissed

17  or stayed.

18      Therefore, defendant General Motors Corporation respectfully requests that this

19  Court either dismiss this action in its entirely. In the alternative, GM requests that this Court

20  enter a stay in this action pending the resolution of the previously filed duplicative actions

21  currently pending in the Ninth Circuit Court of Appeals and in New Jersey state court. As a

22  final alternative, GM requests that this Court give plaintiffs the option of proceeding in this

23  case on the condition that plaintiffs dismiss the previous two claims and elect to proceed to

24  finality in this Court.

25

26

27  . . .

28  . . .

DATED this __11th__ day of July, 2005.

BOWMAN AND BROOKE LLP

By: _Thomas M. Klein_
Thomas M. Klein
2901 N. Central Avenue
Suite 1600
Phoenix, Arizona  85012
Attorneys for Defendant
General Motors Corporation

**COPY** of the foregoing mailed this
__11__ day of July, 2005

Michael S. Kimm, Esq.
190 Moore Street, Suite 272
Hackensack, New Jersey  07601
Attorney for Plaintiffs

Raymond R. Cusack, Esq.
Timothy M. Medcoff, Esq.
QUARLES, BRADY, STREICH & LANG
One South Church Avenue
Suite 1700
Phoenix, Arizona  85701
Attorneys for Defendant ANC Rental Corp.

G. Peter Spiess, Esq.
SPIESS & ASSOCIATES, P.C.
420 West Roosevelt Street
Phoenix, Arizona  85003
Attorneys for Defendant Hong-Jun Jeon

Exhibit A to Notice of Removal

BORAH YOUNG
CLERK OF SUPERIOR COURT OF COCONINO COUNTY,   FLAGSTAFF, AZ

```
   DATE:  07-12-2005
   TIME:  14:19:08    CHECK:  3165        CASH:     CREDIT:    CHANGE:
RECEIPT #:  S 000133555    $141.00       $0.00      $0.00      $0.00
RECEIVED OF:  BOWMAN & BROOKE LLP        MEMO:   BOWMAN & BROOKE LLP
   BY CLERK:  SHEENA RACHER                      GM CORPORATION
```

| CASE NUMBER | EVENT/SERVICE | AMOUNT |
|---|---|---|
| S -0300 -CV -0020050307   1208  PYMT: ANSWER | | $91.00 |
| J LEE VS ANC CAR RENTAL CORP | | |
| PARTY:     GENERAL MOTORS CORP | | |
| S -0300 -CV -0020050307   9992  FUND: SUP CT ENHANCEMENT FEE | | $50.00 |
| J LEE VS ANC CAR RENTAL CORP | | |
| PARTY:     GENERAL MOTORS CORP | | |
| | TOTAL RECEIPT... | $141.00 |

```
*    CHECK/CHEQUE IS CONDITIONAL PAYMENT    *
* PENDING RECEIPT OF FUNDS FROM BANK. *
```

**EXHIBIT A**

JUL 14 2003 **5451**

ADOT USE ONLY

## ARIZONA TRAFFIC ACCIDENT REPORT

**1** POLICE ONLY - FORWARD COPY TO:
ADOT TRAFFIC RECORDS SECTION 064R
206 S. 17th AVE., PHOENIX, ARIZONA 85007-3233

| ★REPORT ID | | | | Agency Report Number |
|---|---|---|---|---|
| YEAR MONTH DAY | HOUR | NCIC NO. | OFFICER ID NO. | **2003-043607** |
| 2003/06/01 | 16 30 | 0799 | 05894 | Total No. of Sheets 17 |

**COMPLETE THE FOLLOWING SUPPLEMENT IF ANY ☑ (circle) AND ANY ◇ (diamond) ARE CHECKED**

**2** | Total Units 1 | Total Injuries 3 | Total Fatalities 1 | Estimated Total Damage Compared to Limit ☑ Over ☐ Under | ◇ Fatal ☐ Hit/Run | ☐ Govt. Prop. | ◇ Persons Transported for Immediate Medical Care? ◇ Tow Away at Least One (1) Vehicle from Scene? | District or Grid No. 0 3 0 4 |

**3** LOCATION
On Highway/Road/Street **160**
Intersecting Street, Road / M.P. or R.P.
☑ Outside **Kayenta/Tsegi** ☐ Inside
☑ At ☐ From **380.6**
☐ North ☐ South ☐ Plus
☐ East ☐ West ☐ Minus
County **Navajo**
Distance
☐ Measured ☐ Approximate ☐ Miles ☐ Feet

**TRAFFIC UNIT NO. 1**

| State M | Class | End | ☐ DL# ☐ SSN ☐ BOTH | ☑ Driver ☐ Pedestrian | Name **Hong Jun Jeon** | | | Sex M | Inj. 3 |
|---|---|---|---|---|---|---|---|---|---|

| Restrictions | Date of Birth 01/03/80 | Address **New England School of English 36 JFK Street** | City **Cambridge** | State **MA** | Zip Code **02138-** | Telephone Number (w/Area Code) **617-868-2647** |

| Plate Number **4XLT007** | State **CA** | Year **03** | ☐ Same as Owner/Carrier Name **ALAMO CAR RENTAL** | Address **LAS VEGAS** | City | State **NV** | Zip Code |

| Body Style **4-DOOR** | ◇ Bus (9 or more seats) | Make **MALIBU** | Color **WHITE** | Year **03** | VIN **1G1NDS2J63M519959** | Safety Device Code **3** |

| Removed to **CHIEF TOWING KAYENTA** | ☑ Disabled ☐ Not Disabled | Removed by **CHIEF TOW TRUCK** | Orders of **DRIVER** | Posted Speed Limit **65** | Ofc Est Speed |
| Insurance Company **ALAMO CAR RENTAL** | | Telephone Number (w/Area Code) **800-407-4411** | Policy Number **ID-FGTY6YVPR** | Effective Date | Expiration Date **06/20/2003** |

| Trailer (Other Unit) Plate No. | State | Year | Description of Trailer or Other Unit | G.V.W. (Registered) of Power Unit Greater than 10k pounds? ◇ Yes ☐ No | HazMat Placard? ◇ Yes ☐ No | 4-digit | 1-digit | Was HazMat Cargo Released? ☐ Yes ☐ No |

**TRAFFIC UNIT NO. 2**

| State | Class | End | ☐ DL# ☐ SSN ☐ BOTH | ☐ Driver ☐ Pedestrian | Name | | | Sex | Inj. |
|---|---|---|---|---|---|---|---|---|---|

| Restrictions | Date of Birth | Address | City | State | Zip Code | Telephone Number (w/Area Code) |

| Plate Number | State | Year | ☐ Same as Owner/Carrier Name | Address | City | State | Zip Code |

| Body Style | ◇ Bus (9 or more seats) | Make | Color | Year | VIN | Safety Device Code |

| Removed to | ☐ Disabled ☐ Not Disabled | Removed by | Orders of | Posted Speed Limit | Ofc Est Speed |
| Insurance Company | | Telephone Number (w/Area Code) | Policy Number | Effective Date | Expiration Date |

| Trailer (Other Unit) Plate No. | State | Year | Description of Trailer or Other Unit | G.V.W. (Registered) of Power Unit Greater than 10k pounds? ☐ Yes ☐ No | HazMat Placard? ☐ Yes ☐ No | 4-digit | 1-digit | Was HazMat Cargo Released? ☐ Yes ☐ No |

**TRAFFIC UNIT NO. 3**

| State | Class | End | ☐ DL# ☐ SSN ☐ BOTH | ☐ Driver ☐ Pedestrian | Name | | | Sex | Inj. |
|---|---|---|---|---|---|---|---|---|---|

| Restrictions | Date of Birth | Address | City | State | Zip Code | Telephone Number (w/Area Code) |

| Plate Number | State | Year | ☐ Same as Owner/Carrier Name | Address | City | State | Zip Code |

| Body Style | ◇ Bus (9 or more seats) | Make | Color | Year | VIN | Safety Device Code |

| Removed to | ☐ Disabled ☐ Not Disabled | Removed by | Orders of | Posted Speed Limit | Ofc Est Speed |
| Insurance Company | | Telephone Number (w/Area Code) | Policy Number | Effective Date | Expiration Date |

| Trailer (Other Unit) Plate No. | State | Year | Description of Trailer or Other Unit | G.V.W. (Registered) of Power Unit Greater than 10k pounds? ☐ Yes ☐ No | HazMat Placard? ☐ Yes ☐ No | 4-digit | 1-digit | Was HazMat Cargo Released? ☐ Yes ☐ No |

**5** PASSENGERS

Seating Position
07 04 01
08 05 02
09 08 03

10 Not in Passenger Compart.
11 Motorcycle, Bus
12 Other
13 Unknown
14 Pedalcyclist

Safety Devices
1 - None used
2 - Lap belt
3 - Lap & shoulder
4 - Airbag deployed
5 - Child restraint
6 - Protective helmet
7 - Passive belt
8 - Passive & lap
9 - Other
0 - Unknown

Injury Severity Codes
1 - No Injury
2 - Possible Injury
3 - Non Incapacitating Injury
4 - Incapacitating Injury
5 - Fatal Injury
8 - Not Reported / Unknown

| Unit No. | Seat Pos. | Saf. Dev. | Name | Address | City | State | Zip Code | Age | Sex | Inj. Sev. |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 3 | 3 | JOON KYU JANG | N.E.S.E. 36 JFK STREET | CAMBRIDGE | MA | 02138- | 24 | M | 3 |
| 1 | 4 | 1 | JIN AH LEE | N.E.S.E. 36 JFK STREET | CAMBRIDGE | MA | 02138- | 22 | F | 5 |
| 1 | 6 | 1 | HONG JU EYIM | N.E.S.E. 36 JFK STREET | CAMBRIDGE | MA | 02138- | 21 | F | 3 |

**6** | Other Property Damage | | | | | |
| Owner's Name | Address | City | State | Telephone Number (w/Area Code) | Age |

**7** WITNESSES

| Name | Address | City | State | Telephone Number (w/Area Code) | Age |
|---|---|---|---|---|---|
| PHILOMENA CLITSO | PO BOX 3595 | KAYENTA | AZ | 928-265-7414 | 37 |
| BRIAN MARTINEZ | 200 S MARSHAL ST #11 | CASA GRANDE | AZ | 520-876-4747 | 29 |
| PAULINE REED | 200 S MARSHAL ST #11 | CASA GRANDE | AZ | 520-876-4747 | 44 |

**8** | Photos Taken ☑ Yes ☐ No | Photographer's Name **CI SNYDER** | ID Number | Agency Name **NAVAJO NATION CRIMINAL INVESTIGAT** | Investigation ☑ Yes ☐ No | Date Investigated **06/01/2003** | Time Investigated **18 00** |
| Officer's Signature **GERALD JOHNSON** | Badge No. **5894** | Agency Name **Arizona Department of Public Safety** | | | Date Completed **06/12/2003** |

D1-2704  R06/00   DPS 802-02704  Rev. 3/2001   Electronic Form (Version 2.0  Dated 3/15/2001)

H.A 4739

003

**EXHIBIT B**

**ARIZONA TRAFFIC ACCIDENT REPORT - FATAL SUPPLEMENT**

FORWARD COPY TO
ACCIDENT RECORDS ANALYSIS UNIT 064R
ARIZONA DEPARTMENT OF TRANSPORTATION
206 S. 17th AVE., PHOENIX, ARIZONA 85007-3233

**REPORT ID**

| YEAR MONTH DAY | HOUR | NCIC NO. | OFFICERS'S ID NO. |
|---|---|---|---|
| 2003/06/01 | 16 30 | 0799 | O 5894 |

Agency Report Number: **2003-043607**

☐ Dead at time of investigation
☐ Delayed fatality

**2. VICTIM**

NAME OF VICTIM: Jin An Lee
☐ DRIVER ☐ PEDALCYCLIST
☐ PEDESTRIAN ☐ PASSENGER
RACE: Asian
MARITAL STATUS: UNK.

ADDRESS: New England School of English 36 JFK st
CITY: Cambridge
STATE: MA
MARKS, SCARS/TATTOOS:

| SEX | WEIGHT | HEIGHT | EYES | HAIR | DATE OF BIRTH | OCCUPATION |
|---|---|---|---|---|---|---|
| F | UNKNOWN | | — | | 09/15/1980 | Student |

VICTIM REMOVED TO: Coconino County Medical Examiner's office
VICTIM REMOVED BY: Norvel Owens Mortuary

DESCRIPTION OF CLOTHING: RED SWEATSHIRT, PINK BRA, TAN SHORTS, PINK UNDERSHORTS AND BROWN LEATHER BELT

DESCRIPTION OF PROPERTY: SILVER COLORED RING

DESCRIPTION OF PROPERTY (CONT):

| PROPERTY IN POSSESSION OF: NAME | ADDRESS | CITY | STATE |
|---|---|---|---|
| MEDICAL EXAMINER-M. Iliescu | 2500 N. Fort Valley Rd. | Flagstaff | AZ |

| NEXT OF KIN: NAME | ADDRESS | CITY | STATE | RELATIONSHIP |
|---|---|---|---|---|
| Sang Chum Lee | South Korea | | | Father |

NOTIFIED: ☐ YES ☐ NO  NOTIFIED BY: Lee (consulate)

| DATE | TIME | MEDICAL EXAMINER |
|---|---|---|
| 06/02/2003 | 16 30 | M. Iliescu |

**3. DRIVER**

NAME OF DRIVER: ☐ SAME AS VICTIM   Hong Jun Jeon
RACE: Asian
OCCUPATION: Student
MARITAL STATUS: Single

**4. COMMENTS:**

Flagstaff Police Department made follow up for me at Flagstaff Medical Center. The victims were already transported to Medical centers when I arrived at the accident scene. Kayenta Police Department was called and their Officers were on scene first.

**5. TIME**

| POLICE CALLED | POLICE ARRIVED | AMBULANCE CALLED | AMBULANCE ARRIVED | AMBULANCE DEPARTED |
|---|---|---|---|---|
| 16 30 | 16 39 | 16 30 | 16 42 | 18 36 |

**6. MARK DAMAGED AREA(S) OF VICTIM'S VEHICLE**

☒ TOP
☒ UNDERCARRIAGE
☐ NONE
☐ UNKNOWN

**7. RESTRAINT FAILURE / IMPROPER RESTRAINT USAGE**

| ENTER SEAT POSITION | 1 | 3 | 4 | 6 |
|---|---|---|---|---|
| NONE FAILED | ⊙ | ⊙ | | |
| LAP FAILED | | | | |
| SHOULDER FAILED | | | | |
| BOTH FAILED | | | | |
| CHILD RESTRAINT | | | | |
| AIR BAG NOT DEPLOYED | ⊙ | ⊙ | | |
| PASSIVE SYSTEM | | | | |
| UNKNOWN | | | | |
| RESTRAINT PROPERLY USED | | | | |
| CHILD RESTRAINT | | | | |
| PASSIVE & LAP | | | | |
| SHOULDER HARNESS | | | | |

(RESTRAINT FAILURE / IMPROPER USAGE)

**8. SUPPLEMENTAL DATA   CHECK ONE IN EACH CATEGORY**

ACCIDENT FIRST REPORT BY
☐ PERSONS INVOLVED
☒ PASSING MOTORIST
☐ POLICE
☐ RESIDENT BYSTANDER
☐ OTHER

VICTIM EJECTED
☐ NOT EJECTED
☒ COMPLETE
☐ PARTIAL
☐ UNKNOWN

VICTIM EXTRICATION
☒ NOT REQUIRED
☐ BY AMBULANCE ATTENDANT
☐ BY POLICE
☐ BY FIRE DEPARTMENT
☐ BY PASSERBY
☐ OTHER

ACCIDENT LOCALE
☐ URBAN
☒ RURAL
☐ UNKNOWN

TERRAIN TYPE
☒ LEVEL
☐ HILLY
☐ MOUNTAINOUS

DRUG SCREEN TAKEN
☐ YES
TYPE _____
RESULT _____
☒ NO
☐ UNKNOWN

DRIVER FAMILIAR WITH LOCALE
☐ YES
☒ NO
☐ UNKNOWN

ROAD ALIGNMENT
☒ STRAIGHT ROAD
☐ CURVED
☐ UNKNOWN

VEHICLE TRANSMISSION
☒ AUTOMATIC
☐ MANUAL
☐ UNKNOWN

COMPLIANCE WITH DRIVER LICENSE RESTRICTIONS
☐ YES
☐ NO
☒ UNKNOWN

BLOOD ALCOHOL CONTENT   TEST TAKEN
☐ YES
TYPE _____
RESULT _____
☒ NO
☐ UNKNOWN

**9.** OFFICER SIGNATURE AND ID NUMBER: _[signature]_

| ID NUMBER | DATE |
|---|---|
| 5894 | 06/12/2003 |

01-2704 7/92
T+ FORM N

DPS B02-01040
12/99

| SUPPLEMENT<br>FORWARD COPY TO<br>ACCIDENT RECORDS ANALYSIS UNIT 064R<br>ARIZONA DEPARTMENT OF TRANSPORTATION<br>AM'S 17TH AVE, PHOENIX, ARIZONA 85007-3213 | YEAR  MONTH  DAY | HOUR | NCIC | OFFICER'S<br>ID NO | AGENCY REPORT NUMBER |
|---|---|---|---|---|---|
| | 030601 | 1630 | 0799 | 5894 | 2003-043607 |

## ACCIDENT DESCRIPTION
### (NARRATIVE)

## Synopsis:

This is a one vehicle fatal collision that occurred on June 01, 2003, at approximately 1630 hours on US-160, at milepost 380.6, twelve miles west of Kayenta, Arizona.

## Initial Observation

Upon arrival at the scene, I observed a white Chevy four door sedan-(Vehicle-1), at it's final rest on the south side of the eastbound lane. The white sedan was on it's top. The occupants in the vehicle were already transported to the hospital. There were two Kayenta Police Officers at the location controlling traffic and one Criminal investigator taking pictures.

## Environmental And Road Factors

US-160 highway is a designated west and east bound lanes, constructed of asphalt. The roadway in the area of collision travels geographically east and west. The traffic lanes are separated by yellow broken painted centerline. The roadway is constructed of asphalt and was free of debris or obvious defects at the time of the collision. The lighting conditions at the time of the investigation were those of sunny, bright lighting and heavy traffic.

## Traffic Unit Information

Traffic unit one is a Chevy Malibu, passenger sedan vehicle, bearing California license of 4XLT007 and vehicle identification number of 1G1ND52J63M519959. The vehicle is registered to Alamo car rental, of Las Vegas. Traffic unit one sustained damages as following: to the top of cab, whole right/left side, the entire front end and the trunk.

## Driver/Passenger's Statement

The driver stated they were coming from Monument Valley park and going to Grand Canyon when they got into an accident. He stated he was following a slow vehicle and started to pass, when he saw another vehicle on coming, he braked and tried to go in between two vehicles following each other, jerked the vehicle and lost control. He gestured with both hands, which way the vehicle started to skid, to the left, off the eastbound lane. The driver said he was traveling at approximately 65 miles per hour when he lost control of the vehicle. The driver stated the two passengers in the back were not wearing seatbelts at the time of the accident.

The front passenger stated they were passing another vehicle when the driver braked and lost control of the vehicle, sliding off the eastbound lane and rolling. The passenger stated the two females in the back

| Officer Name | ID No. | Supervisor Name | Page 1 of 3 | Date |
|---|---|---|---|---|
| Gerald Johnson | 5894 | | | |

| SUPPLEMENT<br>1 FORWARD COPY TO<br>ACCIDENT RECORDS ANALYSES UNIT 064R<br>ARIZONA DEPARTMENT OF TRANSPORTATION<br>206 S. 17TH AVE., PHOENIX, ARIZONA 85007-1211 | YEAR MONTH DAY | HOUR | NCIC | OFFICER'S<br>ID NO. | AGENCY REPORT NUMBER |
|---|---|---|---|---|---|
| | 030601 | 1630 | 0799 | 5894 | 2003-043607 |
| ACCIDENT DESCRIPTION<br>(NARRATIVE) | | | | | |

seat were not wearing seatbelts when they got into the accident.

## Injury Information

The driver sustained bruises and scratches in the facial area, arms and leg area. He was treated and released. The front passenger sustained bruises and scratches in the facial, arms and leg area. He was treated and released. The second passenger that was ejected, sustained head injuries, bruises and scratches, was transported to Flagstaff Medical center for further observation and released. The first ejected passenger sustained massive trauma and died at Flagstaff Medical center. Time of death was 1940 hours, she was pronounced by Craig Knoll, MD. Coconino County Office of Medical Examiner, Medical Examiner, M. Iliescu responded to the hospital.

## Witness Information

There were three witnesses that wrote statements, attached to the report. Witness #1 stated they were traveling eastbound, when they saw the white car and slowed down. The white sedan fish tailed on the eastbound lane and went off the eastbound lane, rolled four times, ejecting two occupants from the white sedan. Witness #2 and #3 stated they were westbound and saw in their rear view mirror, a white sedan passing vehicles, when the white sedan went off the roadway and rolled, creating a cloud of dust. They also saw the vehicle that was being passed park behind, then drove off.

## Kayent at Police Officers/Kayenta Criminal Investigator

I arrived at the scene and Kayenta Police Officers, G. Tso, and J. White were already processing the scene. The victims were already transported to Kayenta Medical center and Flagstaff Medical center. The Officers had interviewed the witnesses and had statements from them. The Kayenta Criminal Investigator, Kirk Snyder had taken pictures of the whole scene. There supplement are not complete at this time and the pictures are not processed, they are pending.

## Investigation

Investigation revealed that Traffic unit number one was traveling westbound, on the eastbound lane. Traffic unit number one braked and skidded counter clock wise, indicated by skid marks. Traffic unit number one then skidded sideways off the roadway into the dirt. Traffic unit number one started to roll as the right side tires skidded into the soft dirt. Traffic unit number one continued to roll at least three and half times, ejecting two occupants in the process. Traffic unit number one came to rest on it's top cab, upside down. Investigation was based on roadway marks, dirt marks, gouges, debris, vehicle damage, driver's statement, passenger's statements, witness statements and Kayenta Police Officers

| Officer Name | ID No. | Supervisor Name | Page 2 of 3 | Date |
|---|---|---|---|---|
| Gerald Johnson | 5894 | | | |

Exhibit A to Notice of Removal

| SUPPLEMENT FORWARD COPY TO ACCIDENT RESEARCH ANALYSIS UNIT 064R ARIZONA DEPARTMENT OF TRANSPORTATION 206 S. 17TH AVE., PHOENIX, ARIZONA 85007-3213 | YEAR MONTH DAY | HOUR | NCIC | OFFICER'S ID NO. | AGENCY REPORT NUMBER |
|---|---|---|---|---|---|
| | 030601 | 1630 | 0799 | 5894 | 2003-043607 |

## ACCIDENT DESCRIPTION
### (NARRATIVE)

statements.

| Officer Name | ID No. | Supervisor Name | Page 3 of 3 | Date |
|---|---|---|---|---|
| Gerald Johnson | 5894 | | | |

Exhibit A to Notice of Removal

| ARIZONA TRAFFIC ACCIDENT REPORT ACCIDENT MEASUREMENT SUPPLEMENT | REPORT ID | | | | | | Agency Report Number |
|---|---|---|---|---|---|---|---|

FORWARD COPY TO: ACCIDENT RECORDS ANALYSIS UNIT 064R ARIZONA DEPARTMENT OF TRANSPORTATION 206 S. 17th AVE., PHOENIX, ARIZONA 85007-3233

| YEAR MONTH DAY | HOUR | NCIC NO. | OFFICERS'S ID NO. | |
|---|---|---|---|---|
| 2003/06/01 | 16 30 | 0799 | O 5894 | 2003-043607 |

ZERO POINT IS: CULVERT—(0)

Measurements are in feet and tenths ☐

EDGE IS: EDGE OF ROADWAY        REFERENCE POINT IS: EDGE OF ROADWAY—(RP)

Feet and Inches ☑

| POINT | FROM EDGE | FROM RP | DESCRIPTION OF POINT MEASURED |
|---|---|---|---|
| 0 | 19-04 | 0 | CULVERT-(CENTERED) |
| A | 71-00 | 127-00 | RIGHT REAR TIRE-(FINAL REST POSITION) |
| B | 75-00 | 134-09 | RIGHT FRONT TIRE-(FINAL REST POSITION) |
| C | 62-00 | 170-01 | PASSENGER EJECTED *FIRST*-(FINAL REST POSITION) *(AREA)* |
| D | 50-00 | 191-09 | GOUGE MARKING IN THE DIRT FROM VEHICLE #1 ROLLING |
| E | 49-00 | 215-00 | GOUGE MARKING IN THE DIRT FROM VEHICLE #1 ROLLING |
| F | 28-00 | 249-05 | SKIDDING/GOUGE MARKING IN THE DIRT FROM VEHICLE #1 |
| G | 23-00 | 284-06 | RIGHT FRONT TIRE DIGGING INTO DIRT-AIRBORN AREA |
| H | 14-07 | 284-06 | RIGHT REAR TIRE DIGGING INTO DIRT-AIRBORN AREA |
| I | 00-00 | 336-00 | RIGHT REAR TIRE LEFT ROADWAY |
| J | 0 | 345-00 | LEFT REAR TIRE LEFT ROADWAY |
| K | 0 | 369-00 | RIGHT FRONT TIRE LEFT ROADWAY |
| L | 0 | 391-00 | LEFT FRONT TIRE LEFT ROADWAY |
| M | 08-00 | 413-04 | RIGTH FRONT/LEFT REAR TIRES CROSSES |
| N | 08-07 | 483-00 | LEFT FRONT TIRE STARTED SKIDDING |
| P | 10-05 | 494-05 | LEFT REAR TIRE STARTED SKIDDING |
| Q | 13-02 | 507-00 | RIGHT FRONT TIRE STARTED SKIDDING |
| R | 14-00 | 518-08 | RIGHT REAR TIRE STARTED SKIDDING |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

01-2708 R/93

DPS 802-04064 12/99

H.A 4739

008

Exhibit A to Notice of Removal

**NAVAJO DIVISION OF PUBLIC SAFETY**
WITNESS STATEMENT

DL
EE#: *2003-043607*                          Date: *6/01/03*      Page No: _____

Name: *Philomena Clitso*          D.O.B: *10-15-65*      SS#: *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*
Address: *P.O. Box 3595 Kayenta, AZ 86033*
*1/2 mile W. of LDS.*      Census: *306, 300*      Age: *37*
Cell #:
Phone: Home: *928-265-7414* Work: _____      Race: _____      Sex: *Female*

STATEMENT OF: *Philomena Clitso and Lynn Yazzie. We were*
*headed east on our way to Kayenta. We saw a*
*white car on the east bound lane, passing four*
*vehicles but We we on the east bound lane.*
*We slowed down the pull off to the side. At this*
*time the white car started to swirl or fish tail*
*Back and forth finally leaving the roadway. Then hit noise*
*first on front driver side. From here the car went in*
*the air rolling twice in the air. this is where the*
*first female was ejected from the car. then rolled*
*again about 4 more times on the last*
*the second female was ejected from the car.*
*We got out of the car to see if everyone was*
*Okay. This is when the front passenger male*
*was existing the car, then about 2 minutes*
*later we helped the driver of the car*
*out of the car.*

Signature: *Philomena Clitso*
*Lynn Yazzie*
*Omar R. Clitso*
*passenger*

Exhibit A to Notice of Removal



Appox time was: 5:20 pm

2nd male exit about 2 mins. after

passenger male climbed exit first

2nd female ejected on last time the car rolled

1st female ejected

car left road way

Car nose into the ground and started to rolled

Appox: 5 to 6 Times towards Driver side.

Car also Roll 2x's in the air when first female was ejected.

DR.#2003-043607

white Car

N  W  S  E

Exhibit A to Notice of Removal

## NAVAJO DIVISION OF PUBLIC SAFETY
### WITNESS STATEMENT

CC#: _____                    Date: _____      Page No: _____

Name: _____      D.O.B: _____     SS#: _____

Address: _____   Census: _____   Age: _____

Phone: Home: _____   Work: _____   Race: _____   Sex: _____

STATEMENT OF: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Signature: _____

Marc Sanford  CMT - Fire / Emt
928-660-2328

Exhibit A to Notice of Removal

## NAVAJO DIVISION OF PUBLIC SAFETY
### WITNESS STATEMENT

DR
CC#: 2003-043601                    Date: 6-1-03   Page No:

Name: BRIAN MARTINEZ   D.O.B: 2/5/74   SS#: 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

Address: 700 S. Marshall ST #11   Census: ___ Age: 29
(Casa Grande AZ 85222

Phone: Home (520) 876-4747 Work: ___ Race: American indian Sex: Male

heading S N

STATEMENT OF:   I passed a Red Ford F150   Looked in My
Rear View Mirror saw the white car passing
the Red Ford & a dark green Suv. the white car
was just on the side of the dark green Suv
when it tried to pass the Red Ford. the white
car swurved to miss the suv when it started
to fish tail then I looked Back and saw
a cloud of dust I Pulled over to the
side of the Road and started to watch from
my Rear view mirrors. the dark green suv
pulled over Behind me. I sat there watching
for a few minutes when the dark green Suv
came around us and started to leave. so I told
my mother to get the License plate #
it was AR DuB A 7094 so we then turned
around so we could get ive our info

Signature: Brian Martinez

Exhibit A to Notice of Removal

| ARIZONA TRAFFIC ACCIDENT REPORT | REPORT ID | | | | Agency Report Number |
|---|---|---|---|---|---|
| SUPPLEMENT | YEAR | MONTH | DAY | | 2003-043607 |
| FORWARD COPY TO ACCIDENT RECORDS ANALYSIS UNIT 064R ARIZONA DEPARTMENT OF TRANSPORTATION 206 S. 17th AVE., PHOENIX, ARIZONA 85007-3233 | 0 3 | 0 6 | 0 1 | HOUR 1 6 3 0 | NCIC NO. 0 7 9 9 | OFFICERS ID NO. 0 5 8 9 4 |

**ACCIDENT DESCRIPTION**
(Narrative)

MP-380.6



(0)

(R7)

N

U.S. 160
EASTBOUND

U.S. 160
WESTBOUND

SHOULDER

SHOULDER

A2

01-2707 2/92

| ARIZONA TRAFFIC ACCIDENT REPORT | | REPORT ID | NCIC NO. | OFFICERS ID NO. | Agency Report Number |
|---|---|---|---|---|---|
| **SUPPLEMENT**<br>FORWARD COPY TO<br>ACCIDENT RECORDS ANALYSIS UNIT 064R<br>ARIZONA DEPARTMENT OF TRANSPORTATION<br>200 S. 17th AVE., PHOENIX, ARIZONA 85007-3233 | YEAR MONTH DAY HOUR | | | | 2003-043607 |

**ACCIDENT DESCRIPTION**
(Narrative)



† ● 01-2707 2/92





Exhibit A to Notice of Removal



Exhibit A to Notice of Removal

| ARIZONA TRAFFIC ACCIDENT REPORT | YEAR | MONTH | DAY | REPORT ID | NCIC NO | OFFICER ID NO | Agency Report Number |
|---|---|---|---|---|---|---|---|
| SUPPLEMENT FORWARD COPY TO ACCIDENT RECORDS ANALYSIS UNIT 064R ARIZONA DEPARTMENT OF TRANSPORTATION 206 S. 17th AVE., PHOENIX, ARIZONA 85007-9233 | 03 | 06 | 07 | 1620 HOUR | 0790 | 0094 | 2003-043607 |

## ACCIDENT DESCRIPTION
### (Narrative)



† ■ 01-2707 2/92

Exhibit A to Notice of Removal

| ARIZONA TRAFFIC ACCIDENT REPORT SUPPLEMENT FORWARD COPY TO ACCIDENT RECORDS ANALYSIS UNIT 064R ARIZONA DEPARTMENT OF TRANSPORTATION 206 S. 17th AVE., PHOENIX, ARIZONA 85007-3233 | REPORT ID | | | | Agency Report Number |
|---|---|---|---|---|---|
| | YEAR | MONTH | DAY | HOUR | NCIC NO. | OFFICERS ID NO. | 2003-043607 |
| | 0 3 | 0 6 | 0 1 | 6 3 0 | 0 2 5 9 0 | 0 5 3 4 4 | |

## ACCIDENT DESCRIPTION
### (Narrative)

N

D4 —



2707 2/92

Exhibit A to Notice of Removal

| ARIZONA TRAFFIC ACCIDENT REPORT | REPORT ID | | | | Agency Report Number |
|---|---|---|---|---|---|
| **SUPPLEMENT** | YEAR | MONTH | DAY | HOUR | NCIC NO. | OFFICERS ID NO. | |
| FORWARD COPY TO ACCIDENT RECORDS ANALYSIS UNIT 064R ARIZONA DEPARTMENT OF TRANSPORTATION 206 S. 17th AVE., PHOENIX, ARIZONA 85007-3233 | 0 3 | 0 6 | 0 1 | 7 6 3 0 | 0 7 9 9 | 0 5 8 9 4 | 2003-043607 |

## ACCIDENT DESCRIPTION
### (Narrative)

N

← OPEN FIELD

E5 ——

**EXHIBIT C**

FILED ___ LODGED
RECEIVED _X_ COPY

AUG 11 2003

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ Z DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA – PHOENIX

MICHAEL S. KIMM, ESQ. (MK-4476)
190 MOORE STREET, SUITE 272
HACKENSACK, NEW JERSEY 07601
TEL: (201) 342-3377
*Attorney for Plaintiffs*

------------------------------------------------X
JIN AH LEE, decedent, by her estate          :
representative, JUNGIL LEE,                   :        03 Civ. _____
SANG CHUL LEE, decedent's father,            :
and DUKSON LEE, decedent's mother,           :
                                              :        Civil Action
           Plaintiffs,                        :
                                              :
              v.                              :
                                              :
ANC CAR RENTAL CORP.,                        :
GENERAL MOTORS CORP.,                        :
and HONG-JUN JEON,                           :        **Complaint with Jury Demand**
                                              :
           Defendants.                        :
------------------------------------------------X

## **Preliminary**

Plaintiff Jin Ah Lee, decedent, by her authorized estate representative, Jungil

Lee, plaintiff Sang-Chul Lee and plaintiff Dukson Lee, by their authorized legal

representative Jungil Lee, for their complaint against defendants ANC Rental

Corporation, General Motors Corporation, and Hong-Jun Jeon, allege:

1

### The Parties

1. Plaintiff-decedent, Jin Ah Lee, was a natural person, age 22, who died in the accident relevant to this lawsuit on June 1, 2003, at Flagstaff, Arizona. Plaintiff Jin Ah Lee maintained a permanent residence at Kaepo Woosung 4 th Apartment No. 8-407, Dokok-dong, Kangnam-ku, Seoul, Republic of Korea, and maintained a local address at 36 Kennedy Blvd., Cambridge, MA, while studying in the United States before her death.

2. Plaintiffs Sang-Chul Lee, plaintiff Jin Ah Lee's father, and Dukson Lee, plaintiff Jin Ah Lee's mother, are aliens, who reside at Kaepo Woosung 4th Apartment No. 8-407, Dokok-dong, Kangnam-ku, Seoul, Republic of Korea. These plaintiffs sue in their own names in connection with the untimely death and loss of their daughter, including support, companionship, society, wrongful death and survivorship rights.

3. Defendant ANC Rental Corporation (acronym for "Alamo/National Car") ("Alamo"), a publicly-traded entity organized in November 1999, is the parent company of Alamo Rent a Car, National Car Rental, and Alamo Local Market, engaged in the rental car business in approximately 60 countries around the world. Its principal offices located at 200 South Andrews Avenue, Fort Lauderdale, FL 33301. At all relevant times Alamo was the owner and renter of a certain 2003

2

Chevrolet Malibu automobile which caused plaintiff's death. Defendant Alamo is believed to be authorized to conduct regular business in the State of Arizona and in this district.

4. Defendant General Motors Corporation ("GM") is believed to be an entity organized under laws of the State of Michigan, and has its worldwide corporate headquarters and principal offices at 767 Fifth Avenue, New York, New York. At all relevant times GM was the designer and manufacturer of the 2003 Year model Chevrolet Malibu automobile which caused plaintiff's death. Defendant GM is believed to be authorized to conduct regular business in the State of Arizona and in this district.

5. Defendant Hong-Jun Jeon ("Jeon") is an alien, a national of the Republic of Korea, having his local address at 400 Mass Avenue #34, Boston, MA 02115, and his permanent address at Kangwondo kangnuen-shi  kyoi-dong, Darim Apartments 1803, Republic of Korea. Defendant Jeon drove the 2003 Chevy Malibu relevant to this lawsuit and contributed to the death of plaintiff Jin Ah Lee.

### Jurisdiction and Venue

6. This Court has jurisdiction under 28 U.S.C. § 1332(a)(2) based on the parties' diverse citizenship, as the amount in controversy exceeds the sum of $75,000.00 excluding costs and interest. Venue is proper under 28 U.S.C. §

3

AUG 19 2003 15:12 FR    CO LEGAL AFFAIRS 212 418 6123 T    13136657572        P.07/29

1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Common Allegations

7. Upon information and belief, in May 2003, defendant Jeon, an alien who possessed an "international driver's license," issued by the Republic of Korea, having relatively little driving experience in the United States, rented a certain 2003 Chevrolet Malibu, four-door automobile (the "Malibu"), bearing California license plates 4LXT007, from defendant Alamo, at one of its rental locations in Las Vegas, Nevada, and drove with three passengers through the State of Arizona and elsewhere.

8. Among the four occupants of the Malibu were the driver and plaintiff Jin Ah Lee and two of their friends.   Plaintiff Jin Ah Lee and a second female occupant were seated in the rear of the car, while defendant Jeon, as the driver, was accompanied by another male in the front seats.

9. Upon information and belief, while defendant Jeon was driving through Flagstaff, Arizona, on a single-lane, two-way, level desert highway, heading westbound, defendant Jeon attempted to pass a slow-moving vehicle through the east-bound lane, in a permitted "passing" zone.

10. Upon information and belief, defendant Jeon crossed into the on-coming lane and attempted to outpace the "slower" car in the westbound lane, but was unable

4

AUG 19 2003 15:12 FR   ICO LEGAL AFFAIRS 212 418 6123   13136657572   P.08/29

to do so before he saw an oncoming car.  As oncoming traffic became visible, defendant Jeon attempted to slow down and maneuver the Malibu back to the westbound lane, but the Malibu lost stability, "fishtailed" out of control, and left the road surface, off the shoulder, into the unpaved dirt.

11. Upon information and belief, the Malibu failed to brake properly due to weak or small brake pads, lack of anti-lock braking system (ABS), the wheels and body vibrated extensively, bounced up and down, and the frame and body became unstable.

12. Upon in formation and belief, as the Malibu left the road surface and traveled in the dirt, it rolled over and sustained extensive structural damage, including the collapse of its roof, the disintegration of its frame, and the destruction of all windows and windshields.

13. During the rollover, plaintiff Jin Ah Lee was unsafely ejected out of the passenger compartment of the vehicle.  Plaintiff Jin Ah lee suffered serious physical injuries to various parts of her body.

14. Upon information and belief, the accident was observed by, among others, a physician who was traveling through the area at the time, and the physician provided emergency assistance.  The police and ambulance were summoned immediately, and plaintiff Jin Ah Lee was transported by air to a hospital.

5

AUG 19 2003 15:12 FR ┕ ┙MCD LEGAL AFFAIRS 212 418 6123 TU 913136657572     P.09/29

15. As doctors at Flagstaff Medical Center provided emergency care, plaintiff Jin Ah Lee died from "multiple blunt-trauma injuries" sustained in the accident. She suffered extensive pain between the time of the accident and the time of her death, several hours later.

16. Upon information and belief, the Malibu was towed to Chief's Towing in Flagstaff, Arizona, and subsequently removed by defendant Alamo to Albuquerque, New Mexico, to a facility under its exclusive control.   Defendant Alamo has been requested to preserve the car.

### More Particular Allegations and Claims for Relief

17. Plaintiff Jin Ah Lee's untimely death was believed to be caused by a combination of some or all of the following causes of action.

### Count 1: Improper testing by GM

18. Paragraphs 1 through 17 are incorporated by reference.

19. Although GM routinely conducts dynamic rollover tests at its European operations, within the United States, GM has failed to conduct any dynamic rollover tests using anthropomorphic test-dummies, on the Malibu, among other car models, for decades now.

20. Defendant GM's failure to conduct dynamic rollover tests in the United States is part of its overall business strategy to cut costs by its management, despite

6

AUG 19 2003 15:12 FR L ..CO LEGAL AFFAIRS 212 418 6123 TU 913136657572          P.10/29

its knowledge that dynamic rollover tests, as GM itself conducts at its European operations, are an effective means of gauging vehicle safety and improving vehicle and occupant safety.

21. Defendant GM's failure to implement adequate dynamic rollover tests concerning hundreds of thousands of cars made and sold in the United States generally, and of the Malibu, in particular, contributed to accident and to plaintiff Jin Ah Lee's death.

22. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

23. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

<u>Count 2: Improper design by GM</u>

24. Paragraphs 1 through 17 are incorporated by reference.

25. Despite the fact defendant GM promotes the Malibu as having a "steel cage" construction to protect the passenger cabin, in fact, the subject Malibu's passenger cabin failed to maintain the "survival space," also known as the "non-encroachment zone," necessary for plaintiff to have survived the relevant accident.

7

26. Upon information and belief, defendant GM knew or should have known that the Malibu's "non-encroachment zone" was of inferior quality, design, and strength. The Malibu's roof structure and the extent of deformation and crushing into the "non-encroachment zone" was needlessly more severe and extensive due to the inherent weaknesses in the roof structure.   A primary reason for utilizing the weak "survival space" was part of defendant GM's overall "cost cutting" business practice.

27. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

28. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

<u>Count 3: Improper manufacturing by GM</u>

29. Paragraphs 1 through 17 are incorporated by reference.

30. Defendant GM failed to implement appropriate welding of separate components together, in the frame and structure of the Malibu, so as to minimize roof crush.

31. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

8

AUG 19 2003 15:13 FR :  .CO LEGAL AFFAIRS 212 418 6123 1.  .13136657572      P.12/29

32. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the potential risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

### Count 4:  Improper design/manufacturing by GM

33. Paragraphs 1 through 17 are incorporated by reference.

34. Upon information and belief, the side windows and the rear windshield were glazed or attached inappropriately, inadequately and/or defectively. Defendant GM improperly designed and/or manufactured the Malibu in such a way as to allow the windows and windshields to separate from the body relatively easily, and thereby placed human life in unnecessary danger.

35. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

36. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

### Count 5:  Improper design/manufacturing by GM

37. Paragraphs 1 through 17 are incorporated by reference.

9

38. Upon information and belief, the Malibu's braking system was designed or manufactured inappropriately, inadequately and/or defectively.  Defendant GM knew or should have known that the car did not have safe-braking capability, due to relatively small brake-pad size, due to the lack of ABS, and due to other factors;  and that the Malibu was not adequately controllable, particularly at highway speeds.

39. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

40. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the potential risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

<u>Count 6: Failure to give adequate warnings by GM</u>

41. Paragraphs 1 through 17 are incorporated by reference.

42. Defendant GM failed to give adequate warning to the public about the dangers associated with, and relating to, the Malibu, each of the foregoing safety/design/manufacturing factors, and to other factors.

43. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

44. Because defendant GM committed its actions or omissions knowingly,

10

intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public

safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject

to punitive damages.

<u>Count 7: Acquisition, use or rental of unsafe vehicles by Alamo</u>

45. Paragraphs 1 through 44 are incorporated by reference.

46. Upon information and belief, defendant Alamo, one of the largest car

renters in the world, purchases and acquired a substantial number of Malibu cars from

defendant GM.

47. Upon information and belief, defendant Alamo knew one or more of the

facts alleged in plaintiffs' claims against defendant GM, concerning the Malibu's

testing, design, manufacture, and safety, but nevertheless acquired a substantial

number of such cars, and promoted and rented them to the public, and thereby

unnecessarily increased the likelihood of serious injury or death to persons riding in

its cars, including plaintiff Jin Ah Lee.

48. As a direct and proximate result of defendant Alamo's actions and

omissions, plaintiffs have sustained injuries.

49. Because defendant Alamo committed its actions or omissions knowingly,

intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public

safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject

to punitive damages.

### Count 8: Wrongful rental by Alamo

50. Paragraphs 1 through 44 are incorporated by reference.

51. Upon information and belief, defendant Alamo rented the car to defendant Jeon despite his failure to produce adequate documentation; despite his lack of driving experience; and/or despite his inappropriate age.   Upon information and belief, defendant Jeon was not qualified under defendant Alamo's own rental guidelines.

52. As a direct and proximate result of defendant Alamo's actions and omissions, plaintiffs have sustained injuries.

53. Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject to punitive damages.

### Count 9: Failure to warn by Alamo

54. Paragraphs 1 through 44 are incorporated by reference.

55. At the time defendant Alamo rented the Malibu to defendant Jeon, Alamo knew or should have known that the car did not have ABS braking capability, and/or otherwise did not have adequate controllability, on the highway and elsewhere.

12

AUG 19 2003 15:14 FR ... .ICO LEGAL AFFAIRS 212 418 6123 T. ....13136657572          P.16/29

56. At all relevant times, upon information and belief, at the time of making the rental contract, defendant Alamo failed to warn defendant Jeon, plaintiff Jin Ah Lee and the other passengers of the Malibu that the car did not have certain safety devices, including ABS braking capability.

57. Upon information and belief, defendant Alamo failed to warn of other safety measures and thereby contributed to plaintiff Jin Ah Lee's injuries and death.

58. As a direct and proximate result of defendant Alamo's actions and omissions, plaintiffs have sustained injuries.

59. Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject to punitive damages.

## Count 10: Entrustment of dangerous instrumentality by Alamo

60. Paragraphs 1 through 44 are incorporated by reference.

61. Upon information and belief, defendant Alamo wrongfully entrusted a dangerous instrumentality, the Malibu, to defendant Jeon, and contributed to the unnecessary death of plaintiff Jin Ah Lee.

62. As a direct and proximate result of defendant Alamo's actions and omissions, plaintiffs have sustained injuries.

13

AUG 19 2003 15:14 FR L   .CO LEGAL AFFAIRS 212 418 6123 T.   13136657572      P.17/29

63. Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject to punitive damages.

### Count 11: Contract insurer of Jeon

64. Paragraphs 1 through 44 are incorporated by reference.

65. At all relevant times, Alamo or another insurance carrier underwrote a certain liability insurance policy affecting the rental/car in issue.

66. Such carrier is liable to the same extent as defendant Jeon's liability, discussed below.

67. Despite repeated demands for policy claim information and payment, defendant Alamo has failed and refused to pay on such policy and has failed to even provide basic policy information.

68. Defendant Alamo is liable for such policy value.

69. Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of its obligations as an insurance company, defendant Alamo should be subject to punitive damages for bad faith insurance practices.

14

## Count 12: Negligent driving by Jeon

70. Paragraphs 1 through 63 are incorporated by reference.

71. Upon information and belief, defendant Jeon, unaware that he was driving a car with various testing/design/manufacturing and safety problems, was negligent in his operation of the subject Malibu.  Defendant Jeon's actions and omissions contributed to the other defendants' actions and omissions.

72. As a direct and proximate result of defendant Jeon's actions, plaintiffs have sustained injuries.

WHEREFORE, plaintiffs demand:

A. appropriate compensatory damages in a sum exceeding $20 million, for pain and suffering, loss of income, loss of society and survivorship rights, and wrongful death, to the parents of Jin Ah Lee on behalf of Jin Ah Lee and themselves, against all defendants, individually and jointly and severally; and

B. appropriate punitive damages in a sum exceeding $20 million, against defendants Alamo and GM, individually and jointly and severally; and

C. appropriate costs and attorney's fees; and

D. any other relief the Court deems just and proper under the circumstances.

15

AUG 19 2003 15:14 FR    .ICO LEGAL AFFAIRS 212 418 6123 1  J13136657572      P.19/29

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby requests a trial by jury.

Dated: August 8, 2003

_____

Michael S. Kimm
Attorney for plaintiffs

16

Exhibit A to Notice of Removal

**EXHIBIT D**

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA – PHOENIX

-------------------------------------------------x

JIN AH LEE, decedent, by her estate
representative, JUNGIL LEE,
SANG CHUL LEE, decedent's father,
and DUKSON LEE, decedent's mother,

        Plaintiffs,

        v.

ANC CAR RENTAL CORP.,
GENERAL MOTORS CORP.,
and HONG-JUN JEON,

        Defendants.

-------------------------------------------------x

CV-03-1532-PCT-JAT

Civil Action

**PLAINTIFF'S MEMORANDUM OF LAW
IN RESPONSE TO THE COURT'S
SUA SPONTE ORDER TO SHOW CAUSE
FOR POSSIBLE DISMISSAL FOR LACK
OF SUBJECT-MATTER JURISDICTION**

MICHAEL S. KIMM, ESQ. (PRO HAC VICE)
190 MOORE STREET, SUITE 272
HACKENSACK, NEW JERSEY 07601
TEL: (201) 342-3377
*Attorney for Plaintiffs*

Dated: June 10, 2004

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum of law in response to the Court's sua sponte Order to show cause, served in the form of minute entry, dated June 2, 2004, directing plaintiff to show the propriety of retaining subject-matter jurisdiction over this action.

## PERTINENT FACTS

This action seeks damages for plaintiff Jin Ah Lee's death and related damages stemming from an auto/negligence which occurred in late May 2003.

Plaintiff Jin Ah Lee, deceased, sues through her estate representative Jungil Lee, who is a citizen and domiciliary of the United States. Compl. ¶ 1.

Plaintiffs SANG CHUL LEE, decedent's father, and DUKSON LEE, decedent's mother, are citizens and domiciliaries of the Republic of Korea. Id. ¶ 2.

Defendant ANC Rental Corporation (ANC), the company that rented the car which is the subject of the underlying car accident, has its principal offices located at 200 South Andrews Avenue, Fort Lauderdale, FL 33301. Id. ¶ 3.

Defendant General Motors Corporation ("GM") is an entity organized under laws of the State of Michigan with its principal headquarters at New York. Id. ¶ 4.

Defendant Hong-Jun Jeon ("Jeon") is an alien, a national of the Republic of Korea, having his local address at 400 Mass Avenue #34, Boston, MA 02115, and his

1

Exhibit A to Notice of Removal

permanent address at Kangwondo kangnuen-shi  kyoi-dong, Darim Apartments 1803,

Republic of Korea.  Id. ¶ 5.

## ARGUMENT

## I

## BECAUSE ALIENAGE JURISDICTION EXISTS, THE ACTION SHOULD NOT BE DISMISSED FROM THE DISTRICT OF ARIZONA

Lower federal courts are courts of limited jurisdiction, and are empowered to hear only cases authorized by statute or the United States Constitution. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

Article 3, section 2 of the United States Constitution provides:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; ——to all Cases affecting Ambassadors, other public Ministers and Consuls; —to all Cases of admiralty and maritime jurisdiction; —to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the Same state claiming lands under Grants of different States; and between a State, or the Citizens thereof, and foreign States, Citizens of Subjects.

The alienage jurisdiction statute, 28 U.S.C. § 1332(a)(2) provides as follows:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

* * *

Exhibit A to Notice of Removal

(2) citizens of a State and citizens or subjects of a foreign state; and

For a suit initially filed in federal court, as was the case here, the existence or non-existence jurisdiction is determined by reference to the facts as of the time the complaint was filed. Freeport-McMoran , Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991).

The leading case law from the Ninth Circuit governing alienage-jurisdiction appear to be Transure v. Marsh and McLennan, 766 F.2d 1297 (9th Cir. 1985); Faysound Ltd. v. United Coconut Chems., 878 F.2d 290 (9th Cir. 1989); Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707 (9th Cir. 1992). Transure discusses that the existence of aliens on both sides does not defeat subject-matter jurisdiction so long as the aliens are among other parties to the action having subject-matter jurisdiction. Faysound Ltd. v. United Coconut Chems provides a similar holding. Mutuelles discusses how dual citizenship should be treated under the alienage jurisdiction statute.

The Supreme Court's most recent construction of the alienage-jurisdiction statute is JP Morgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd., 536 U.S. 88 (2002). The Supreme Court held that, to invoke alienage jurisdiction, an alien must be a citizen or subject of some foreign country. Id . at 98-99. Alienage

4

jurisdiction exists in all suits between a United States citizen and a foreign state or one of its citizens.   In multi-party cases, there is a further requirement of complete diversity as between all of the plaintiffs and all of the defendants. <u>Mutuelles Unies</u>, 957 F.2d at 711.  That requirement has clearly been satisfied.

The Treaty of Friendship, Commerce and Navigation between the United States and Korea is relevant.  For convenience of the Court and the parties, a courtesy copy is annexed hereto.  Article V shows that:

> 1. Nationals and companies of either Party shall be accorded national treatment and most-favored nation treatment with respect to access to the courts of justice . . . within the territories of the other Party, <u>in all degrees of jurisdiction.</u> [Emphasis added.]

As the Supreme Court discusses extensively in <u>JP Morgan Chase</u>, the federal courts retained alienage jurisdiction so as to implement such treaty obligations in the sphere of international relations.  "The penchant of the state courts to disrupt international relations and discourage foreign investment led directly to the alienage jurisdiction provided by Article III of the Constitution." <u>Id</u>. at 100.

Although this case has multiple plaintiffs and multiple defendants, the analysis is essentially the same.  Indeed, <u>Transure</u> discusses that the existence of aliens on both sides does not defeat subject-matter jurisdiction so long as the aliens are among other parties to the action having subject-matter jurisdiction.  <u>Transure</u> cites to 13B

5

Wright, Miller & Cooper Federal Practice & Procedure 2d § 3604 (1991 & 2003 Supp), which discusses alienage jurisdiction. The treatise reiterates the weight of the case law: "As is true generally, . . . the court may take jurisdiction over a claim between two aliens that is ancillary to another claim over which it has proper subject-matter jurisdiction.   The federal court, not surprisingly, have taken a wide variety of cases under their alienage jurisdiction."

Had plaintiffs sued defendant ANC or defendant GM by itself, there is no question that such a suit would be well within the alienage jurisdiction. There is no reason to hold otherwise merely because defendant Jeon, who was the driver of the subject car, and who was allegedly negligent, and who was a foreign national, happens to be joined as a defendant.

## CONCLUSION

For the foregoing reasons, the court should hold that subject-matter jurisdiction exists under the alienage jurisdiction statute.

Dated: June 10, 2004                          Respectfully,

                                              Michael S. Kimm

Certificate of Service

Michael S. Kimm, Esq., certifies the foregoing was served upon all counsel as

follows.

By mail and fax: 602-248-0947

Jo Ana Saint-George, Esq.
Thomas Klein, Esq., (GM)
Bowman and Brooke, LLP
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012

By mail and fax 602-734-3781

Kimberly J. Kauffman, Esq. (ANC)
Greg S. Como, Esq.
Lewis and Roca, LLP
40 North Central Avenue
Phoenix, Arizona 85004

Dated: June 10, 2004

Michael S. Kimm

United States Treaties
and Other
International
Agreements



VOLUME 8
IN TWO PARTS
Part 2
1957

# REPUBLIC OF KOREA

## Friendship, Commerce and Navigation

Treaty and protocol signed at Seoul November 28, 1956;
Ratification advised by the Senate of the United States of America August
8, 1957;
Ratified by the President of the United States of America August 30,
1957;
Ratified by the Republic of Korea October 2, 1957;
Ratifications exchanged at Seoul October 7, 1957;
Proclaimed by the President of the United States of America November
15, 1957;
Entered into force November 7, 1957.

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

WHEREAS a treaty of friendship, commerce and navigation
between the United States of America and the Republic of Korea,
together with a protocol relating thereto, was signed at Seoul on
November 28, 1956, the originals of which, in the
English and Korean languages, are word for word as follows:

(2217)

TIAS 3947

# TREATY

## OF

# FRIENDSHIP, COMMERCE AND NAVIGATION

## BETWEEN

# THE UNITED STATES OF AMERICA

## AND

# THE REPUBLIC OF KOREA

The United States of America and the Republic of Korea, desirous of strengthening the bonds of peace and friendship traditionally existing between them and of encouraging closer economic and cultural relations between their peoples, and being cognizant of the contributions which may be made toward these ends by arrangements encouraging mutually beneficial investments, promoting mutually advantageous commercial intercourse and otherwise establishing mutual rights and privileges, have resolved to conclude a Treaty of Friendship, Commerce and Navigation, based in general upon the principles of national and of most-favored-nation treatment unconditionally accorded, and for that purpose have appointed as their Plenipotentiaries,

The United States of America:

Walter Dowling, Ambassador Extraordinary and Plenipotentiary of the United States of America to the Republic of Korea, and

The Republic of Korea:

Cho Chung-whan, Acting Minister of Foreign Affairs of the Republic of Korea,

Who, having communicated to each other their full powers found to be in due form, have agreed upon the following Articles:

## Article I

Each Party shall at all times accord equitable treatment to the persons, property, enterprises and other interests of nationals and companies of the other Party.

## Article II

1. Nationals of either Party shall be permitted to enter the territories of the other Party and to remain therein: (a) for the purpose of carrying on trade between the territories of the two Parties and engaging in related commercial activities; (b) for the purpose of developing and directing the operations of an enterprise in which they have invested, or in which they are actively in the process of investing, a substantial amount of capital; and (c) for other purposes subject to the laws relating to the entry and sojourn of aliens.

2. Nationals of either Party, within the territories of the other Party, shall be permitted: (a) to travel therein freely, and to

reside at places of their choice; (b) to enjoy liberty of conscience; (c) to hold both private and public religious services; (d) to gather and to transmit material for dissemination to the public abroad; and (e) to communicate with other persons inside and outside such territories by mail, telegraph and other means open to general public use.

3. The provisions of the present Article shall be subject to the right of either Party to apply measures that are necessary to maintain public order and protect the public health, morals and safety.

## ARTICLE III

1. Nationals of either Party within the territories of the other Party shall be free from molestations of every kind, and shall receive the most constant protection and security, in no case less than that required by international law.

2. If, within the territories of either Party, a national of the other Party is taken into custody, the nearest consular representative of his country shall on the demand of such national be immediately notified and shall have the right to visit and communicate with such national. Such national shall: (a) receive reasonable and humane treatment; (b) be formally and immediately informed of the accusations against him; (c) be brought to trial as promptly as is consistent with the proper preparation of his defense; and (d) enjoy all means reasonably necessary to his defense, including the services of competent counsel of his choice.

## ARTICLE IV

1. Nationals of either Party shall be accorded national treatment in the application of laws and regulations within the territories of the other Party that establish a pecuniary compensation or other benefit or service, on account of disease, injury or death arising out of and in the course of employment or due to the nature of employment.

2. In addition to the rights and privileges provided in paragraph 1 of the present Article, nationals of either Party within the territories of the other Party shall be accorded national treatment in the application of laws and regulations establishing compulsory systems of social security, under which benefits are paid without an individual test of financial need: (a) against loss of wages or earnings due to old age, unemployment, sickness or disability, or (b) against loss of financial support due to the death of father, husband or other person on whom such support had depended.

## ARTICLE V

1. Nationals and companies of either Party shall be accorded national treatment and most-favored-nation treatment with respect to access to the courts of justice and to administrative tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, both in pursuit and in defense of their rights. It is understood that companies of either Party not engaged in activities within the territories of the other Party shall enjoy such access therein without any requirement of registration or domestication.

2. Contracts entered into between nationals and companies of either Party and nationals and companies of the other Party, that provide for the settlement by arbitration of controversies, shall not be deemed unenforceable within the territories of such other Party merely on the grounds that the place designated for the arbitration proceedings is outside such territories or that the nationality of one or more of the arbitrators is not that of such other Party. No award duly rendered pursuant to any such contract, and final and enforceable under the laws of the place where rendered, shall be denied effective means of enforcement within the territories of either Party merely on the grounds that the place where such award was rendered is outside such territories or that the nationality of one or more of the arbitrators is not that of such Party.

## ARTICLE VI

1. Property of nationals and companies of either Party shall receive the most constant protection and security within the territories of the other Party.

2. The dwellings, offices, warehouses, factories and other premises of nationals and companies of either Party located within the territories of the other Party shall not be subject to molestation or to entry without just cause. Official searches and examinations of such premises and their contents, when necessary, shall be made only according to law and with careful regard for the convenience of the occupants and the conduct of business.

3. Neither Party shall take unreasonable or discriminatory measures that would impair the legally acquired rights or interests within its territories of nationals and companies of the other Party in the enterprises which they have established, in their capital, or in the skills, arts or technology which they have supplied.

4. Property of nationals and companies of either Party shall not be taken within the territories of the other Party except for a public purpose, nor shall it be taken without the prompt

payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for the determination and payment thereof.

5. Nationals and companies of either Party shall in no case be accorded, within the territories of the other Party, less than national treatment and most-favored-nation treatment with respect to the matters set forth in paragraphs 2 and 4 of the present Article. Moreover, enterprises in which nationals and companies of either Party have a substantial interest shall be accorded, within the territories of the other Party, not less than national treatment and most-favored-nation treatment in all matters relating to the taking of privately owned enterprises into public ownership and to the placing of such enterprises under public control.

## ARTICLE VII

1. Nationals and companies of either Party shall be accorded national treatment with respect to engaging in all types of commercial, industrial, financial and other activities for gain (business activities) within the territories of the other Party whether directly or by agent or through the medium of any form of lawful juridical entity. Accordingly, such nationals and companies shall be permitted within such territories: (a) to establish and maintain branches, agencies, offices, factories and other establishments appropriate to the conduct of their business; (b) to organize companies under the general company laws of such other Party, and to acquire majority interests in companies of such other Party; and (c) to control and manage enterprises which they have established or acquired. Moreover, enterprises which they control, whether in the form of individual proprietorships, companies or otherwise, shall in all that relates to the conduct of the activities thereof, be accorded treatment no less favorable than that accorded like enterprises controlled by nationals and companies of such other Party.

2. Each Party reserves the right to limit the extent to which aliens may establish, acquire interests in, or carry on enterprises engaged within its territories in transport, communications, public utilities, banking involving depository or fiduciary functions, or the exploitation of land or other natural resources. However, new limitations imposed by either Party upon the extent to which aliens are accorded national treatment, with respect to carrying on such activities within its territories, shall not be

applied as against enterprises which are engaged in such activities therein at the time such new limitations are adopted and which are owned or controlled by nationals and companies of the other Party. Moreover, neither Party shall deny to transportation, communications and banking companies of the other Party the right to maintain branches and agencies to perform functions necessary for essentially international operations in which they are permitted to engage.

3. The provisions of paragraph 1 of the present Article shall not prevent either Party from prescribing special formalities in connection with the establishment of alien-controlled enterprises within its territories; but such formalities may not impair the substance of the rights set forth in said paragraph.

4. Nationals and companies of either Party, as well as enterprises controlled by such nationals and companies, shall in any event be accorded most-favored-nation treatment with reference to the matters treated in the present Article.

## ARTICLE VIII

1. Nationals and companies of either Party shall be permitted to engage, within the territories of the other Party, accountants and other technical experts, executive personnel, attorneys, agents and other specialists of their choice. Moreover, such nationals and companies shall be permitted to engage accountants and other technical experts regardless of the extent to which they may have qualified for the practice of a profession within the territories of such other Party, for the particular purpose of making examinations, audits and technical investigations for, and rendering reports to, such nationals and companies in connection with the planning and operation of their enterprises, and enterprises in which they have a financial interest, within such territories.

2. Nationals and companies of either Party shall be accorded national treatment and most-favored-nation treatment with respect to engaging in scientific, educational, religious and philanthropic activities within the territories of the other Party, and shall be accorded the right to form associations for that purpose under the laws of such other Party. Nothing in the present Treaty shall be deemed to grant or imply any right to engage in political activities.

## ARTICLE IX

1. Nationals and companies of either Party shall be accorded, within the territories of the other Party: (a) national treatment with respect to leasing land, buildings and other immovable property appropriate to the conduct of activities in which they

2224   *U. S. Treaties and Other International Agreements*   [8 UST

are permitted to engage pursuant to Articles VII and VIII and for residential purposes, and with respect to occupying and using such property; and (b) other rights in immovable property permitted by the applicable laws of the other Party.

2. Nationals and companies of either Party shall be accorded most-favored-nation treatment with respect to acquiring, by purchase, lease, or otherwise, and with respect to owning and possessing, movable property of all kinds, both tangible and intangible. However, either Party may impose restrictions on alien ownership of materials dangerous from the standpoint of public safety and alien ownership of interests in enterprises carrying on particular types of activity, but only to the extent that this can be done without impairing the rights and privileges secured by Article VII or by other provisions of the present Treaty.

3. Nationals and companies of either Party shall be accorded national treatment within the territories of the other Party with respect to acquiring property of all kinds by testate or intestate succession or through judicial process. Should they because of their alienage be ineligible to continue to own any such property, they shall be allowed a period of at least five years in which to dispose of it.

4. Nationals and companies of either Party shall be accorded within the territories of the other Party national treatment and most-favored-nation treatment with respect to disposing of property of all kinds.

ARTICLE X

1. Nationals and companies of either Party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment with respect to obtaining and maintaining patents of invention, and with respect to rights in trade marks, trade names, trade labels and industrial property of every kind.

2. The Parties undertake to cooperate in furthering the interchange and use of scientific and technical knowledge, particularly in the interest of increasing productivity and improving standards of living within their respective territories.

ARTICLE XI

1. Nationals of either Party residing within the territories of the other Party, and nationals and companies of either Party engaged in trade or other gainful pursuit or in scientific, educational, religious or philanthropic activities within the territories of the other Party, shall not be subject to the payment of taxes,

8 UST]   *Korea—Friendship, Commerce, Etc.—Nov. 28, 1966*

fees or charges imposed upon or applied to income, capital, transactions, activities or any other object, or to requirements with respect to the levy and collection thereof, within the territories of such other Party, more burdensome than those borne by nationals and companies of such other Party.

2. With respect to nationals of either Party who are neither residents nor engaged in trade or other gainful pursuit within the territories of the other Party, and with respect to companies of either Party which are not engaged in trade or other gainful pursuit within the territories of the other Party, it shall be the aim of such other Party to apply in general the principle set forth in paragraph 1 of the present Article.

3. Nationals and companies of either Party shall in no case be subject, within the territories of the other Party, to the payment of taxes, fees or charges imposed upon or applied to income, capital, transactions, activities or any other object, or to requirements with respect to the levy and collection thereof, more burdensome than those borne by nationals, residents and companies of any third country.

4. In the case of companies of either Party engaged in trade or other gainful pursuit within the territories of the other Party, and in the case of nationals of either Party engaged in trade or other gainful pursuit within the territories of the other Party but not resident therein, such other Party shall not impose or apply any tax, fee or charge upon any income, capital or other basis in excess of that reasonably allocable or apportionable to its territories, nor grant deductions and exemptions less than those reasonably allocable or apportionable to its territories. A comparable rule shall apply also in the case of companies organized and operated exclusively for scientific, educational, religious or philanthropic purposes.

5. Each Party reserves the right to: (a) extend specific tax advantages on the basis of reciprocity; (b) accord special tax advantages by virtue of agreements for the avoidance of double taxation or the mutual protection of revenue; and (c) apply special provisions in allowing to non-residents, exemptions of a personal nature in connection with income and inheritance taxes.

ARTICLE XII

1. Nationals and companies of either Party shall be accorded by the other Party national treatment and most-favored-nation treatment with respect to payments, remittances and transfers of funds or financial instruments between the territories of the two Parties as well as between the territories of the other Party and of any third country.

2228

U. S. Treaties and Other International Agreements [8 UST

2. Neither Party shall impose exchange restrictions as defined in paragraph 5 of the present Article except to the extent necessary to prevent its monetary reserves from falling to a very low level or to effect a moderate increase in very low monetary reserves. It is understood that the provisions of the present Article do not alter the obligations either Party may have to the International Monetary Fund or preclude imposition of particular restrictions whenever the Fund specifically authorizes or requests a Party to impose such particular restrictions.

3. If either Party imposes exchange restrictions in accordance with paragraph 2 of the present Article, it shall, after making whatever provision may be necessary to assure the availability of foreign exchange for goods and services essential to the health and welfare of its people and necessary to the avoidance of serious economic instability, make reasonable provision for the withdrawal, in foreign exchange in the currency of the other Party, of: (a) the compensation referred to in Article VI, paragraph 4, (b) earnings, whether in the form of salaries, interest, dividends, commissions, royalties, payments for technical services, or otherwise, and (c) amounts for amortization of loans, depreciation of direct investments, and capital transfers, giving consideration to special needs for other transactions. If more than one rate of exchange is in force, the rate applicable to such withdrawals shall be a rate which is specifically approved by the International Monetary Fund for such transactions or, in the absence of a rate so approved, an effective rate which, inclusive of any taxes or surcharges on exchange transfers, is just and reasonable.

4. Exchange restrictions shall not be imposed by either Party in a manner unnecessarily detrimental or arbitrarily discriminatory to the claims, investments, transport, trade, and other interests of the nationals and companies of the other Party, nor to the competitive position thereof.

5. The term "exchange restrictions" as used in the present Article includes all restrictions, regulations, charges, taxes, or other requirements imposed by either Party which burden or interfere with payments, remittances, or transfers of funds or of financial instruments between the territories of the two Parties.

6. Each Party shall afford the other Party adequate opportunity for consultation at any time regarding application of the present Article.

ARTICLE XIII

Commercial travelers representing nationals and companies of either Party engaged in business within the territories thereof

TIAS 3947

8 UST] Korea—Friendship, Commerce, Etc.—Nov. 28, 1956

shall, upon their entry into and departure from the territories of the other Party and during their sojourn therein, be accorded most-favored-nation treatment in respect of the customs and other matters, including, subject to the exceptions in paragraph 5 of Article XI, taxes and charges applicable to them, their samples and the taking of orders, and regulations governing the exercise of their functions.

ARTICLE XIV

1. Each Party shall accord most-favored-nation treatment to products of the other Party, from whatever place and by whatever type of carrier arriving, and to products destined for exportation to the territories of such other Party, by whatever route and by whatever type of carrier, with respect to customs duties and charges of any kind imposed on or in connection with importation or exportation or imposed on the international transfer of payments for imports or exports, and with respect to the method of levying such duties and charges, and with respect to all rules and formalities in connection with importation and exportation.

2. Neither Party shall impose restrictions or prohibitions on the importation of any product of the other Party, or on the exportation of any product to the territories of the other Party, unless the importation of the like product of, or the exportation of the like product to, all third countries is similarly restricted or prohibited.

3. If either Party imposes quantitative restrictions on the importation or exportation of any product in which the other Party has an important interest:

(a) It shall, as a general rule give prior public notice of the total amount of the product, by quantity or value, that may be imported or exported during a specified period, and of any change in such amount or period; and

(b) If it makes allotment to any third country, it shall afford such other Party a share proportionate to the amount of the product, by quantity or value, supplied by or to it during a previous representative period, due consideration being given to any special factors affecting the trade in such product.

4. Either Party may impose prohibitions or restrictions on the importation or exportation of any product on sanitary or other customary grounds of a non-commercial nature, or in the interest of preventing deceptive or unfair practices, provided such prohibitions or restrictions do not arbitrarily discriminate against the commerce of the other Party.

TIAS 3947

5. Nationals and companies of either Party shall be accorded national treatment and most-favored-nation treatment by the other Party with respect to all matters relating to importation and exportation.

6. The provisions of the present Article shall not apply to advantages accorded by either Party:

(a) to products of its national fisheries;

(b) to adjacent countries in order to facilitate frontier traffic; or

(c) by virtue of a customs union or free-trade area of which it may become a member, so long as it informs the other Party of its plans and affords such other Party adequate opportunity for consultation.

7. Notwithstanding the provisions of paragraphs 2 and 3 (b) of the present Article, a Party may apply restrictions or controls on importation and exportation of goods that have effect equivalent to, or which are necessary to make effective, exchange restrictions applied pursuant to Article XII. However, such restrictions or controls shall not depart further than necessary from the above paragraphs and shall be conformable to a policy designed to promote the maximum development of nondiscriminatory foreign trade and to expedite the attainment both of a balance-of-payments position and of monetary reserves which will obviate the necessity of such restrictions.

ARTICLE XV

1. Each Party shall promptly publish laws, regulations and administrative rulings of general application pertaining to rates of duty, taxes or other charges, to the classification of articles for customs purposes, and to requirements or restrictions on imports and exports or the transfer of payments therefor, or affecting their sale, distribution or use; and shall administer such laws, regulations and rulings in a uniform, impartial and reasonable manner. As a general practice, new administrative requirements or restrictions affecting imports, with the exception of those imposed on sanitary grounds or for reasons of public safety, shall not go into effect before the expiration of 30 days after publication, or alternatively, shall not apply to products en route at time of publication.

2. Each Party shall provide an appeals procedure under which nationals and companies of the other Party, and importers of products of such other Party, shall be able to obtain prompt and impartial review, and correction when warranted, of ad-

ministrative action relating to customs matters, including the imposition of fines and penalties, confiscations, and rulings on questions of customs classification and valuation by the administrative authorities. Penalties imposed for infractions of the customs and shipping laws and regulations concerning documentation shall, in cases resulting from clerical errors or when good faith can be demonstrated, be no greater than necessary to serve merely as a warning.

3. Neither Party shall impose any measure of a discriminatory nature that hinders or prevents the importer or exporter of products of either country from obtaining marine insurance on such products in companies of either Party. The present paragraph is subject to the provisions of Article XII.

ARTICLE XVI

1. Products of either Party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment in all matters affecting internal taxation, sale, distribution, storage and use.

2. Articles produced by nationals and companies of either Party within the territories of the other Party, or by companies of the latter Party controlled by such nationals and companies, shall be accorded therein treatment no less favorable than that accorded to like articles of national origin by whatever person or company produced, in all matters affecting exportation, taxation, sale, distribution, storage and use.

ARTICLE XVII

1. Each Party undertakes (a) that enterprises owned or controlled by its Government, and that monopolies or agencies granted exclusive or special privileges within its territories, shall make their purchases and sales involving either imports or exports affecting the commerce of the other Party solely in accordance with commercial considerations, including price, quality, availability, marketability, transportation and other conditions of purchase or sale; and (b) that the nationals, companies and commerce of such other Party shall be afforded adequate opportunity, in accordance with customary business practice, to compete for participation in such purchases and sales.

2. Each Party shall accord to the nationals, companies and commerce of the other Party fair and equitable treatment, as compared with that accorded to the nationals, companies and commerce of any third country, with respect to: (a) the governmental purchase of supplies, (b) the awarding of concessions and

other government contracts, and (c) the sale of any service sold by the Government or by any monopoly or agency granted exclusive or special privileges.

### ARTICLE XVIII

1. The two Parties agree that business practices which restrain competition, limit access to markets or foster monopolistic control, and which are engaged in or made effective by one or more private or public commercial enterprises or by combination, agreement or other arrangement among such enterprises, may have harmful effects upon commerce between their respective territories. Accordingly, each Party agrees upon the request of the other Party to consult with respect to any such practices and to take such measures as it deems appropriate with a view to eliminating such harmful effects.

2. No enterprise of either Party, including corporations, associations, and government agencies and instrumentalities, which is publicly owned or controlled shall, if it engages in commercial, industrial, shipping or other business activities within the territories of the other Party, claim or enjoy, either for itself or for its property, immunity therein from taxation, suit, execution of judgment or other liability to which privately owned and controlled enterprises are subject therein.

### ARTICLE XIX

1. Between the territories of the two Parties there shall be freedom of commerce and navigation.

2. Vessels under the flag of either Party, and carrying the papers required by its law in proof of nationality, shall be deemed to be vessels of that Party both on the high seas and within the ports, places and waters of the other Party.

3. Vessels of either Party shall have liberty, on equal terms with vessels of the other Party and on equal terms with vessels of any third country, to come with their cargoes to all ports, places and waters of such other Party open to foreign commerce and navigation. Such vessels and cargoes shall in all respects be accorded national treatment and most-favored-nation treatment within the ports, places and waters of such other Party; but each Party may reserve exclusive rights and privileges to its own vessels with respect to the coasting trade, inland navigation and national fisheries.

4. Vessels of either Party shall be accorded national treatment and most-favored-nation treatment by the other Party with respect to the right to carry all products that may be carried by

vessel to or from the territories of such other Party; and such products shall be accorded treatment no less favorable than that accorded like products carried in vessels of such other Party, with respect to: (a) duties and charges of all kinds, (b) the administration of the customs, and (c) bounties, drawbacks and other privileges of this nature.

5. Vessels of either Party that are in distress shall be permitted to take refuge in the nearest port or haven of the other Party, and shall receive friendly treatment and assistance.

6. The term "vessels", as used herein, means all types of vessels, whether privately owned or operated, or publicly owned or operated; but this term does not, except with reference to paragraphs 2 and 5 of the present Article, include fishing vessels or vessels of war.

### ARTICLE XX

There shall be freedom of transit through the territories of each Party by the routes most convenient for international transit:

(a) for nationals of the other Party, together with their baggage;

(b) for other persons, together with their baggage, en route to or from the territories of such other Party; and

(c) for products of any origin en route to or from the territories of such other Party.

Such persons and things in transit shall be exempt from customs duties, from duties imposed by reason of transit, and from unreasonable charges and requirements; and shall be free from unnecessary delays and restrictions. They shall, however, be subject to measures referred to in paragraph 3 of Article II, and to nondiscriminatory regulations necessary to prevent abuse of the transit privilege.

### ARTICLE XXI

1. The present Treaty shall not preclude the application of measures:

(a) regulating the importation or exportation of gold or silver;

(b) relating to fissionable materials, to radioactive by-products of the utilization or processing thereof, or to materials that are the source of fissionable materials;

(c) regulating the production of or traffic in arms, ammunition and implements of war, or traffic in other materials carried on directly or indirectly for the purpose of supplying a military establishment;

(d) necessary to fulfill the obligations of a Party for the maintenance or restoration of international peace and security, or necessary to protect its essential security interests; and

(e) denying to any company in the ownership or direction of which nationals of any third country or countries have directly or indirectly the controlling interest, the advantages of the present Treaty, except with respect to recognition of juridical status and with respect to access to courts.

2. The most-favored-nation provisions of the present Treaty relating to the treatment of goods shall not apply to advantages accorded by the United States of America or its Territories and possessions to one another, to the Republic of Cuba, to the Republic of the Philippines, to the Trust Territory of the Pacific Islands or to the Panama Canal Zone.

3. The provisions of the present Treaty relating to the treatment of goods shall not preclude action by either Party which is required or specifically permitted by the General Agreement on Tariffs and Trade during such time as such Party is a contracting party to the General Agreement. Similarly, the most-favored-nation provisions of the present Treaty shall not apply to special advantages accorded by virtue of the aforesaid Agreement.

4. Nationals of either Party admitted into the territories of the other Party for limited purposes shall not enjoy rights to engage in gainful occupations in contravention of limitations expressly imposed, according to law, as a condition of their admittance.

ARTICLE XXII

1. The term "national treatment" means treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals, companies, products, vessels or other objects, as the case may be, of such Party.

2. The term "most-favored-nation treatment" means treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals, companies, products, vessels or other objects, as the case may be, of any third country.

3. As used in the present Treaty, the term "companies" means corporations, partnerships, companies and other associations, whether or not with limited liability and whether or not for

pecuniary profit. Companies constituted under the applicable laws and regulations within the territories of either Party shall be deemed companies thereof and shall have their juridical status recognized within the territories of the other Party.

4. National treatment accorded under the provisions of the present Treaty to companies of the Republic of Korea shall, in any State, Territory or possession of the United States of America, be the treatment accorded therein to companies created or organized in other States, Territories, and possessions of the United States of America.

ARTICLE XXIII

The territories to which the present Treaty extends shall comprise all areas of land and water under the sovereignty or authority of each Party, other than the Panama Canal Zone and the Trust Territory of the Pacific Islands.

ARTICLE XXIV

1. Each Party shall accord sympathetic consideration to, and shall afford adequate opportunity for consultation regarding, such representations as the other Party may make with respect to any matter affecting the operation of the present Treaty.

2. Any dispute between the Parties as to the interpretation or application of the present Treaty, not satisfactorily adjusted by diplomacy, shall be submitted to the International Court of Justice, unless the Parties agree to settlement by some other pacific means.

ARTICLE XXV

1. The present Treaty shall be ratified, and the ratifications thereof shall be exchanged at Seoul as soon as possible.

2. The present Treaty shall enter into force one month after the day of exchange of ratifications. It shall remain in force for ten years and shall continue in force thereafter until terminated as provided herein.

3. Either Party may, by giving one year's written notice to the other Party, terminate the present Treaty at the end of the initial ten-year period or at any time thereafter.

IN WITNESS WHEREOF the respective Plenipotentiaries have signed the present Treaty and have affixed hereunto their seals.

DONE in duplicate, in the English and Korean languages, both equally authentic, at Seoul, this twenty-eighth day of November, one thousand nine hundred fifty-six,

At the time of signing the Treaty of Friendship, Commerce and Navigation between the United States of America and the Republic of Korea, the undersigned Plenipotentiaries, duly authorized by their respective Governments, have further agreed on the following provisions, which shall be considered integral parts of the aforesaid Treaty:

1. The provisions of Article II, paragraph 1 (b), shall be construed as extending to a national of either Party seeking to enter the territories of the other Party solely for the purpose of developing and directing the operations of an enterprise in the territories of such other Party in which his employer has invested or is actively in the process of investing a substantial amount of capital, provided that such employer is a national or company of the same nationality as the applicant and that the applicant is employed by such national or company in a responsible capacity.

2. The term "access," as used in Article V, paragraph 1, comprehends, among other things, legal aid and security for costs and judgment.

3. It is understood that Article V, paragraph 2, does not require a Party to enforce an arbitration award that is contrary to its public policy.

4. The provisions of Article VI, paragraph 4, providing for the payment of compensation shall extend to interests held directly or indirectly by nationals and companies of either Party in property which is taken within the territories of the other Party.

5. The term "public utilities" as used in Article VII, paragraph 2, is deemed to include enterprises engaged in furnishing water supplies, or in manufacturing and distributing gas or electricity, to the general public.

6. With reference to Article VII, paragraph 4, it is understood that neither Party is obligated to engage in mining on the public domain other than on a basis of reciprocity.

7. Either Party may impose restrictions on the introduction of foreign capital as may be necessary to protect its monetary reserves as provided in Article XII, paragraph 2.

8. The provisions of Article XVII, paragraph 2 (b) and (c), and of Article XIX, paragraph 4, shall not apply to postal services.

9. Article XXI, paragraph 1 (e), shall be construed to apply also to any company in the ownership or direction of which any third country or companies thereof have directly or indirectly the controlling interest. A Party is not obligated to permit nationals of the other Party to conduct business within its territories as representatives of a third country or nationals or companies thereof in contravention of laws generally applicable to all individuals.

10. The provisions of Article XXI, paragraph 2, shall apply in the case of Puerto Rico regardless of any change that may take place in its political status.

11. Article XXII does not apply to territories under the authority of either Party solely as a military base or by reason of temporary military occupation.

IN WITNESS WHEREOF the respective Plenipotentiaries have signed this Protocol and have affixed hereunto their seals.

DONE in duplicate, in the English and Korean languages, both equally authentic, at Seoul, this twenty-eighth day of November, one thousand nine hundred fifty-six.

FOR THE REPUBLIC OF KOREA:
CHUNG W. CHO
[SEAL]

FOR THE UNITED STATES OF AMERICA:
WALTER DOWLING
[SEAL]

Exhibit A to Notice of Removal

**EXHIBIT E**

**Exhibit A to Notice of Removal**

FILED _____ LODGED
RECEIVED _____ COPY

OCT 1 8 2004

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Jin Ah Lee, decedent, by her estate )
representative, Jungil Lee; Sang Chul Lee, )
decedent's father; Dukson Lee, decedent's )
mother, )
            )
            Plaintiffs, )
            )
vs. )
            )
ANC Car Rental Corp.; General Motors )
Corp.; Hong-Jun Jeon, )
            )
            Defendants. )
_____ )

No. CV-03-1532-PHX-JAT

**ORDER**

Pending before this Court is: (1) Plaintiffs' Memorandum of Law (Doc. #27); (2) Defendant General Motors Corporation's ("GMC") Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #28); and (3) Defendant ANC Car Rental Corporation's ("ANC") Joinder in the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #29). The Court has considered the submissions of the parties and rules as follows.

FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2003, Jin Ah Lee ("decedent") died in an automobile accident outside Flagstaff, Arizona. Decedent's parents and estate representative brought suit against three defendants: GMC, ANC, and Hong-Jun Jeon. Hong-Jun Jeon was the driver of the car when the accident occurred. GMC is the designer and manufacturer of the car. ANC is the rental

(41)

1  company that furnished the car to Jin Ah Lee. In their Complaint, Plaintiffs allege that this
2  Court has jurisdiction over their case pursuant to 28 U.S.C. § 1332(a).

3       According to the Complaint, Plaintiffs Jungil Lee, Sang Chul Lee, and Dukson Lee
4  are Korean nationals. (Doc. #28 at 2). Defendant Hong-Jun Jeon is also a Korean National.
5  *Id.* Defendant GMC is incorporated in Delaware with its principle place of business in
6  Michigan. *Id.* Defendant ANC is incorporated and has its principle place of business in
7  Florida. *Id.*

8  <center>DISCUSSION</center>

9  **A. Burden of Proof and Standard of Review**

10       "The party asserting jurisdiction has the burden of proving all jurisdictional facts."
11  *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v.*
12  *Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the Court presumes
13  lack of jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated*
14  *Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). The defense of lack of subject matter
15  jurisdiction may be raised at any time by the parties or the Court. *See* Fed. R. Civ. P.
16  12(h)(3).

17  **B. Substantive Subject Matter Jurisdiction and Alienage**

18       The issue before the Court is whether subject matter jurisdiction exists under 28
19  U.S.C. § 1332. Specifically at issue is whether diversity jurisdiction exists when foreign
20  nationals are present as both plaintiff and defendant.

21       Pursuant to 28 U.S.C. § 1332(a)(1) the Court has diversity jurisdiction over cases
22  between citizens of different states involving claims greater than $75,000. Section 1332
23  requires complete diversity between the parties. *See, e.g., Caterpillar, Inc. v. Lewis*, 519 U.S.
24  61, 68 (1996). The citizenship of each plaintiff must be diverse from the citizenship of each
25  defendant. *Id.* This principle includes citizens from foreign countries. *Faysound Ltd. v.*
26  *United Coconut Chems.*, 878 F.2d 290, 294 (9th Cir. 1989) (citing *Cheng v. Boeing Co.*, 708
27
28  <center>- 2 -</center>

Exhibit A to Notice of Removal

1  F.2d 1406, 1412 (9th Cir. 1983) ("Diversity jurisdiction does not encompass foreign

2  plaintiffs suing foreign defendants.").[1]

3      In *Faysound*, a foreign corporation (Faysound, Ltd.) appealed the district court's

4  dismissal of its suit against its insurance company, United States Aviation Underwriters, Inc.,

5  et al. ("Insurers"). *Faysound*, 878 F.2d at 291. In its complaint, Faysound identified its

6  Insurers as "a corporation incorporated and existing under a state of the United States." *Id.*

7  at 292. However, the district court found the Insurers to be a group of eleven insurance

8  companies one of which, Zurich Insurance Company, was a Swiss corporation not

9  incorporated in the United States. *Id.* at 293. Thus, the parties in *Faysound* consisted of a

10  foreign plaintiff suing eleven defendants, ten being American and one being foreign. The

11  Ninth Circuit Court of Appeals held that complete diversity did not exist. *Id.* at 295.

12      The instant case closely resembles *Faysound*. All three plaintiffs are citizens of

13  Korea.[2] Defendant Hong-Jun Jeon is also a citizen of Korea. As indicated above, there is

14  not complete diversity when a plaintiff and defendant are foreign nationals. *Faysound*, 787

15  F.2d at 294. Therefore, this Court lacks subject matter jurisdiction.

16      The Court notes that in certain circumstances, a foreign plaintiff can perfect diversity

17  jurisdiction by dismissing a dispensable foreign defendant, thereby allowing the court to

18  exercise jurisdiction over the remaining citizen defendants. *See* Fed. R. Civ. P. 21; *Sams v.*

19  *Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980). However, in this case, Plaintiffs

20

21      [1] There is a recognized exception to this rule. Complete diversity is not affected
when foreign parties are added to an action between citizens of two different states, provided

22  there is a real dispute between the citizen parties. See 28 USC § 1332(a)(3); *Transure, Inc.*

23  *v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985); *Dresser Industries, Inc.*
*v. Underwriters at Lloyd's of London*, 106 F.3d 494, 498 (3rd Cir. 1997).

24

25      [2] Plaintiffs' complaint suggests that decedent's estate representative is a citizen of
the United States. (Doc. #1 at 1). However, 28 U.S.C. § 1332(c)(2) states that "the legal

26  representative of the estate of a decedent shall be deemed to be a citizen only of the same

27  State as the decedent . . . ." For purposes of section 1332, decedent's estate representative
is also Korean.

28

1    have not sought to sever the foreign defendant, nor asked this Court to retain jurisdiction over

2    only the citizen defendants.  As the case is now pled, the Court lacks jurisdiction and

3    Plaintiffs have not moved to amend the complaint or dismiss the foreign defendant in such

4    a way as to give this Court jurisdiction over the remaining parties.  Therefore, without

5    reaching the issue of indispensable parties, the Court will grant the motion to dismiss the

6    entire case for lack of subject matter jurisdiction.

7                                  CONCLUSION

8        IT IS ORDERED that Defendant General Motor Corporation's Motion to Dismiss

9    (Doc. #28), which Defendant ANC Car Rental Corporation has joined, is GRANTED.  This

10   case is therefore dismissed without prejudice for lack of subject matter jurisdiction.

11       DATED this ____ day of October, 2004.

14                                         _____
                                           James A. Teilborg
15                                         United States District Judge

28                                   - 4 -

Exhibit A to Notice of Removal

**EXHIBIT F**

**Exhibit A to Notice of Removal**

```
┌──────────────────────────────────┐
│ ☒ FILED      __ LODGED            │
│ __ RECEIVED  ☒ COPY               │
│                                   │
│        NOV 0 9 2004               │
│                                   │
│   CLERK U S DISTRICT COURT        │
│    DISTRICT OF ARIZONA            │
│ BY_____ E  DEPUTY      │
└──────────────────────────────────┘
```

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA – PHOENIX

MICHAEL S. KIMM, ESQ. (PRO HAC VICE)
190 MOORE STREET, SUITE 272
HACKENSACK, NEW JERSEY 07601
TEL: (201) 342-3377
*Attorney for Plaintiffs*

-----------------------------------------------x

JIN AH LEE, decedent, by her estate  :
representative, JUNGIL LEE,          :          CV-03-1532-PCT-JAT
SANG CHUL LEE, decedent's father,    :
and DUKSON LEE, decedent's mother,   :
                                     :
                                     :               Civil Action
          Plaintiffs,                :
                                     :
                                     :
             v.                      :
                                     :
                                     :
ANC CAR RENTAL CORP.,                :
GENERAL MOTORS CORP.,                :
and HONG-JUN JEON,                   :          **Plaintiffs' notice of appeal**
                                     :
                                     :
          Defendants.                :
-----------------------------------------------x

SIR/MADAM:

Please take notice that plaintiffs Jin Ah Lee by Jungil Lee, Sang Chul Lee, and

Dukson Lee appeal from the order and judgment dated 10-18-04 by the Honorable

James A. Teilborg, United States District Judge, annexed hereto, to the United States

Court of Appeals for the Ninth Circuit.

Dated: November 8, 2004

                                        _____
                                        Michael S. Kimm
                                        Attorney for plaintiffs

**Exhibit A to Notice of Removal**

## Certificate of Service

Michael S. Kimm, Esq., certifies the foregoing was served upon all counsel by mail as follows.

Jo Ana Saint-George, Esq.
Thomas Klein, Esq.
Bowman and Brooke, LLP
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012
For defendant GM

G. Peter Spiess
Spiess & Lasse, PC
400 East Van Buren, Suite 450
Phoenix, Arizona 85004
Attorney for hong-Jun Jeon

Raymond R. Kusack, Esq.
Quarles & Brady Streich Lang, LLP
One S. Church Street, Suite 1700
Tucson, AZ 85701
Attorneys for ANC Car Rental Corp.

Dated: November 8, 2004

Michael S. Kimm
Attorney for plaintiffs

Exhibit A to Notice of Removal



UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

|  | |  |
|---|---|---|
| JIN AH LEE, by her estate representative | ) | JUDGMENT IN A CIVIL CASE |
| JUNGIL LEE, et al | ) | |
| Plaintiffs, | ) | CIV 03-1532-PCT-JAT |
| | ) | |
| v. | ) | |
| | ) | |
| ANC CAR RENTAY CORP; GENERAL | ) | |
| MOTORS CORP; HONG-JUN JEON, | ) | |
| Defendants. | ) | |
| | ) | |

___  **Jury Verdict.**  This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

__XX__  **Decision by Court.**  This action came for consideration before the Court.  The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that pursuant to the Court's order dated Oct. 18, 2004, granting  motion to dismiss action without prejudice for lack of jurisdiction  by General Motors Corp [28-1] and joined by  ANC Car Rental Corporation,  judgment is entered in  favor of  defendants and against plaintiffs. Plaintiffs  to take nothing, and complaint and action are dismissed.

RICHARD H. WEARE
District Court
Executive/Clerk

October 18, 2004

By: *D Taylor*

Deputy Clerk

cc: (all counsel/jgmdrw)

(42)

FILED _____ LODGED
_____ RECEIVED _____ COPY

OCT 1 8 2004

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Jin Ah Lee, decedent, by her estate )   No. CV-03-1532-PHX-JAT
representative, Jungil Lee; Sang Chul Lee, )
decedent's father; Dukson Lee, decedent's )   **ORDER**
mother, )
)
            Plaintiffs, )
)
vs. )
)
ANC Car Rental Corp.; General Motors )
Corp.; Hong-Jun Jeon, )
)
            Defendants. )
_____ )

        Pending before this Court is: (1) Plaintiffs' Memorandum of Law (Doc. #27); (2)

Defendant General Motors Corporation's ("GMC") Motion to Dismiss for Lack of Subject

Matter Jurisdiction (Doc. #28); and (3) Defendant ANC Car Rental Corporation's ("ANC")

Joinder in the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #29).  The

Court has considered the submissions of the parties and rules as follows.

                    FACTUAL AND PROCEDURAL BACKGROUND

        On June 1, 2003, Jin Ah Lee ("decedent") died in an automobile accident outside

Flagstaff, Arizona.  Decedent's parents and estate representative brought suit against three

defendants: GMC, ANC, and Hong-Jun Jeon.  Hong-Jun Jeon was the driver of the car when

the accident occurred.  GMC is the designer and manufacturer of the car.  ANC is the rental

(41)

1   company that furnished the car to Jin Ah Lee. In their Complaint, Plaintiffs allege that this

2   Court has jurisdiction over their case pursuant to 28 U.S.C. § 1332(a).

3          According to the Complaint, Plaintiffs Jungil Lee, Sang Chul Lee, and Dukson Lee

4   are Korean nationals. (Doc. #28 at 2). Defendant Hong-Jun Jeon is also a Korean National.

5   *Id.* Defendant GMC is incorporated in Delaware with its principle place of business in

6   Michigan. *Id.* Defendant ANC is incorporated and has its principle place of business in

7   Florida. *Id.*

8                               DISCUSSION

9   **A. Burden of Proof and Standard of Review**

10         "The party asserting jurisdiction has the burden of proving all jurisdictional facts."

11  *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v.*

12  *Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In effect, the Court presumes

13  lack of jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated*

14  *Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). The defense of lack of subject matter

15  jurisdiction may be raised at any time by the parties or the Court. *See* Fed. R. Civ. P.

16  12(h)(3).

17  **B. Substantive Subject Matter Jurisdiction and Alienage**

18         The issue before the Court is whether subject matter jurisdiction exists under 28

19  U.S.C. § 1332. Specifically at issue is whether diversity jurisdiction exists when foreign

20  nationals are present as both plaintiff and defendant.

21         Pursuant to 28 U.S.C. § 1332(a)(1) the Court has diversity jurisdiction over cases

22  between citizens of different states involving claims greater than $75,000. Section 1332

23  requires complete diversity between the parties. *See, e.g., Caterpillar, Inc. v. Lewis*, 519 U.S.

24  61, 68 (1996). The citizenship of each plaintiff must be diverse from the citizenship of each

25  defendant. *Id.* This principle includes citizens from foreign countries. *Faysound Ltd. v.*

26  *United Coconut Chems.*, 878 F.2d 290, 294 (9th Cir. 1989) (citing *Cheng v. Boeing Co.*, 708

27

28                                  - 2 -

1   F.2d 1406, 1412 (9th Cir. 1983) ("Diversity jurisdiction does not encompass foreign

2   plaintiffs suing foreign defendants.").[1]

3         In *Faysound*, a foreign corporation (Faysound, Ltd.) appealed the district court's

4   dismissal of its suit against its insurance company, United States Aviation Underwriters, Inc.,

5   et al. ("Insurers"). *Faysound*, 878 F.2d at 291.  In its complaint, Faysound identified its

6   Insurers as "a corporation incorporated and existing under a state of the United States." *Id.*

7   at 292.  However, the district court found the Insurers to be a group of eleven insurance

8   companies one of which, Zurich Insurance Company, was a Swiss corporation not

9   incorporated in the United States. *Id.* at 293.  Thus, the parties in *Faysound* consisted of a

10  foreign plaintiff suing eleven defendants, ten being American and one being foreign.  The

11  Ninth Circuit Court of Appeals held that complete diversity did not exist. *Id.* at 295.

12        The instant case closely resembles *Faysound*.  All three plaintiffs are citizens of

13  Korea.[2]  Defendant Hong-Jun Jeon is also a citizen of Korea.  As indicated above, there is

14  not complete diversity when a plaintiff and defendant are foreign nationals. *Faysound*, 787

15  F.2d at 294.  Therefore, this Court lacks subject matter jurisdiction.

16        The Court notes that in certain circumstances, a foreign plaintiff can perfect diversity

17  jurisdiction by dismissing a dispensable foreign defendant, thereby allowing the court to

18  exercise jurisdiction over the remaining citizen defendants. *See* Fed. R. Civ. P. 21; *Sams v.*

19  *Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980).  However, in this case, Plaintiffs

20

21        [1]  There is a recognized exception to this rule.  Complete diversity is not affected
    when foreign parties are added to an action between citizens of two different states, provided
22  there is a real dispute between the citizen parties.  See 28 USC § 1332(a)(3); *Transure, Inc.*
    *v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985); *Dresser Industries, Inc.*
23  *v. Underwriters at Lloyd's of London*, 106 F.3d 494, 498 (3rd Cir. 1997).

24
        [2]  Plaintiffs' complaint suggests that decedent's estate representative is a citizen of
25  the United States. (Doc. #1 at 1).  However, 28 U.S.C. § 1332(c)(2) states that "the legal
    representative of the estate of a decedent shall be deemed to be a citizen only of the same
26  State as the decedent . . . ." For purposes of section 1332, decedent's estate representative
27  is also Korean.

28                                          - 3 -

1   have not sought to sever the foreign defendant, nor asked this Court to retain jurisdiction over

2   only the citizen defendants.  As the case is now pled, the Court lacks jurisdiction and

3   Plaintiffs have not moved to amend the complaint or dismiss the foreign defendant in such

4   a way as to give this Court jurisdiction over the remaining parties.  Therefore, without

5   reaching the issue of indispensable parties, the Court will grant the motion to dismiss the

6   entire case for lack of subject matter jurisdiction.

7                                     CONCLUSION

8         IT IS ORDERED that Defendant General Motor Corporation's Motion to Dismiss

9   (Doc. #28), which Defendant ANC Car Rental Corporation has joined, is GRANTED.  This

10  case is therefore dismissed without prejudice for lack of subject matter jurisdiction.

11        DATED this 14 day of October, 2004.

12

13

14                                           James A. Teilborg
                                          United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   - 4 -

**EXHIBIT G**

JUL-11-2005  14:03          BOwmANBROOKE                              602 248 0947   P.02/16
07/11/2005  13:29    634603E                                                        PAGE  02

MICHAEL S. KIMM, ESQ.
190 MOORE STREET, SUITE 272
HACKENSACK, NEW JERSEY 07601
TEL: (201) 342-3377
*Attorney for Plaintiffs*

-------------------------------------------------x

| | |
|---|---|
| JIN AH LEE, decedent, by her estate representative, JUNGIL LEE, SANG CHUL LEE and DUKSON LEE,: by their personal representative, Jun Gil Lee, | SUPERIOR COURT OF NEW JERSEY |

JIN AH LEE, decedent, by her estate
representative, JUNGIL LEE,
SANG CHUL LEE and DUKSON LEE,:
by their personal representative,
Jun Gil Lee,

       Plaintiffs,

       v.

ANC CAR RENTAL CORP.,
GENERAL MOTORS CORP.,
and HONG-JUN JEON,

       Defendants.

-------------------------------------------------x

:   SUPERIOR COURT OF NEW JERSEY
:     Law Division: Hudson County
:
:     L - 1647-05
:
:     Civil Action
:     FILED
:     TEAM #2
:     MAR 2 8 2005
:     SUPERIOR COURT
:     OF NEW JERSEY
:     COUNTY OF HUDSON
:     CIVIL DIVISION #4
:   **Complaint with Jury Demand**

## Preliminary

Plaintiff Jin Ah Lee, decedent, by her authorized estate representative, Jungil

Lee, plaintiff Sang-Chul Lee and plaintiff Dukson Lee, by their authorized legal

representative Jungil Lee, for their complaint against defendants ANC Rental

Corporation, General Motors Corporation, and Hong-Jun Jeon, allege:

## The Parties

1. Plaintiff-decedent, Jin Ah Lee, was a natural person, age 22, who died in the

Case 3:11-cv-08135-DGC   Document 1-1   Filed 09/01/11   Page 11 of 175
Exhibit A to Notice of Removal
JUL-11-2005  14:03          BRYAN CAVE LLP                    602 248 0947       P.03/16
07/11/2005  13:29    6346036                                                 PAGE  03

accident relevant to this lawsuit on June 1, 2003, at Flagstaff, Arizona.

2. Plaintiffs Sang-Chul Lee is plaintiff Jin Ah Lee's father and Dukson Lee is plaintiff Jin Ah Lee's mother. These plaintiffs sue in their own names in connection with the untimely death and loss of their daughter, including support, companionship, society, wrongful death and survivorship rights.

3.   All three plaintiffs bring this action through their estate and/or personal representative, Jun Gil Lee, residing at 102 Promenade, Edgewater, New Jersey.

4. Defendant ANC Rental Corporation (acronym for "Alamo/National Car") ("Alamo"), a publicly-traded entity organized in November 1999, is the parent company of Alamo Rent a Car, National Car Rental, and Alamo Local Market, engaged in the rental car business in approximately 60 countries around the world. Its principal offices located at 200 South Andrews Avenue, Fort Lauderdale, FL 33301.   At all relevant times Alamo was the owner and renter of a certain 2003 Chevrolet Malibu automobile which caused plaintiff's death. Defendant Alamo is believed to be authorized to conduct regular business in the State of Arizona and in this state and jurisdiction.

5. Defendant General Motors Corporation ("GM") is believed to be an entity organized under laws of the State of Michigan, and has its worldwide corporate

headquarters and principal offices at 767 Fifth Avenue, New York, New York. At all relevant times GM was the designer and manufacturer of the 2003 Year model Chevrolet Malibu automobile which caused plaintiff's death. Defendant GM is believed to be authorized to conduct regular business in the State of Arizona and in this state and jurisdiction.

6. Defendant Hong-Jun Jeon ("Jeon") is an alien, a national of the Republic of Korea, having his local address at 400 Mass Avenue #34, Boston, MA 02115, and his permanent address at Kangwondo kangnuen-shi kyoi-dong, Darim Apartments 1803, Republic of Korea. Defendant Jeon drove the 2003 Chevy Malibu relevant to this lawsuit and contributed to the death of plaintiff Jin Ah Lee.

### Common Allegations

7. Upon information and belief, in May 2003, defendant Jeon, an alien who possessed an "international driver's license," issued by the Republic of Korea, having relatively little driving experience in the United States, rented a certain 2003 Chevrolet Malibu, four-door automobile (the "Malibu"), bearing California license plates 4LXT007, from defendant Alamo, at one of its rental locations in Las Vegas, Nevada, and drove with three passengers through the State of Arizona and elsewhere.

8. Among the four occupants of the Malibu were the driver and plaintiff Jin Ah Lee and two of their friends. Plaintiff Jin Ah Lee and a second female occupant were

seated in the rear of the car, while defendant Jeon, as the driver, was accompanied by another male in the front seats.

9. Upon information and belief, while defendant Jeon was driving through Flagstaff, Arizona, on a single-lane, two-way, level desert highway, heading westbound, defendant Jeon attempted to pass a slow-moving vehicle through the east-bound lane, in a permitted "passing" zone.

10. Upon information and belief, defendant Jeon crossed into the on-coming lane and attempted to outpace the "slower" car in the westbound lane, but was unable to do so before he saw an oncoming car.  As oncoming traffic became visible, defendant Jeon attempted to slow down and maneuver the Malibu back to the westbound lane, but the Malibu lost stability, "fishtailed" out of control, and left the road surface, off the shoulder, into the unpaved dirt.

11. Upon information and belief, the Malibu failed to brake properly due to weak or small brake pads, lack of anti-lock braking system (ABS), the wheels and body vibrated extensively, bounced up and down, and the frame and body became unstable.

12. Upon in formation and belief, as the Malibu left the road surface and traveled in the dirt, it rolled over and sustained extensive structural damage, including the collapse of its roof, the disintegration of its frame, and the destruction of all

windows and windshields.

13. During the rollover, plaintiff Jin Ah Lee was unsafely ejected out of the passenger compartment of the vehicle. Plaintiff Jin Ah lee suffered serious physical injuries to various parts of her body.

14. Upon information and belief, the accident was observed by, among others, a physician who was traveling through the area at the time, and the physician provided emergency assistance. The police and ambulance were summoned immediately, and plaintiff Jin Ah Lee was transported by air to a hospital.

15. As doctors at Flagstaff Medical Center provided emergency care, plaintiff Jin Ah Lee died from "multiple blunt-trauma injuries" sustained in the accident. She suffered extensive pain between the time of the accident and the time of her death, several hours later.

16. Upon information and belief, the Malibu was towed to Chief's Towing in Flagstaff, Arizona, and subsequently removed by defendant Alamo to Albuquerque, New Mexico, to a facility under its exclusive control. Defendant Alamo has been requested to preserve the car.

### More Particular Allegations and Claims for Relief

17. Plaintiff Jin Ah Lee's untimely death was believed to be caused by a combination of some or all of the following causes of action.

5

Case 3:11-cv-08135-DGC   Document 1   Filed 09/01/11   Page 116 of 175
JUL-11-2005  14:03      BD''''MANBROOKE      Exhibit A to Notice of Removal  P.07/16
07/11/2005  13:29      6346036                                    602 248 0947  PAGE  07

## Count 1: Improper testing by GM

18. Paragraphs 1 through 17 are incorporated by reference.

19. Although GM routinely conducts dynamic rollover tests at its European operations, within the United States, GM has failed to conduct any dynamic rollover tests using anthropomorphic test-dummies, on the Malibu, among other car models, for decades now.

20. Defendant GM's failure to conduct dynamic rollover tests in the United States is part of its overall business strategy to cut costs by its management, despite its knowledge that dynamic rollover tests, as GM itself conducts at its European operations, are an effective means of gauging vehicle safety and improving vehicle and occupant safety.

21. Defendant GM's failure to implement adequate dynamic rollover tests concerning hundreds of thousands of cars made and sold in the United States generally, and of the Malibu, in particular, contributed to accident and to plaintiff Jin Ah Lee's death.

22. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

23. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public

6

Case 3:11-cv-08135-DGC   Document 1   Filed 09/01/11   Page 11 of 175
Exhibit A to Notice of Removal

safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

### Count 2:  Improper design by GM

24. Paragraphs 1 through 17 are incorporated by reference.

25. Despite the fact defendant GM promotes the Malibu as having a "steel cage" construction to protect the passenger cabin, in fact, the subject Malibu's passenger cabin failed to maintain the "survival space," also known as the "non-encroachment zone," necessary for plaintiff to have survived the relevant accident.

26. Upon information and belief, defendant GM knew or should have known that the Malibu's "non-encroachment zone" was of inferior quality, design, and strength. The Malibu's roof structure and the extent of deformation and crushing into the "non-encroachment zone" was needlessly more severe and extensive due to the inherent weaknesses in the roof structure.   A primary reason for utilizing the weak "survival space" was part of defendant GM's overall "cost cutting" business practice.

27. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

28. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject

Case 3:11-cv-08135-DGC   Document 1-3   Filed 09/01/11   Page 118 of 175
Exhibit A to Notice of Removal
JUL-11-2005  14:03        BROWNBROOKE                          602 248 0947    P.09/16
07/11/2005  13:29    6346036                                              PAGE   09

to punitive damages.

### Count 3:  Improper manufacturing by GM

29. Paragraphs 1 through 17 are incorporated by reference.

30. Defendant GM failed to implement appropriate welding of separate components together, in the frame and structure of the Malibu, so as to minimize roof crush.

31. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

32. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the potential risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

### Count 4:  Improper design/manufacturing by GM

33. Paragraphs 1 through 17 are incorporated by reference.

34. Upon information and belief, the side windows and the rear windshield were glazed or attached inappropriately, inadequately and/or defectively. Defendant GM improperly designed and/or manufactured the Malibu in such a way as to allow the windows and windshields to separate from the body relatively easily, and thereby placed human life in unnecessary danger.

35. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

36. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

### Count 5:  Improper design/manufacturing by GM

37. Paragraphs 1 through 17 are incorporated by reference.

38. Upon information and belief, the Malibu's braking system was designed or manufactured inappropriately, inadequately and/or defectively. Defendant GM knew or should have known that the car did not have safe-braking capability, due to relatively small brake-pad size, due to the lack of ABS, and due to other factors; and that the Malibu was not adequately controllable, particularly at highway speeds.

39. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

40. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the potential risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

9

Case 3:11-cv-08135-DGC   Document 1-8   Filed 09/01/11   Page 120 of 175
JUL-11-2005  14:03        B™  MANBROOKE        Exhibit A to Notice of Removal        602 248 0947      P.11/16
07/11/2005  13:29      634603                                                                    PAGE  11

## Count 6: Failure to give adequate warnings by GM

41. Paragraphs 1 through 17 are incorporated by reference.

42. Defendant GM failed to give adequate warning to the public about the dangers associated with, and relating to, the Malibu, each of the foregoing safety/design/manufacturing factors, and to other factors.

43. As a direct and proximate result of defendant GM's actions and omissions, plaintiffs have sustained injuries.

44. Because defendant GM committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant GM should be subject to punitive damages.

## Count 7: Acquisition, use or rental of unsafe vehicles by Alamo

45. Paragraphs 1 through 44 are incorporated by reference.

46. Upon information and belief, defendant Alamo, one of the largest car renters in the world, purchases and acquired a substantial number of Malibu cars from defendant GM.

47. Upon information and belief, defendant Alamo knew one or more of the facts alleged in plaintiffs' claims against defendant GM, concerning the Malibu's testing, design, manufacture, and safety, but nevertheless acquired a substantial

number of such cars, and promoted and rented them to the public, and thereby
unnecessarily increased the likelihood of serious injury or death to persons riding in
its cars, including plaintiff Jin Ah Lee.

48. As a direct and proximate result of defendant Alamo's actions and
omissions, plaintiffs have sustained injuries.

49. Because defendant Alamo committed its actions or omissions knowingly,
intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public
safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject
to punitive damages.

### Count 8: Wrongful rental by Alamo

50. Paragraphs 1 through 44 are incorporated by reference.

51. Upon information and belief, defendant Alamo rented the car to defendant
Jeon despite his failure to produce adequate documentation; despite his lack of
driving experience; and/or despite his inappropriate age.  Upon information and
belief, defendant Jeon was not qualified under defendant Alamo's own rental
guidelines.

52. As a direct and proximate result of defendant Alamo's actions and
omissions, plaintiffs have sustained injuries.

53. Because defendant Alamo committed its actions or omissions knowingly,

11

intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject to punitive damages.

<u>Count 9: Failure to warn by Alamo</u>

54. Paragraphs 1 through 44 are incorporated by reference.

55. At the time defendant Alamo rented the Malibu to defendant Jeon, Alamo knew or should have known that the car did not have ABS braking capability, and/or otherwise did not have adequate controllability, on the highway and elsewhere.

56. At all relevant times, upon information and belief, at the time of making the rental contract, defendant Alamo failed to warn defendant Jeon, plaintiff Jin Ah Lee and the other passengers of the Malibu that the car did not have certain safety devices, including ABS braking capability.

57. Upon information and belief, defendant Alamo failed to warn of other safety measures and thereby contributed to plaintiff Jin Ah Lee's injuries and death.

58. As a direct and proximate result of defendant Alamo's actions and omissions, plaintiffs have sustained injuries.

59. Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject

to punitive damages.

## Count 10: Entrustment of dangerous instrumentality by Alamo

60. Paragraphs 1 through 44 are incorporated by reference.

61. Upon information and belief, defendant Alamo wrongfully entrusted a dangerous instrumentality, the Malibu, to defendant Jeon, and contributed to the unnecessary death of plaintiff Jin Ah Lee.

62. As a direct and proximate result of defendant Alamo's actions and omissions, plaintiffs have sustained injuries.

63. Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of the risks to public safety as well as the safety of plaintiff Jin Ah Lee, defendant Alamo should be subject to punitive damages.

## Count 11: Contract insurer of Jeon

64. Paragraphs 1 through 44 are incorporated by reference.

65. At all relevant times, Alamo or another insurance carrier underwrote a certain liability insurance policy affecting the rental/car in issue.

66. Such carrier is liable to the same extent as defendant Jeon's liability, discussed below.

67. Despite repeated demands for policy claim information and payment,

Case 3:11-cv-08135-DGC   Document 1-8   Filed 09/01/11   Page 124 of 175
JUL-11-2005  14:03          POLZMANBROOKE                      602 248 0947       P.15/16
07/11/2005  13:29      634603                                                     PAGE  15
Exhibit A to Notice of Removal

defendant Alamo has failed and refused to pay on such policy and has failed to even provide basic policy information.

68. Defendant Alamo is liable for such policy value.

69. Because defendant Alamo committed its actions or omissions knowingly, intentionally, willfully, wantonly, and/or in reckless disregard of its obligations as an insurance company, defendant Alamo should be subject to punitive damages for bad faith insurance practices.

## Count 12: Negligent driving by Jeon

70. Paragraphs 1 through 63 are incorporated by reference.

71. Upon information and belief, defendant Jeon, unaware that he was driving a car with various testing/design/manufacturing and safety problems, was negligent in his operation of the subject Malibu.  Defendant Jeon's actions and omissions contributed to the other defendants' actions and omissions.

72. As a direct and proximate result of defendant Jeon's actions, plaintiffs have sustained injuries.

WHEREFORE, plaintiffs demand:

A. appropriate compensatory damages in a sum to be determined at trial, for pain and suffering, loss of income, loss of society and survivorship rights, and wrongful death, to the parents of Jin Ah Lee on behalf of Jin Ah Lee and themselves,

Case 3:11-cv-08135-DGC   Document 1-8   Filed 08/01/11   Page 125 of 175

Exhibit A to Notice of Removal

against all defendants, individually and jointly and severally; and

B. appropriate punitive damages in a sum to be determined at trial, against all defendants, individually and jointly and severally; and

C. appropriate costs and attorney's fees; and

D. any other relief the Court deems just and proper under the circumstances.

### Jury Demand

Plaintiffs hereby request a trial by jury.

### R. 4:5-1 Certification

This action was previously filed in the United States District Court for the District of Arizona, at Phoenix, where the court dismissed the action for lack of subject matter jurisdiction due to the presence of aliens on both sides; which dismissal order is currently on appeal before the Ninth Circuit United States Court of Appeals. Other than this matter, plaintiffs certify that the subject matter of this action is not pending or likely to be filed in any other court or arbitration tribunal.

### Trial Counsel Designation

Plaintiffs designate Michael S. Kimm, Esq., as their trial counsel.

Dated: March 25, 2005

Michael S. Kimm
Attorney for plaintiffs

15

Exhibit A to Notice of Removal

# EXHIBIT 6

Exhibit A to Notice of Removal

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF COCONINO

**Judge Fred Newton**
**Division 2**
**July 14, 2005**                              **Kathy Sandstrom, Judicial Assistant**

<div align="center">NOTICE</div>

| | |
|---|---|
| JIN AH LEE, decedent, by her estate representative, Jungil Lee, Sang Chui Lee, decedent's father and Dukson Lee, decedent's mother ) ) ) ) ) ) | |
| **Plaintiff(s),** ) | **Case No. CV 2005-307** |
| ) | |
| vs. ) | |
| ) | |
| ANC Car Rental Corp. General Motors Corp., and Hong-Jun Jeon ) ) ) | **Notice: Case Management Conference** |
| **Defendants.** ) | |

IT IS ORDERED scheduling a case management conference on:
Date: September 26, 2005
Time: 9:15 a.m.
Location: Division 2 Courtroom before the Hon. Fred Newton
Telephone No. (928)779-6598  Time set aside: 15 minutes

   **IT IS FURTHER ORDERED** that all attorneys and all parties representing themselves shall appear with authority to make stipulations regarding Alternative Dispute Resolution (ADR) and scheduling.  **Telephonic appearances must be arranged through the Judicial Assistant and should the need for a conference call arise, counsel for Plaintiff is responsible for arranging and initiating any telephonic conference calls.**

Exhibit A to Notice of Removal

&#9744; All attorneys shall appear with their clients.
&#9746; All attorneys shall appear.  Their clients may appear.
&#9744; The ADR Director shall appear.

1.   The Court will discuss ADR and set applicable deadlines.

2.   If ADR is not pursued, the Court may schedule discovery, disclosure, and any other matters necessary to assist the litigants.

3.   Parties and counsel shall bring a schedule of their availability so that firm dates can be set.  Once deadlines and hearings are set, they shall not be continued without a hearing.

4.   Not later than five working days prior to the date of the case management conference, the parties shall confer to discuss a) ADR, b) deadlines for disclosure, close of discovery, and dispositive motions; c) approximate time lines for a settlement conference.

——————

cc:   Michael S. Kimm, Esq. 190 Moore Street, Suite 272, Hackensack, New Jersey 07601
Raymond R. Cusack, Esq. Quarles, Brady, Streich & Lang, One South Church Avenue, Suite 1700, Phoenix, Arizona 85701
Thomas M. Klein, Esq. Bowman and Brooke, L.L.P. 2901 No. Central Avenue, Suite 1600, Phoenix Plaza, Phoenix, AZ 85012
G. Peter Spiess, Esq.  Spiess & Associates, P.C. 420 West Roosevelt Street, Phoenix, AZ 85003
Michael J. Skousen,Esq.  Skousen, Skousen, Gulbrandsen & Patience, P.C. 414 East Southern Avenue, Mesa, AZ 85204
ADR Coordinator
Docket

# EXHIBIT 7



1

Quarles & Brady LLP
Firm State Bar No. 00443101
One South Church Avenue
Suite 1700
Tucson, Arizona  85701-1621
TELEPHONE 520.770.8700

2

3

4   Attorneys for Defendant Alamo Rent A Car, LLC
    Timothy M. Medcoff (#019204)

5

6              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

7                  **IN AND FOR THE COUNTY OF COCONINO**

8

9    JIN AH LEE, Decedent, by her estate       CASE NO. CV-20050307
     representative, JUNGIL LEE, SANG

10   CHUL LEE, Decedent's father, and          **ALAMO RENT A CAR, LLC'S**
     DUKSON LEE, Decedent's mother,            **ANSWER TO COMPLAINT AND**

11                                             **JURY DEMAND**

12              Plaintiffs,                     Assigned to The Honorable Fred
                                               Newton

13        vs.

14   ANC CAR RENTAL CORP., GENERAL
     MOTORS CORP., and HONG-JUN JEON,

15              Defendants.

16

17        Defendant Alamo Rent A Car, LLC, wrongfully sued as ANC Rental Corp.

18   ("Alamo"), for its Answer to Plaintiffs' Complaint, admits, denies and alleges as follows:

19                          **PRELIMINARY**

20        Alamo is without knowledge or information sufficient to form a belief as to the

21   truth of the allegations in the preliminary statement of the Complaint and therefore denies

22   the same and demands strict proof that Jungil Lee, Sang-Chul Lee and Dukson Lee are the

23   authorized legal representatives or estate representatives for Jin Ah Lee, the decedent.

24                          **THE PARTIES**

25        1.    Alamo admits that Jin Ah Lee died in a one car rollover accident on June 1,

26   2003 near Flagstaff, Arizona.  Alamo is without knowledge or information sufficient to

1    form a belief as to the truth of the remaining allegations in Paragraph 1 of the Complaint

2    and denies the same and demands strict proof thereof.

3        2.      Alamo is without knowledge or information sufficient to form a belief as to

4    the truth of the allegations in Paragraph 2 of the Complaint, and therefore denies the same

5    and demands strict proof thereof.

6        3.      Responding to the allegations in Paragraph 3 of the Complaint, Alamo

7    admits that it was an entity authorized to conduct business in the State of Arizona and that

8    Alamo rented the 2003 Chevrolet Malibu which was involved in the one car rollover

9    accident near Flagstaff, Arizona on June 1, 2003.  Alamo further admits that it had its

10   principal place of business in the State of Florida.

11       4.      Alamo is without knowledge or information sufficient to form a belief as to

12   the truth of the allegations in Paragraph 4 of the Complaint, and therefore denies the same

13   and demands strict proof thereof.

14       5.      Alamo is without knowledge or information sufficient to form a belief as to

15   the truth of the allegations in Paragraph 5 of the Complaint, and therefore denies the same

16   and demands strict proof thereof.

17                            **JURISDICTION AND VENUE**

18       6.      In response to the allegations in Paragraph 6 of the Complaint, Alamo

19   admits that the automobile crash which gives rise to this Complaint occurred near

20   Coconino County, Arizona.

21                              **COMMON ALLEGATIONS**

22       7.      In response to the allegations in Paragraph 7 of the Complaint, Alamo

23   alleges that Arizona Accident Report 2003-04 3602 (the "Report") says Hong-Jun Jeon

24   was   driving   with   three   passengers   in   a   2003   Chevrolet   Malibu,   VIN

25   1G1ND52J63M519959, license plate number 4XLT007.  Alamo further alleges that,

26   based on the "SDM" equipped on the 2003 Malibu, the Malibu was traveling in excess of

- 2 -

90 mph shortly before or during the accident.  Alamo is without sufficient information to determine the truth or falsity of the remaining allegations of Paragraph 7, and denies the same.

8.      Alamo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and therefore denies the same and demands strict proof thereof.

9.      Alamo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint, and therefore denies the same and demands strict proof thereof.

10.     Alamo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and therefore denies the same and demands strict proof thereof.

11.     Alamo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and therefore denies the same and demands strict proof thereof.

12.     Alamo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint, and therefore denies the same and demands strict proof thereof.

13.     Alamo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint, and therefore denies the same and demands strict proof thereof.

14.     Alamo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint, and therefore denies the same and demands strict proof thereof.

Exhibit A to Notice of Removal

15.     Alamo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint, and therefore denies the same and demands strict proof thereof.

16.     In response to the allegations in Paragraph 16 of the Complaint, Alamo alleges that the Report says the Malibu was towed to Chief's Towing in Flagstaff, Arizona.  Alamo further admits that it subsequently moved the Malibu to Albuquerque, New Mexico, and shrink wrapped and covered the Malibu.

17.     Alamo denies the allegations in Paragraph 17 of the Complaint.

### Count 1: Improper testing by GM

18.     Alamo incorporates by reference its responses to paragraphs 1 through 17 as if fully restated herein.

19.     The allegations in Paragraph 19 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

20.     The allegations in Paragraph 20 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

21.     The allegations in Paragraph 21 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

- 4 -

Exhibit A to Notice of Removal

22.    The allegations in Paragraph 22 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

23.    The allegations in Paragraph 23 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

### Count 2: Improper design by GM

24.    Alamo incorporates by reference its responses to paragraphs 1 through 23 as if fully restated herein.

25.    The allegations in Paragraph 25 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

26.    The allegations in Paragraph 26 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

27.    The allegations in Paragraph 27 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a

1   belief as to the truth of the allegations and therefore denies the same and demands strict

2   proof thereof.

3       28.    The allegations in Paragraph 28 of the Complaint are directed to a Co-

4   Defendant and therefore, no response is required from Alamo.  To the extent a response is

5   required, Alamo alleges that it is without knowledge or information sufficient to form a

6   belief as to the truth of the allegations and therefore denies the same and demands strict

7   proof thereof.

8                    **Count 3: Improper manufacturing by GM**

9       29.    Alamo incorporates by reference its responses to paragraphs 1 through 28 as

10  if fully restated herein.

11      30.    The allegations in Paragraph 30 of the Complaint are directed to a Co-

12  Defendant and therefore, no response is required from Alamo.  To the extent a response is

13  required, Alamo alleges that it is without knowledge or information sufficient to form a

14  belief as to the truth of the allegations and therefore denies the same and demands strict

15  proof thereof.

16      31.    The allegations in Paragraph 31 of the Complaint are directed to a Co-

17  Defendant and therefore, no response is required from Alamo.  To the extent a response is

18  required, Alamo alleges that it is without knowledge or information sufficient to form a

19  belief as to the truth of the allegations and therefore denies the same and demands strict

20  proof thereof.

21      32.    The allegations in Paragraph 32 of the Complaint are directed to a Co-

22  Defendant and therefore, no response is required from Alamo.  To the extent a response is

23  required, Alamo alleges that it is without knowledge or information sufficient to form a

24  belief as to the truth of the allegations and therefore denies the same and demands strict

25  proof thereof.

26

QBTUC\203027.00010\167669.1

Exhibit A to Notice of Removal

1   **Count 4: Improper design/manufacturing by GM**

2   33.   Alamo incorporates by reference its responses to paragraphs 1 through 32 as

3   if fully restated herein.

4   34.   The allegations in Paragraph 34 of the Complaint are directed to a Co-

5   Defendant and therefore, no response is required from Alamo.  To the extent a response is

6   required, Alamo alleges that it is without knowledge or information sufficient to form a

7   belief as to the truth of the allegations and therefore denies the same and demands strict

8   proof thereof.

9   35.   The allegations in Paragraph 35 of the Complaint are directed to a Co-

10  Defendant and therefore, no response is required from Alamo.  To the extent a response is

11  required, Alamo alleges that it is without knowledge or information sufficient to form a

12  belief as to the truth of the allegations and therefore denies the same and demands strict

13  proof thereof.

14  36.   The allegations in Paragraph 36 of the Complaint are directed to a Co-

15  Defendant and therefore, no response is required from Alamo.  To the extent a response is

16  required, Alamo alleges that it is without knowledge or information sufficient to form a

17  belief as to the truth of the allegations and therefore denies the same and demands strict

18  proof thereof.

19  **Count 5: Improper design/manufacturing by GM**

20  37.   Alamo incorporates by reference its responses to paragraphs 1 through 36 as

21  if fully restated herein.

22  38.   The allegations in Paragraph 38 of the Complaint are directed to a Co-

23  Defendant and therefore, no response is required from Alamo.  To the extent a response is

24  required, Alamo alleges that it is without knowledge or information sufficient to form a

25  belief as to the truth of the allegations and therefore denies the same and demands strict

26  proof thereof.

Exhibit A to Notice of Removal

39.     The allegations in Paragraph 39 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

40.     The allegations in Paragraph 40 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

### Count 6: Failure to give adequate warnings by GM

41.     Alamo incorporates by reference its responses to paragraphs 1 through 40 as if fully restated herein.

42.     The allegations in Paragraph 42 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

43.     The allegations in Paragraph 43 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same and demands strict proof thereof.

44.     The allegations in Paragraph 44 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information sufficient to form a

1  belief as to the truth of the allegations and therefore denies the same and demands strict

2  proof thereof.

3  **Count 7: Acquisition, use or rental of unsafe vehicles by Alamo**

4      45.    Alamo incorporates by reference its responses to paragraphs 1 through 44 as

5  if fully restated herein.

6      46.    Responding to the allegations in Paragraph 46 of the Complaint, Alamo

7  admits that it had a number of Malibu cars in its fleet over the years.

8      47.    Alamo denies the allegations in Paragraph 47 of the Complaint.

9      48.    Alamo denies the allegations in Paragraph 48 of the Complaint.

10      49.    Alamo denies the allegations in Paragraph 49 of the Complaint.

11  **Count 8: Wrongful rental by Alamo**

12      50.    Alamo incorporates by reference its responses to paragraphs 1 through 49 as

13  if fully restated herein.

14      51.    Alamo admits that it rented the Malibu to Co-Defendant Jeon.   Alamo

15  denies the remaining allegations in Paragraph 51 of the Complaint.

16      52.    Alamo denies the allegations in Paragraph 52 of the Complaint.

17      53.    Alamo denies the allegations in Paragraph 53 of the Complaint.

18  **Count 9: Failure to warn by Alamo**

19      54.    Alamo incorporates by reference its responses to paragraphs 1 through 53 as

20  if fully restated herein.

21      55.    Alamo denies the allegations in Paragraph 55 of the Complaint.

22      56.    Alamo denies the allegations in Paragraph 56 of the Complaint.

23      57.    Alamo denies the allegations in Paragraph 57 of the Complaint.

24      58.    Alamo denies the allegations in Paragraph 58 of the Complaint.

25      59.    Alamo denies the allegations in Paragraph 59 of the Complaint.

26

### Count 10: Entrustment of dangerous instrumentality by Alamo

60.     Alamo incorporates by reference its responses to paragraphs 1 through 59 as if fully restated herein.

61.     Alamo denies the allegations in Paragraph 61 of the Complaint.

62.     Alamo denies the allegations in Paragraph 62 of the Complaint.

63.     Alamo denies the allegations in Paragraph 63 of the Complaint.

### Count 11: Contract insurer of Jeon

64.     Alamo incorporates by reference its responses to paragraphs 1 through 63 as if fully restated herein.

65.     Responding to the allegations in Paragraph 65 of the Complaint, Alamo objects to any allegations in the Complaint referencing automobile insurance or coverage.

66.     Responding to the allegations in Paragraph 66 of the Complaint, Alamo objects to any allegations in the Complaint referencing automobile insurance or coverage.

67.     Responding to the allegations in Paragraph 67 of the Complaint, Alamo objects to any allegations in the Complaint referencing automobile insurance or coverage.

68.     Responding to the allegations in Paragraph 68 of the Complaint, Alamo objects to any allegations in the Complaint referencing automobile insurance or coverage.

69.     Responding to the allegations in Paragraph 69 of the Complaint, Alamo objects to any allegations in the Complaint referencing automobile insurance or coverage.

### Count 12: Negligent driving by Jeon

70.     Alamo incorporates by reference its responses to paragraphs 1 through 69 as if fully restated herein.

71.     Alamo alleges that the allegations in Paragraph 71 of the Complaint are directed to a Co-Defendant and therefore, no response is required from Alamo.  To the extent a response is required, Alamo alleges that it is without knowledge or information

1    sufficient to form a belief as to the truth of the allegations and therefore denies the same

2    and demands strict proof thereof.

3        72.    Alamo alleges that the allegations in Paragraph 72 of the Complaint are

4    directed to a Co-Defendant and therefore, no response is required from Alamo.  To the

5    extent a response is required, Alamo alleges that it is without knowledge or information

6    sufficient to form a belief as to the truth of the allegations and therefore denies the same

7    and demands strict proof thereof.

8                        **GENERAL DENIAL**

9        73.    Alamo denies each and every allegation of the Complaint not expressly

10   admitted herein.  Alamo further denies that Plaintiffs have been damaged as alleged in the

11   Complaint or at all.

12            **AFFIRMATIVE ALLEGATIONS AND DEFENSES**

13       74.    Alamo alleges that the Complaint, and each claim for relief therein set forth,

14   fails to state a claim against Alamo upon which relief can be granted.

15       75.    Alamo affirmatively alleges that Plaintiffs are not the real party in interest or

16   lack the capacity and/or standing to bring the claims asserted in the Complaint on behalf

17   of Jin Ah Lee, the decedent.

18       76.    Alamo affirmatively alleges that Plaintiffs' injuries and damages, if any,

19   were caused or contributed to or by the negligence of Plaintiffs' decedent, or Plaintiffs'

20   agents, or employees, or the joint or concurrent negligence of Plaintiffs' decedent, agents

21   or employees, and/or other persons, firms, corporations, or body politics over whom

22   Alamo had no control or right of control, and that this comparative negligence bars any

23   recovery by Plaintiffs.

24       77.    Alamo affirmatively alleges that Plaintiffs' damages, if any, must be reduced

25   by the comparative fault of Plaintiffs' decedent, and any other persons, including

26   responsible non-parties pursuant to A.R.S. § 12-501, *et seq.*

- 11 -

Exhibit A to Notice of Removal

78.    Alamo affirmatively alleges that Plaintiffs' recovery of damages and losses, if any, must be reduced by the amounts received from collateral sources.

79.    Alamo affirmatively alleges that the acts or omissions, if any, of Alamo were not a substantial factor in bringing about the alleged injuries and, therefore, were not a contributing cause thereof, but were superseded by the acts and omissions of others, which were sole or independent, intervening and proximate causes of any such injuries or damages allegedly suffered.

80.    Upon information and belief, Alamo affirmatively alleges that the Malibu conformed with the state of the art at the time it was sold.

81.    Upon information and belief, Alamo affirmatively alleges that the proximate cause of the incident giving rise to this action was a use of the vehicle which was for a purpose, in a manner, or in an activity other than that which was reasonably foreseeable, or was contrary to any express and adequate instructions or warnings appearing on or attached to or delivered with the vehicle about which Plaintiffs' decedent, agents and/or employees knew, or in the exercise of reasonable diligence, should have known.

82.    Alamo affirmatively alleges that all of the activities and negligence of Plaintiffs' decedent, whether individually or jointly, which prevent their recovery of damages in this action are imputed to all Plaintiffs, barring their recovery of any damages.

83.    Alamo affirmatively alleges that Plaintiffs failed to mitigate their damages.

84.    Alamo affirmatively alleges that the State of Arizona's judicially created definitions and standards for determining whether there has been an actionable failure to warn are unconstitutional in that, among other things, they are void for vagueness and an undue burden upon interstate commerce, as well as an impermissible effort to regulate in an area that has previously been preempted by the federal government.

85.    Alamo affirmatively alleges that Plaintiffs' claims are barred by the doctrine of laches and spoliation of evidence.

86.     Alamo affirmatively alleges that, after appropriate discovery, the following affirmative defenses may be applicable:  lack of subject matter jurisdiction, statute of limitations bar, failure to join a necessary and proper party, abatement, estoppel, waiver, release, payment, *res judicata,* violation of a statue, violation of a public policy, and failure to comply with a statutory requirement.  The extent to which Plaintiffs' claims may be barred by one or more of the foregoing affirmative defenses cannot be determined until Alamo has had an opportunity to complete discovery.

87.     Alamo affirmatively alleges that the Complaint fails to set forth sufficient facts to support a claim for punitive or exemplary damages.

### JURY DEMAND

88.     Pursuant to Rule 38 of the Arizona Rules of Civil Procedure, Alamo demands a trial by jury on all issues raised in the pleadings in this action.

WHEREFORE, Defendant Alamo Rent A Car, LLC requests that Plaintiffs take nothing by their Complaint and that the same be dismissed with prejudice on the merits that Alamo have and recover its costs, disbursements and attorneys' fees incurred in this matter, and that Alamo receive all other relief which this Court deems just and proper.

DATED this 16th day of July, 2007.

QUARLES & BRADY LLP
One South Church Avenue, Suite 1700
Tucson, AZ 85701-1621

By _____
     Timothy M. Medcoff

Attorneys for Defendant Alamo Rent A Car, LLC

- 13 -

1   Original and one copy of the foregoing
2   mailed for filing with the Clerk of the Court

3   and

4   Copy of the foregoing mailed this
5   16th day of July, 2007 to:

6   Michael S. Kimm, Esq.
7   190 Moore Street, Suite 272
    Hackensack, NJ 07601
8   Attorneys for Plaintiffs

9   Thomas M. Klein, Esq.
10  Abram N. Bowman, Esq.
    Bowman and Brooke LLP
11  Suite 1600 Phoenix Plaza
12  2901 North Central Avenue
    Phoenix, AZ 85012
13  Attorneys for Defendant General Motors Corporation

14  G. Peter Spiess, Esq.
15  Spiess & Associates, PC
    420 West Roosevelt Street
16  Phoenix, AZ 85701
17  Attorneys for Defendant Hong-Jun Jeon

18
19  _Erin Macdonald_
20
21
22
23
24
25
26

QBTUC\203027.00010\167669.1

Exhibit A to Notice of Removal

# EXHIBIT 8

1

2

3

Quarles & Brady Streich Lang LLP
Firm State Bar No. 00443101
One South Church Avenue
Suite 1700
Tucson, Arizona 85701-1621
TELEPHONE 520.770.8700

4

5

Attorneys for Defendant
ANC Rental Corp.
Raymond R. Cusack (#013509)
Timothy M. Medcoff (#019204)

6

7

**IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA**

8

**COCONINO COUNTY**

9

10

11

12

13

14

15

16

17

JIN AH LEE, Decedent, by her estate
representative, JUNGIL LEE, SANG
CHUL LEE, Decedent's father, and
DUKSON LEE, Decedent's mother,

Plaintiffs,

vs.

ANC CAR RENTAL CORP., GENERAL
MOTORS CORP., and HONG-JUN JEON,

Defendants.

NO. CV-20050307

**DEFENDANT ANC RENTAL
CORP.'S JOINDER TO GENERAL
MOTORS CORPORATION'S
MOTION TO DISMISS AND/OR
STAY**

The Honorable Fred Newton

18

19

20

Defendant ANC Rental Corp. ("ANC"), by and through its undersigned attorneys,
hereby joins in General Motors Corporation's Motion to Dismiss and/or Stay this
proceeding for the reasons set forth in General Motors Corporation's Motion.

21

RESPECTFULLY SUBMITTED this ⎯14⎯ day of July, 2005.

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

QUARLES & BRADY STREICH LANG LLP
One South Church Avenue
Suite 1700
Tucson, AZ  85701-1621

By _____
    Raymond R. Cusack
    Timothy M. Medcoff

Attorneys for Defendant
ANC Car Rental Corp.

Original and one copy
of the foregoing filed with
the Clerk of the Court
and
Copy of the foregoing
mailed this _14_ day of
July, 2005 to:

Thomas M. Klein, Esq.
Jo Ana Saint-George, Esq.
Bowman and Brooke LLP
Suite 1600 Phoenix Plaza
2901 North Central Avenue
Phoenix, AZ 85012
Attorneys for Defendant GM Corporation

G. Peter Spiess, Esq.
Spiess & Associates, PC
420 West Roosevelt Street
Phoenix, AZ 85701
Attorneys for Defendant Hong-Jun Jeon

Michael S. Kimm, Esq.
190 Moore Street
Suite 272
Hackensack, NJ 07601
Attorneys for Plaintiffs

Exhibit A to Notice of Removal

# EXHIBIT 9

**Exhibit A to Notice of Removal**

MICHAEL J. SKOUSEN, #011982
SKOUSEN, SKOUSEN,
GULBRANDSEN & PATIENCE, P.C.
414 EAST SOUTHERN AVENUE
MESA, ARIZONA 85204
TEL: 480-833-8800
*Attorneys for Plaintiff*

DEBORAH YOUNG, CLERK
BY _____
2005 JUL 29  AM 11: 50
FILED

THE SUPERIOR COURT OF THE STAT3E OF ARIZONA
IN AND FOR THE COUNTY OF COCONINO

-----------------------------------------------------------------x

JIN AH LEE decedent, by her estate        :
representative, JUNGIL LEE,                :
SANG CHUL LEE and DUKSON LEE,             :
by their personal representative,         :        No. CV 2005-0307
JUN GIL LEE,                              :
            Plaintiff,                    :
                                          :
        v.                                :
                                          :
ANC CAR RENTAL CORP.,                     :        **Proof of Service**
GENERAL MOTORS CORP.,                     :
and HONG-JUN JEON,                        :
            Defendants.                   :

-----------------------------------------------------------------x

Defendant General Motors was served as stated in the annexed Officer's Certificate.

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

| X OFFICER CERTIFICATE | __ AFFIDAVIT OF PROCESS SERVER |
|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that: (notary not required) | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notary required) |

OR

X   I served personally a copy of the summons and complaint,
__   I served by registered or certified mail (copy of return receipt attached)   a copy of the summons and complaint, together with _____ on the defendant(s):
                                    Attachment

| Name(s) | Complete address(es) of service | Day, date, time |
|---|---|---|
| General Motors Corp by Serving registered agent Corporation Co & Karen Clowes | 30600 Telegraph Bingham Farms | Tuesday 6-28-05 1:30pm |
| | | |
| | | |

After diligent search and inquiry, I have been unable to find and serve the following defendant(s): _____

_____

I have made the following efforts in attempting to serve process:

_____

I have personally attempted to serve the summons and complaint, together with _____
                                                            Attachment

_____

at _____ and have been unable to complete service because
    Address
the address was incorrect at the time of filing.

| Service fee $ 18 | Miles Traveled | Mileage fee $ 13 | Total fee $ 31 | Signature Shawn M Stankewid QCSD Deputy |
|---|---|---|---|---|

Title COi Klem

Subscribed and sworn to before me on 6-28-05, _____ County, Michigan.
                                    Date

My commission expires: 8-3-05   Signature: _____
                        Date                    Deputy court clerk/Notary public

MAUREEN V. HOWALD
Notary Public, Oakland County, Michigan
Commission Expires August 3, 2005

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint and required fees, if any, together with:

_____

_____ on _____
Attachment                                 Day, date, time

_____ on behalf of _____
Signature

MCR 2.105

Exhibit A to Notice of Removal

# EXHIBIT 10

Exhibit A to Notice of Removal

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF COCONINO

**Judge Fred Newton**
**Division 2**
**August 8, 2005**                                    **Kathy Sandstrom, Judicial Assistant**

**NOTICE**

| | |
|---|---|
| JIN AH LEE, decedent, by her estate ) representative, Jungil Lee, Sang Chui Lee, decedent's father and Dukson Lee, decedent's mother ) **Plaintiff(s)**, | **Case No. CV 2005-307** |
| vs. | |
| ANC Car Rental Corp. General Motors Corp., and Hong-Jun Jeon | **Notice: Motion to Dismiss and/or Stay** |
| **Defendants.** | |

Action: Motion to Dismiss and/or Stay

The Court is in receipt of the Defendants' Motions to Dismiss and/or Stay submitted by GM Corporation and ANC Rental Corporation.   No response was filed by the Plaintiffs;

**IT IS THEREFORE ORDERED** granting the Defendants' request to stay the proceedings in this matter.

**IT IS FURTHER ORDERED** vacating the case management conference set on September 26, 2005 and resetting the same to Monday, January 30, 2006 at the hour of 9:30 a.m. in Division 2.   Counsel may appear telephonically by contacting the court at 928-779-6598.

Fred Newton, Judge

Exhibit A to Notice of Removal

cc:   Raymond R. Cusack, Esq. Quarles, Brady, Streich & Lang, One South Church
      Avenue, Suite 1700, Phoenix, Arizona 85701

      Thomas M. Klein, Esq.  Bowman and Brooke, L.L.P.  2901 No. Central Avenue,
      Suite 1600, Phoenix Plaza, Phoenix, AZ 85012

      Michael J. Skousen,Esq.  Skousen, Skousen, Gulbrandsen & Patience, P.C.
      414 East Southern Avenue, Mesa, AZ 85204

      Docket

Exhibit A to Notice of Removal

# EXHIBIT 11

1   Thomas M. Klein (State Bar No. 010954)
    Abram N. Bowman (State Bar No. 023112)
2   BOWMAN AND BROOKE LLP
    Suite 1600 Phoenix Plaza
3   2901 North Central Avenue
    Phoenix, Arizona  85012
4   (602) 643-2300
    (602) 248-0947 - Fax
5
6   Attorneys for Defendant GM Corporation
7
8                    SUPERIOR COURT OF ARIZONA
9                        COCONINO COUNTY
10  Jin Ah Lee, decedent, by her estate      )
    representative, Jungil Lee,              )
11  Sang Chul Lee, decedent's father,        )  Case No. CV-20050307
    and Dukson Lee, decedent's mother,       )
12                                           )  STIPULATION TO STAY THE ACTION
                 Plaintiff,                  )
13                                           )
    v.                                       )
14                                           )  (Assigned to Honorable Fred Newton)
    ANC Car Rental Corp., General Motors Corp.,)
15  and Hong-Jun Jeon,                       )
                                             )
16               Defendants.                 )
                                             )
17  _____ )

18          The undisputed parties, by and through their respective counsel of record, and

19  subject to the approval of this court, hereby stipulate that this matter be stayed pending

20  the resolution of two previously filed duplicative actions currently pending in the Ninth

21  Circuit Court of Appeals and in the Superior Court of New Jersey.

22          DATED this 11th day of August, 2005.

23  BOWMAN AND BROOKE LLP              MICHAEL S. KIMM, ESQ.

24

25  By:_____        By:_____
          Thomas M. Klein                   Michael S. Kimm
26        Abram N. Bowman                    190 Moore Street, Suite 272
          2901 N. Central Avenue, Suite 1600 Hackensack, NJ  07601
27        Phoenix, Arizona  85012            Attorneys for Plaintiffs
          Attorneys for Defendant
28        General Motors Corporation

::ODMA\PCDOCS\PHX\238820\1

1  SKOUSEN, SKOUSEN,
   GULBRADENSEN & PATIENCE, P.C.
2

3

4  By: _____ for
          Michael J. Skousen
5         414 East Southern Avenue
          Mesa, AZ 85204
6         Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUARLES, BRADY, STREICH & LANG

By: _____ for
          Raymond R. Cusack
          Timothy M. Medcoff
          One South Church Ave, Suite 1700
          Tucson, AZ 85701
          Attorneys for Defendant
          ANC Rental Corp.

::ODMA\PCDOCS\PHX\238820\1                    2

Exhibit A to Notice of Removal

# EXHIBIT 12

DEBORAH YOUNG, CLERK

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

DEPUTY

## IN AND FOR THE COUNTY OF COCONINO

06 FEB -2  PM 4:33

Fred Newton, Judge
Division 2
Date: January 30, 2006

Deborah Young, Clerk
Kathy Hieb, Deputy Clerk

## MINUTE ENTRY

| | |
|---|---|
| JIN AH LEE, decedent, by her estate representative, Jungil Lee; Sang Chui Lee, decedent's father; and Dukson Lee, decedent's mother,<br><br>Plaintiff's<br><br>vs.<br><br>ANC CAR RENTAL CORP; GENERAL MOTORS CORP; and HONG-JUN JEON,<br><br>Defendant. | Cause No. CV 2005-0307 |

**ACTION: Case Management Conference**

APPEARANCES: Counsel, Thomas Klein, appearing telephonically on behalf of Defendant GM Corporation. Counsel, Timothy Medcoff, appearing telephonically on behalf of Defendant ANC Car Rental Corporation.

Court convenes at 9:30 a.m.

The Court notes that duplicative actions were filed in other jurisdictions. A stay was granted in this case on August 8, 2005.

Attorney Klein notes that the federal case is pending in the 9th Circuit Court, and requests that the Coconino County case remain open.

Attorney Medcoff concurs.

**IT IS ORDERED placing this case on the inactive calendar.**

Counsel may reactivate the case if needed by filing the appropriate documents.

Exhibit A to Notice of Removal

Lee v ANC Rental Car Corp.
Cause No. CV 2005-0307
January 30, 2006

The parties may notify the Court should they wish to have a Case Management Conference.

Court adjourns at 9:35 a.m.

cc:   Timothy Medcoff - Quarles & Brady Streich Lang, LLP - One S. Church St., Ste. 1700, Tucson, Arizona 85701
Thomas Klein - Bowman & Brooke, LLP - 2901 N. Central Ave., Ste 1600, Phoenix Plaza, Phoenix, Arizona 85012
Michael J. Skousen - Skousen, Skousen, Gulbrandsen & Patience, PC - 414 E. Southern Ave., Mesa, Arizona 85204
Michael S. Kim, 190 Moore St., Ste 272, Hackensack, NJ 07601

CA 2/2/06

Exhibit A to Notice of Removal

# EXHIBIT 13

THE SUPERIOR COURT OF THE STAT3E OF ARIZONA
IN AND FOR THE COUNTY OF COCONINO

------------------------------------x
JIN AH LEE decedent, by her estate :
representative, JUNGIL LEE, :
SANG CHUL LEE and DUKSON LEE, :
by their personal representative, :
JUN GIL LEE, :
Plaintiffs, :

v. :

ANC CAR RENTAL CORP., :
GENERAL MOTORS CORP., :
and HONG-JUN JEON, :
Defendants. :
------------------------------------x

No. CV 2005-0307

**Notice of substitution of attorney**

PLEASE TAKE NOTICE that plaintiffs have substituted their local counsel of record

as follows:

Withdrawing:

Michael J. Skousen, Esq.
Skousen, Skousen, Gulbrandsen & Patience, PC
414 East Southern Avenue
Mesa, AZ 85204

Superseding:

John Trebon, Esq.
308 N. Agassiz
Flagstaff, AZ 86001

Dated: July 24, 2007

_____          _____
Michael J. Skousen                  John Trebon

1  The original of the foregoing was delivered
   this 24th day of July, 2007, to:

2

3  Clerk of Court
   Coconino County Superior Court

4  200 N. San Francisco Street
   Flagstaff, AZ 86001

5

6  And a copy delivered to:

7  Honorable Fred Newton
   Coconino County Superior Court Judge, Division II

8

9  And to:

10 Timothy M. Medcoff

11 Quarles & Brady LLP
   One South Church Avenue, Suite 1700

12 Tucson, AZ 85701-1621

13 *Attorneys for Defendant ANC Rental Corp.*

14
   Thomas Klein, Esq.

15 Abram Bowman, Esq.
   Bowman and Brooke, LLP

16 2929 North Central Avenue, Suite 1700

17 Phoenix, AZ 85012
   *Attorneys for Defendant General Motors Corp.*

18

19 G. Peter Spiess
   Spiess & Associates PC

20 420 West Roosevelt Street

21 Phoenix, AZ 85003
   *Attorney for Defendant Hong-Jun Jeon*

22

23 Michael J. Skousen, Esq.
   Skousen, Skousen, Gulbrandsen & Patience, PC

24 414 East Southern Avenue

25 Mesa, AZ 85204

26 And mailed to:

27 Michael S. Kimm

28
   By: _S. Bollhoefer_

29 S. Bollhoefer

30

-3-

JOHN TREBON, P.C.
308 N. Agassiz
Flagstaff, Arizona 86001

Exhibit A to Notice of Removal

# EXHIBIT 14

Exhibit A to Notice of Removal

JPB

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF COCONINO

**Judge Fred Newton**
**Division 2**
**February 8, 2007**                     **Kathy Sandstrom, Judicial Assistant**

### NOTICE

| | |
|---|---|
| JIN AH LEE, decedent, by her estate ) representative, Jungil Lee; Sang Chui) Lee, decedent's father; and ) Dukson Lee, decedent's mother ) ) **Plaintiff(s)**, ) ) vs. ) ) ANC CAR RENTAL CORP. ; ) GENERAL MOTORS CORP. and ) Hong-Jun Jeon, ) ) **Defendants.** ) ) | Case No. CV 2005-0307 |

Action:      Case Management Conference

This matter was placed on the Court's inactive calendar on January 30, 2006;

**IT IS ORDERED setting case management conference on Monday, April 9, 2007 at the hour of 10:30 a.m. in Division 2.** Counsel may appear telephonically by contacting the court at 928-779-6598.

cc:   Thomas M. Klein, Esq. Bowman and Brooke, L.L.P. Suite 1600, Phoenix Plaza, 2901
         No. Central Avenue, Phoenix, AZ 85012
      Michael S. Kimm, Esq. 190 Moore Street, Suite 272, Hackensack, NJ 07601
      Michael J. Skousen, Esq. 414 East Southern Avenue, Mesa, AZ 85204
      Raymond R. Cusack, Esq. One South Church Avenue, Suite 1700, Tucson, AZ 85701
      Docket

Exhibit A to Notice of Removal

# EXHIBIT 15

JPE

1   Thomas M. Klein (State Bar No. 010954)
2   Abram N. Bowman (State Bar No. 023112)
    BOWMAN AND BROOKE LLP
3   Suite 1600 Phoenix Plaza
    2901 North Central Avenue
4   Phoenix, Arizona 85012
    (602) 643-2300
5   (602) 248-0947 - Fax

6   Attorneys for Defendant GM Corporation

7

8                   SUPERIOR COURT OF ARIZONA

9                        COCONINO COUNTY

10  Jin Ah Lee, decedent, by her estate         )
    representative, Jungil Lee,                  )
11  Sang Chul Lee, decedent's father,           )  Case No. CV-20050307
    and Dukson Lee, decedent's mother,          )
12                                               )
              Plaintiff,                         )  **JOINT STIPULATION AND REQUEST**
13                                               )  **TO VACATE APRIL 9, 2007 CASE**
    v.                                           )  **MANAGEMENT CONFERENCE**
14                                               )
    ANC Car Rental Corp., General Motors Corp., )
15  and Hong-Jun Jeon,                          )  (Assigned to Honorable Fred Newton)
                                                 )
16            Defendants.                        )
                                                 )
17  _____)

18        By minute entry dated February 8, 2007, this Court set a case management

19  conference in this matter for April 9, 2007.  Counsel for General Motors Corporation will be

20  in trial out of state starting on April 9, 2007.  Accordingly, the parties respectfully request that

21  the case management conference be rescheduled to May 29, 2007 at 11:00 a.m.

22        DATED this  9th  day of April, 2007.

23  BOWMAN AND BROOKE LLP              MICHAEL S. KIMM, ESQ.

24  By:_____          By:_____ FOR
25     Thomas M. Klein                    Michael S. Kimm
       Abram N. Bowman                    190 Moore Street, Suite 272
26     2901 N. Central Avenue,Suite 1600  Hackensack, New Jersey  07601
       Phoenix, Arizona  85012            Attorneys for Plaintiffs
27     Attorneys for Defendant
       General Motors Corporation
28

::ODMA\PCDOCS\PHX\339522\1

1   QUARLES & BRADY LLP

2

3   By: _____ FOR
        Timothy M. Medcoff
4       One South Church Avenue
        Suite 1700
5       Tucson, Arizona 85701
        Attorneys for Defendant
6       ANC Rental Corp.

7

8   **ORIGINAL** of the foregoing faxed and mailed this
9   ____ day of ____, 2007 to:

10  Honorable Fred Newton
    Superior Court of Coconino County
11  200 North San Francisco
    Flagstaff, Arizona 86001

12

13  **COPY** of the foregoing mailed this
    ____ day of ____, 2007 to:

14  Michael S. Kimm, Esq.
    190 Moore Street, Suite 272
15  Hackensack, New Jersey 07601
    Attorney for Plaintiffs

16
    Timothy M. Medcoff, Esq.
17  QUARLES & BRADY LLP
    One South Church Avenue
18  Suite 1700
    Tucson, Arizona 85701
19  Attorneys for Defendant ANC Rental Corp.

20

21

22

23

24

25

26

27

28

APR-09-2007   09:26   BOWMAN BROOKE   DIVISION 2   ...
04/09/2007   09:26   9287796719   PAGE   01/01
APR-06-2007   14:42   BL...WANBROOKE   602 248 0947   P.04/04

Exhibit A to Notice of Removal

1  Thomas M. Klein (State Bar No. 010954)
   Abram N. Bowman (State Bar No. 023112)
2  BOWMAN AND BROOKE LLP
   Suite 1600 Phoenix Plaza
3  2901 North Central Avenue
   Phoenix, Arizona  85012
4  (602) 643-2300
   (602) 248-0947 - Fax
5

6  Attorneys for Defendant GM Corporation

7            SUPERIOR COURT OF ARIZONA

8               COCONINO COUNTY

9  Jin Ah Lee, decedent, by her estate
   representative, Jungil Lee,                    )
10 Sang Chul Lee, decedent's father,             )  Case No. CV-20050307
   and Dukson Lee, decedent's mother,            )
11                                               )
                                                 )
         Plaintiff,                              )  ORDER
12                                               )
   v.                                            )
13                                               )  (Assigned to Honorable Fred Newton)
   ANC Car Rental Corp., General Motors Corp.,   )
14 and Hong-Jun Jeon,                            )
                                                 )
15         Defendants.                           )
                                                 )
16

17        Pursuant to the stipulation of the parties and good cause appearing, therefore,

18        IT IS HEREBY ORDERED vacating the case management conference set for April

19 9, 2007 and rescheduling a case management conference for May 29, 2007 at 11:00 a.m.

20

21        IT IS SO ORDERED this 9ᵗʰ day of April, 2007.

22

23

24        _____

25        The Honorable Fred Newton
          Judge of the Superior Court
26

27

28

::ODMA\PCDOCS\PHX\339522\1                    3

Exhibit A to Notice of Removal

# EXHIBIT 16

**JPB**

DEBORAH YOUNG, CLERK
BY _____ DEPUTY

07 APR 13 PM 12: 08

1  Thomas M. Klein (State Bar No. 010954)
   Abram N. Bowman (State Bar No. 023112)
2  BOWMAN AND BROOKE LLP
   Suite 1600 Phoenix Plaza
3  2901 North Central Avenue
   Phoenix, Arizona  85012
4  (602) 643-2300
   (602) 248-0947 - Fax
5

6  Attorneys for Defendant GM Corporation

7                SUPERIOR COURT OF ARIZONA

8                   COCONINO COUNTY

9  Jin Ah Lee, decedent, by her estate          )
   representative, Jungil Lee,                   )
10 Sang Chul Lee, decedent's father,            )  Case No. CV-20050307
   and Dukson Lee, decedent's mother,           )
11                                               )
           Plaintiff,                            )  **ORDER**
12                                               )
   v.                                            )
13                                               )  (Assigned to Honorable Fred Newton)
   ANC Car Rental Corp., General Motors Corp.,  )
14 and Hong-Jun Jeon,                           )
                                                 )
15           Defendants.                         )
                                                 )
16

17        Pursuant to the stipulation of the parties and good cause appearing, therefore,

18        IT IS HEREBY ORDERED vacating the case management conference set for April

19 9, 2007 and rescheduling a case management conference for May 29, 2007 at 11:00 a.m.

20

21        IT IS SO ORDERED this _9__ day of April, 2007.

22

23

24        _____
          The Honorable Fred Newton
25        Judge of the Superior Court

26

27

28

::ODMA\PCDOCS\PHX\339522\1                    3

TOTAL P.04

Exhibit A to Notice of Removal

# EXHIBIT 17

**Exhibit A to Notice of Removal**

**JPB**

DEBORAH YOUNG, CLERK

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF COCONINO**

07 JUN -  AM 11: 42

BY
DEPUTY

Fred Newton, Judge
Division 2
Date:  May 29, 2007

Deborah Young, Clerk
Jenee' Silva, Deputy Clerk

## MINUTE ENTRY

| | |
|---|---|
| JIN AH LEE, decedent, by her estate representative, **JUNGIL LEE; SANG CHUI LEE**, decedent's father; and **DUKSON LEE**, decedent's mother, | ) ) ) ) ) ) ) Cause No.  **CV 2005-0307** |
| Plaintiffs, | ) ) ) ) |
| vs. | ) ) ) |
| **ANC CAR RENTAL CORP.; GENERAL MOTORS CORP.** and **HUNG - JUN JEON,** | ) ) ) ) |
| Defendants. | ) ) ) |

ACTION:   **Case Management Conference**

APPEARANCES:  Counsel, Michael S. Kimm, appearing telephonically on behalf of the Plaintiffs.  Counsel, Timothy M. Medcoff, appearing telephonically on behalf of the Defendant, ANC Car Rental Corp.  Counsel, Abram N. Bowman, appearing telephonically on behalf of the Defendant, General Motors Corp.  Counsel, G. Peter Spiess, appearing telephonically on behalf of the Defendant, Hong-Jun Jeon.

11:09 a.m.  Court is in session.

The Court notes It has received a Pre-Hearing Memorandum from Plaintiff's counsel in this case, outlining the procedural history of this matter.  The Court further notes this case may be moved from this jurisdiction as the accident may not have occurred in Coconino County.

Court and counsel confer regarding the venue of this matter and pending discovery issues.

The Court presents statements regarding the venue of this matter, the scheduling of discovery deadlines, and the recommendation that the Parties confer regarding the same, before the next Case Management Conference.

Exhibit A to Notice of Removal

Lee v. ANC et al
Cause No.  CV 2005-0307
<u>May 29, 2007</u>

Upon Court inquiry, the Parties advise they have nothing further.

**IT IS ORDERED** setting a Case Management Conference by Minute Entry. Counsel may appear telephonically at this hearing.

11:24 a.m.   Court is adjourned.

\*       \*       \*       \*   \*

**IT IS ORDERED** setting a **Case Management Conference on July 3, 2007 9:30 a.m., in the Division 2 courtroom before the Honorable Fred Newton.**

_FN_

cc:     Michael S. Kimm - 190 Moore St., Ste. 272, Hackensack, NJ 07601
        Timothy M. Medcoff - One S. Church Ave., Ste. 1700, Tucson, AZ 85701
        Abram N. Bowman - 2901 N. Central Ave., Ste. 1600, Phoenix, AZ 85012
        G. Peter Spiess - 420 W. Roosevelt St., Phoenix, AZ 85003
        ADR Coordinator
        Division 2

Page 2 of  2

Exhibit A to Notice of Removal

# EXHIBIT 18

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCONINO

DEBORAH YOUNG, CLERK

07 JUL 10 AM 10: 14

DEPUTY

| | |
|---|---|
| Fred Newton, Judge | Deborah Young, Clerk |
| Division 2 | Marie Jones, Deputy Clerk |
| Date: July 3, 2007 | |

## MINUTE ENTRY

JIN AH LEE, decedent, by her estate, representative, **JUNGIL LEE; SANG CHUI LEE**, decedent's father; and **DUKSON LEE**, decedent's mother,

        Plaintiffs,

vs.

**ANC CAR RENTAL CORP.; GENERAL MOTORS CORP.** and **HUNG - JUN JEON,**

        Defendants.

        **Cause No. CV 2005-0307**

**ACTION:**    **Case Management Conference**

    APPEARANCES:   Counsel, Michael S. Kimm, appearing telephonically on behalf of the Plaintiffs.  Counsel, Timothy M. Medcoff, appearing telephonically on behalf of the Defendant, ANC Car Rental Corp.  Counsel, Thomas Klein, appearing on behalf of the Defendant, General Motors Corp.  Counsel, G. Peter Spiess, appearing telephonically on behalf of the Defendant, Hong-Jun Jeon.

    9:45 a.m.    Court is in session.

    The Court has reviewed the Rule 16 Joint Report and it appears that the Parties have agreed upon a large number of the deadlines and the Trial date.  There does, however, appear to be an issue regarding Attorney Kimm obtaining local counsel and applying for permission to practice law here in Arizona.

    Upon Court inquiry, counsel present statements regarding the deadlines contained in the Rule16 Joint Report and are in agreement.

    **IT IS ORDERED** the Court will adopt the deadlines as contained in the Rule Joint 16 Report.

**Exhibit A to Notice of Removal**

Cause No. CV 2005-0307
July 3, 2007

 The Court now proceeds with the issue of Attorney Kimm filing a Notice of Association with Local Counsel as well as the filing of the pro hac vice application.

 Upon Court inquiry, Attorney Kimm advises that he is taking steps to obtain John Trebon as local counsel and that Attorney Kimm will proceed with the pro hac vice application.

 Counsel present statements regarding the Joint Report, local counsel, and the delay in the submission of the pro hac vice application.

 The Court feels strongly that the application should be done immediately by Attorney Kimm.  The Court advises that, if for whatever reason, the pro hac vice application is not made within sixty (60) days, the Defendants can file a motion to dismiss the case without prejudice and the Court will accelerate a hearing.

 The Court presents further statements regarding deadlines.

 Counsel present further statements to the Court regarding discovery, the pro hac vice application status and communication with Attorney John Trebon regarding the case.

 **IT IS ORDERED** setting a Case Management Conference in September by minute entry.  The Parties may appear telephonically or in person.

 9:54 a.m. Court is adjourned.

<p align="center">* * * *</p>

 **IT IS ORDERED** setting a **Status Conference on Wednesday, September 5, 2007 at 1:30 p.m. in the Division 2 courtroom before the Honorable Fred Newton.**

cc: Michael S. Kimm, 190 Moore Street, Suite 272, Hackensack, NJ   07601
 Timothy M. Medcoff, One S. Church Ave., Ste. 1700, Tucson, AZ   85701
 Thomas Klein, 2929 North Central Ave., Suite 1600, Phoenix, AZ 85012
 G. Peter Spiess, 420 W. Roosevelt St., Phoenix, AZ   85003
 John Trebon
 ADR Coordinator
 Div. 2